appropriate word usage as well. He performed as well as 3% of his same-age peers in the standardization sample, within the moderate range.

TAPS-R:

The Auditory Number Memory -Forward subtest required A███to recall a series of numbers exactly as presented. He scored within the moderate range, performing as well as 4% of his same age peer in the standardization sample. His performance reflects his ability to retain non-meaningful auditory information.

The Auditory Number Memory-Reversed subtest required A███ to recall a series of numbers in the reversed order than it was presented. Results are considered to be a reflection of his ability to concentrate and perform activities requiring mental control. Examples include mental math and tasks requiring manipulation of information. His score was within the mild range. He performed as well 9% of his same-age peers.

The Auditory Sentence Memory subtest required A███ to recall sentences exactly as presented. Although it is not an indicator of comprehension, it does provide information regarding how auditory information is perceived at the sentence level. His performance was within the moderate range. He performed as well as 4% of his same-age peers.

On the Auditory Word Memory subtest, A███ recalled a series of unrelated words. Performance on this subtest provides insight into the extent to which one is dependent upon context to aid recall. His performance was within the average range, with his performing as well as 25% of his same-age peers.

Auditory Interpretation of Directions did not require verbatim recall, but required him to interpret directions given, including all critical elements. His performance was within the mild range, with his performing as well as 10% of his same-age peers included in the standardization sample.

The Auditory Word Discrimination subtest assessed A███'s ability to make judgements about sounds and auditory information. He was required to tell whether two words presented orally were the same or different. His performance was within the severe range, performing as well as 1% percent of children his age included in the standardization group. As a result, spelling and word attack skills are likely to be affected.

Auditory Processing (Thinking and Reasoning) revealed an area of severe difficulty for A███. A███ performed as well as 2% of same age peers. Errors appear to be a result of weak fund of general knowledge. His responses also revealed failure to pay attention to details.

CELF-3

A███'s performance on the Concepts and Directions subtest of the CELF-3 revealed his ability to follow sequential directions (beginning, middle), directions featuring coordination (and, and/but not/or), location (next to, between), inclusion/exclusion (all... but none, all except), temporal concepts (then, same time) and conditional directions (unless, if) was within the mild range. When compared to same-age peers within the normative group, he performed as well as 9% of them. His performance also reflects his ability to attend to details pertaining to the concepts assessed.

4


EXHIBIT

8

# C. ROBIN BOUCHER
## Vitae

### EDUCATION

| | |
|---|---|
| B.A. | University of Maryland, liberal arts (sociology/psychology) |
| M.Ed. | Boston College, special education (emotional disturbance) |
| Ed.S. | University of Minnesota, educational psychology/special education (specific learning disabilities) |
| Ph.D. | University of Minnesota, educational psychology/special education |

### OTHER TRAINING

**2002-2003**  Mediator, Northern Virginia Mediation Service (82 hours completed); certified by the Virginia Supreme Court

### WORK EXPERIENCE

**2003-**  Special Education Advocate, James E. Brown & Associates, Washington, DC

**1995-2003**  Impartial Hearing Officer (special education due process cases)

- Maryland State Dept. of Education, Office of Administrative Hearings
- District of Columbia Public Schools, Student Hearing Office
- Appointed due process panel member, Delaware Dept. of Education (2003-05)

**1994-2001**  Reviewer, *Action in Teacher Education*, University of Kentucky

**1988-2003**  Adjunct Instructor

- Trinity College (DC) Graduate School of Education & Professional Studies
- Lynchburg College (VA) School of Education & Human Development
- George Mason University (VA) Dept. of Curriculum & Instruction

**1985-1989**  Editorial Consultant, *Teacher Education and Practice*

**1985-1986**  Program Specialist, emotional disturbance (temporary), District of Columbia Public Schools, Division of Special Education & Pupil Personnel Services (SEA)

Presentation, DC Public Schools second annual state special education conference (June): "Integrating Cognitive and Social-Emotional Objectives in Instruction"

Field Reviewer, Research Projects Branch, Division of Educational Services, Special Education Programs, U. S. Department of Education (also 1990)

**1986**  Test item reviewer, Pennsylvania Teacher Certification Project/Educational Testing Service

**1985**  Consultant, National Association of State Directors of Special Education (NASDSE)

**1983-1985**  U. S. Department of Education pre-service teacher training grant, handicapped Personnel preparation: S. Weiss and R. Boucher: "Teachers for Emotionally Disturbed Children—A Graduate and Undergraduate Level Interdisciplinary Pre-Service Oriented Program"

| 1983-1984 | Advisory Board Member, Winston Preparatory School (for students with learning disabilities), New York City |
|---|---|
| | Extramural evaluator, City University of New York, PSC-CUNY Research Award Program |
| 1979-1985 | Assistant Professor, New York University School of Education, Health, Nursing & Arts Professions, Dept. of Educational Psychology, Special Education Program |
| | Presentation at Council for Learning Disabilities, New Orleans (October): "A Description of Two Mainstream Classrooms as Experienced by Teachers, Pupils, and Observer" |
| 1981 | New York University and the Churchill Center for Learning Disabled Children: Co-program planner and workshop leader, conference for parents and professionals: C. R. Boucher & N. C. Adamany--"How to Regain Control: Behavior Management Strategies for Parents (March) |
| | Southern Westchester County, NY B.O.C.E.S. in-service course in teaching the special child (emotionally disturbed), with M. Alter & L. Fleisher (March-May) |
| 1980 | New York Downstate Planning Committee, Division of Children with Learning Disabilities, Council for Exceptional Children, Presentation: "Data-Based Instruction, Social Skills" |
| | Learning problems consultant: Elisabeth Irwin High School, New York City (March-June) |

1978-1979

Adjunct Instructor: Mankato State University (MN), special education
Adjunct Instructor: University of Minnesota (Minneapolis), special education
Adjunct Instructor: Moorhead State University (MN), special education

University of Minnesota Hospitals, Child & Adolescent Psychiatry Department: field consultant

Consultant: Edina, MN Public Schools, Behavior Management, Teacher Center, University of Minnesota State Mainstreaming Project

Consultant: Shakopee-Prior Lake, MN Association for Children with Learning Disabilities: Parent Rights and Due Process, Teacher Center, University of Minnesota State Mainstreaming Project

## SPECIAL EDUCATION TEACHING EXPERIENCE

| 1991-2002; 1973-1974 | Itinerant resource teacher, Fairfax County, VA Public Schools: students with emotional disturbance and learning disabilities; self-contained teacher, SLD: Fairfax County, VA Public Schools |
|---|---|
| 1974-1976 | Resource Teacher and Department Chair, Brooklyn Center, MN Jr.-Sr. High School: Special Learning & Behavior Problems |
| 1972-1973 | Self-contained classroom teacher (ages 10-18) and acting director, Barcroft Institute (now Dominion Hospital) Psycho-Education Dept., Falls Church, VA |

| 1969-1971 | Self-contained classroom teacher, Roberts Elementary School (k-8), Cambridge, MA Public Schools: students with emotional disturbance, learning disabilities, and health impairments |
| 1969 | Counselor-Teacher, Fresh Air Camp-School, University of Michigan Special Education Department, Ann Arbor |
| 1967-1969 | Research Assistant, Boston College Special Education Department, Chestnut Hill |

## PUBLICATIONS

Boucher, C. R. (1995, 1999). Contributor to D. H. Craft, Ch. 8, Learning disabilities and attentional deficits. In *Adapted physical education & sport (2nd & 3rd eds.)*. Champaign, IL: Human Kinetics Publishers.

Boucher, C. R. (1999). *Students in discord: adolescents with emotional and behavioral disorders.* Westport, CT: Greenwood.

Boucher, C. R., and Cheek, M. C. (1987). Cultural differences, brain similarities, and academic achievement. *The Pointer, 31* (2), 44-46.

Boucher, C. R. (1986). Strategies for instructional success. *The Key, 1 (2),* 10.

Boucher, C. R. (1986). Pragmatics: The meaning of verbal language in learning disabled and nondisabled boys. *Learning Disability Quarterly, 9* (4), 285-294.

Boucher, C. R., and Weinstein, S. A. (1985). Training professionals to be powerful and collaborative. *Contemporary Education, 56* (3), 130-136.

Boucher, C. R. (1984). *Decreasing classroom conflict.* Seattle: Special Child Publications.

Boucher, C. R. (1984). Pragmatics: A study of the verbal language of learning disabled and nondisabled boys. *Learning Disability Quarterly, 7* (3), 271-286.

Boucher, C. R. (1983). A child development perspective on the criminal responsibility of juveniles. *New York University Education Quarterly, 14* (3-4), 7-13; also in J. J. Sullivan (ed.), *Criminal Justice 85/86.* Guilford, CT: The Dushkin Group, 1985.

Boucher, C. R. (1982). Formative testing to teach children with learning problems. *Teaching Exceptional Children, 14* (5), 177-181.

Boucher, C. R., and Vespe, A. (1981). The maverick. *Education Unlimited, 3* (3), 55-56.

Boucher, C. R. (1981). Behavioral counseling: involving parents in their child's learning. *The Churchill Forum, 4* (2), 3-4.

Boucher, C. R. (1981). Teacher attributioning in decision-making. *Psychology in the Schools, 18* (1), 115-120.

Boucher, C. R. (1981). Teachers' decisions about mainstreaming. *Education Unlimited, 3* (1), 9-11.

Boucher, C. R., and Deno, S. L. (1979). Learning disabled and emotionally disturbed: Will the labels affect teacher planning? *Psychology in the Schools, 16* (3), 395-402.

Boucher, C. R., and Hughes, E. (1979). Wise & Gise: A little help goes a long way. *Education Unlimited, 1* (2), 52.

Revised 10/27/03

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Superintendent*
**Office of the General Counsel**
*825 North Capitol Street, N.E., 9th Floor*
202-442-5000 Fax # 202-442-5098
*www.k12.dc.us*

January 9, 2004

Miguel Hull, Esq.
Brown & Associates
1220 L Street, NW, Suite 700
Washington, DC 20005

## DISCLOSURE STATEMENT

### VIA FACSIMILE 202-742-2097/98

**Subject: Due Process Hearing for A███ M██████**
**DOB:    ████5**

Dear Ms. Busso:

At the upcoming due process hearing in the above-referenced matter, scheduled for Friday, January 16, 2004 at 11:00 a.m., and pursuant to 34 C.F.R. 300.509(a)(3), in addition to any documents and witnesses disclosed by the parent, DCPS may rely upon any of the following witnesses/documents[1]:

### Witnesses

Dr. Ray Bryant, or his designee(s), Chief, Office of Special Education Reform, DCPS
Pamela Owens, or her designee(s), Special Assistant, Charter Schools, Division of Special Education, DCPS

DCPS reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

DCPS reserves the right to rely upon and /or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.  Also, DCPS reserves the right to call rebuttal witnesses in its case.

---

[1] Witnesses may testify by telephone.

DCPS Office of the General Counsel
Page 2

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5564.

Sincerely,

Linda M. Smalls
Attorney Advisor

cc:    Paul Dalton 703/642-3101
       Student Hearing Office

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

TX/RX NO              4161
CONNECTION TEL                    97036423101
CONNECTION ID
ST. TIME              01/09 14:57
USAGE T               00'34
PGS. SENT             3
RESULT                OK
```



**Office of the General Counsel**
**9th Floor**
**825 North Capitol St., NE**
**Washington, DC 20002**
**(202) 442-5000**
**Fax (202) 442-5098**

# <u>FACSIMILE</u>

**Date:**    1-09-04

**TO:**  Miguel Hull, Esq.        **Fax No.:**  202/742-2097/98
     Brown & Associates, PLLC

     Paul Dalton, Esq.           **Fax No.:**  703/642-3101
     Dalton, Dalton & Houston, PC

**RE:**  A████ M████            **Tele. No.:**
     Disclosure Statement

**FROM:**  Linda M. Smalls, Esq.   **Tele. No.:**  202/442-5564
       Attorney Advisor

**No. Pages, Including Cover Sheet:**    3

**COMMENTS:**                                                58

```
*********************
***   TX REPORT   ***
*********************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 4160 |
| CONNECTION TEL | 97422097 |
| CONNECTION ID | James Brown and |
| ST. TIME | 01/09 14:56 |
| USAGE T | 00'33 |
| PGS. SENT | 3 |
| RESULT | OK |



**Office of the General Counsel**
**9th Floor**
**825 North Capitol St., NE**
**Washington, DC 20002**
**(202) 442-5000**
**Fax (202) 442-5098**

# <u>FACSIMILE</u>

**Date:**   1-09-04

**TO:** Miguel Hull, Esq.           **Fax No.:**   202/742-2097/98
Brown & Associates, PLLC

Paul Dalton, Esq.                **Fax No.:**   703/642-3101
Dalton, Dalton & Houston, PC

**RE:** A▬▬ M▬▬▬               **Tele. No.:**
Disclosure Statement

**FROM:** Linda M. Smalls, Esq.      **Tele. No.:**   202/442-5564
Attorney Advisor

**No. Pages, Including Cover Sheet:**   3

**COMMENTS:**                                                    59



**Office of the General Counsel**
**9th Floor**
**825 North Capitol St, NE**
**Washington, DC 20002**
**(202) 442-5000**
**Fax (202) 442-5098**

# FACSIMILE

|  |  |
|---|---|
| **Date:** | 1-09-04 |

**TO:** Miguel Hull, Esq.
Brown & Associates, PLLC

**Fax No.:** 202/742-2097/98

Paul Dalton, Esq.
Dalton, Dalton & Houston, PC

**Fax No.:** 703/642-3101

**RE:** A███ M██████
Disclosure Statement

**Tele. No.:**

**FROM:** Linda M. Smalls, Esq.
Attorney Advisor

**Tele. No.:** 202/442-5564

**No. Pages, Including Cover Sheet:**    3

**COMMENTS:**

---

**CONFIDENTIALITY NOTICE**

*The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.*

---



# District of Columbia Public Schools

### OFFICE OF COMPLIANCE
*Special Education Student Hearing Office*
*825 North Capitol Street NE, 8th Floor*
*Washington, DC 20002-1994*
*Phone - 202-442-5432, Fax – 202-442-5556*

## HEARING NOTICE

| MEMORANDUM via ☒ FACSIMILE ☐ MAIL ☐ HAND DELIVERY |
|---|

TO:      *Parent (or Representative):* M. Huel / P. Dalton

          *DCPS Legal Counsel:* L. Smalls

RE:      M_____, A_____ _____96            v. DCPS
          Student's Name

FROM:    Brill

          Special Education Student Hearing Office Coordinator

DATE SENT:  December 22, 2003

..............................................................................................................................

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above-named student on _____. Please be advised that the hearing has been scheduled for:

Cont. (from 12/23/03)

DATE:    1/16/04

TIME:    11:00 AM

AT:      825 North Capitol Street NE, Washington, DC, 8th Floor.

This hearing has been scheduled to take place within 35 calendar days of the receipt of your request by the Student Hearing Office, unless you have requested or agreed otherwise, in order to facilitate issuance of a decision within 45 days. SHO has made best efforts to accommodate the dates you requested for your hearing, but may have been unable to do so based on the timeslots available for hearings. **IF YOU WISH TO REQUEST A CONTINUANCE OF THIS HEARING, YOU MUST SUBMIT YOUR REQUEST,** *IN WRITING, ON THE ATTACHED FORM,* **TO THE SPECIAL EDUCATION STUDENT HEARING OFFICE AT THE ABOVE ADDRESS, OR BY FAX AT 202-442-5556.** All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff.

**UNLESS YOU RECEIVE NOTICE THAT THE HEARING OFFICER HAS GRANTED YOUR REQUEST FOR A CONTINUANCE, YOU MUST APPEAR FOR THE HEARING AS SCHEDULED ABOVE.** Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

***CONFIDENTIALITY NOTICE:*** *The information accompanying this fax is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of the telecopied information is strictly prohibited.*

61

1975295

```
            TRANSMISSION VERIFICATION REPORT

                                    TIME   : 12/22/2003 15:42
                                    NAME   : STUDENT HEARINGS OFF
                                    FAX    : 2024425556
                                    TEL    : 2024425432
                                    SER. # : BROH3J608601


     DATE,TIME              12/22  15:42
     FAX NO./NAME           97422097
     DURATION               00:00:24
     PAGE(S)                01
     RESULT                 OK
     MODE                   STANDARD
                            ECM
```



# District of Columbia Public Schools
### OFFICE OF COMPLIANCE
*Special Education Student Hearing Office*
*825 North Capitol Street NE, 8th Floor*
*Washington, DC  20002-1994*
*Phone - 202-442-5432, Fax – 202-442-5556*

### HEARING NOTICE

| MEMORANDUM via ☒ FACSIMILE ☐ MAIL ☐ HAND DELIVERY |
|---|

TO:      *Parent (or Representative):* M. Huel / P. Dalton

        *DCPS Legal Counsel:* L. Smalls

RE:     ███████, A██████ ████s    v. DCPS
        Student's Name

FROM:     Bill
        Special Education Student Hearing Office Coordinator

DATE SENT:   December 22, 2003

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above-named student on _____. Please be advised that the hearing has been scheduled for:

DATE: _____ 1/16/04 _____

*Cont. (from 12/23/03*

TIME: _____ 11:00 AM _____

AT:   825 North Capitol Street NE, Washington, DC, 8th Floor.

This hearing has been scheduled to take place within 35 calendar days of the receipt of your request by
the Student Hearing Office, unless you have requested or agreed otherwise, in order to facilitate issuance
of a decision within 45 days. SHO has made best efforts to accommodate the dates you requested for

62

```
┌─────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT    │
└─────────────────────────────────────┘
```

```
                              TIME : 12/22/2003 15:43
                              NAME : STUDENT HEARINGS OFF
                              FAX  : 2024425556
                              TEL  : 2024425432
                              SER.# : BROH3J608601
```

```
┌──────────────────────────────────────────────────────────────┐
│  DATE,TIME              12/22  15:43                           │
│  FAX NO./NAME           97036423101                           │
│  DURATION               00:00:20                              │
│  PAGE(S)                01                                    │
│  RESULT                 OK                                    │
│  MODE                   STANDARD                             │
│                         ECM                                  │
└──────────────────────────────────────────────────────────────┘
```



# District of Columbia Public Schools

## OFFICE OF COMPLIANCE
*Special Education Student Hearing Office*
*825 North Capitol Street NE, 8th Floor*
*Washington, DC 20002-1994*
*Phone - 202-442-5432, Fax – 202-442-5556*

### HEARING NOTICE

| MEMORANDUM via ☒ FACSIMILE ☐ MAIL ☐ HAND DELIVERY |
|---|

TO:    *Parent (or Representative):* M. Hull / P. Dalton

        *DCPS Legal Counsel:* L. Smalls

RE:    M_____ A_____ ____s_ ___ v. DCPS
      Student's Name

FROM:    _Bill_____
      Special Education Student Hearing Office Coordinator

DATE SENT:  December 22, 2003

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above-named student on _____. Please be advised that the hearing has been scheduled for:

    DATE: _1/16/04_____

*Cont. (from 12/23/03*    TIME: _11:00 AM_____

    AT:    825 North Capitol Street NE, Washington, DC, 8th Floor.

This hearing has been scheduled to take place within 35 calendar days of the receipt of your request by the Student Hearing Office, unless you have requested or agreed otherwise, in order to facilitate issuance of a decision within 45 days. SHO has made best efforts to accommodate the dates you requested for

63

## STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA
### REQUEST FOR MEDIATION/HEARING

➤ **This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.**

➤ **This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Fax number 202-442-5556**

Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent. Mediation may be beneficial in your case. Please indicate your decision:

___ I REQUEST MEDIATION    ___ I REQUEST MEDIATION AND A HEARING   **X** I REQUEST A HEARING

## STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED

Student Name: __A___ M_____    DOB: _____ 1995_____

Address:    1011 14th ST., SE, #11, Washington, D.C. 20003_____

Present School of Attendance:    Friendship-Edison Public Charter School [Chamberlain Campus]_

Home School:    Ludlow-Taylor Elementary School_____
    (Neighborhood school where child is registered)

## COMPLAINT IS MADE AGAINST: Friendship-Edison PCS and District of Columbia Public Schools_
    DCPS and/or D.C. Public Charter School-specify charter school

## INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING

Name:   William Marrow & Edwina Sumpter_____

Address:    1011 14th ST., SE, #11, Washington, D.C. 20003_____

Phone: (H) 202 543-9095/345-6993    (W) n/a_____.(F) _____

Relationship to Student: __X__Parent ____ Self ____ Legal Guardian ___ Parent Surrogate ____Public Agency

## PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable):

Name: _Miguel A. Hull, Esq.___    Phone: (W) _202 742-2015____    (Fax) _202 742-2098___

Address: 1220 L St., NW, #700, Washington, D.C. 20005_____

64

Form 101

1. You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) dates within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates.

Hearings:  December 19, 2003 _____    January 5, 2003 _____    January 6, 2004 _____

Mediation:  Not requested _____    Not requested _____    Not requested _____

**FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST.  IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).**

**FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.**

Every effort will be made to accommodate your requested dates.  Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate.  Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date.  Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice.  *Please do not contact the Hearing Office by phone to request a continuance.  Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled.  Failure to report for the hearing may result in dismissal of this case, or in a default decision against you.  Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2. Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):

    Interpreter
    ___ Foreign Language _____
    ___ Sign Language _____
    ___ Other _____
    ___ Special Communications _____

65

Form 101                                                                                            02/01/2003

Special Accommodation for Disability _____
Other _____

3.  In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:
(You may attach additional pages to provide more information if needed.)

**Describe the nature of the problem:**

- A█████M█████ is an eight-year-old student at Friendship-Edison Public Charter School
[Chamberlain Campus] in the District of Columbia; his home school is Ludlow-Taylor
Elementary School.  On April 22, 2003, an MDT meeting took place at Friendship-Edison
during which an Individualized Educational Program ("IEP") was developed classifying
A█████as speech and language impaired and entitling him to one hour per week of speech and
language therapy and two hours per week of specialized instruction.  See IEP 4/22/03.
A█████'s parents now respectfully assert the following violations of their and their son A█████'s
rights under the Individuals with Disabilities Education Act ("IDEA"); D.C. Code; and
District of Columbia Municipal Regulations ("DCMR"):
  - Failure to Implement IEP: failure to provide speech & language services. A█████'s current
    IEP calls for him to receive one hour per week of speech & language therapy.  However,
    A█████'s father has confirmed, through conversations with two administrators at
    Friendship-Edison, that A█████has not received any of his speech & language therapy so
    far this school year because the school speech & language therapist has been on some
    sort of leave.  34 C.F.R. Sec. 300.341 (c) (SEA shall ensure that IEP is implemented); 34
    C.F.R. Sec. 300.342 (b) (public agency shall ensure that IEP is implemented); 30 DCMR
    Sec. 3002.1
  - Failure to conduct adaptive behavior scales assessment. A█████has had two
    psychological-educational evaluations in recent months, one dated June 5, 2002, and the
    other dated March 13, 2003.  Both evaluations indicate that A█████'s IQ scores fall in the
    borderline range of intellectual functioning.  Given such borderline IQ scores, the parent
    believes that it would have been reasonable for an adaptive behavioral assessment to have
    been conducted for A█████  However, it appears from a review of A█████'s educational
    records that such an assessment has not been done for him.  Accordingly, the parents
    respectfully assert that A█████ was not comprehensively evaluated.  34 C.F.R. Sec.
    300.346 (a) (1) (In developing IEP, team must consider results of most recent
    evaluations); 34 C.F.R. Sec. 300.532 (g) (public agency must ensure that child is
    evaluated in all areas of suspected disability); 34 C.F.R. Sec. 300.532 (h) (public agency
    must ensure that evaluations are sufficiently comprehensive to identify all of the child's
    special education needs); 30 DCMR Secs. 3005.9 (g) & (h); and 3007.2.
  - As the respective State Educational Agency ("SEA"), District of Columbia Public
    Schools is ultimately liable for the violations committed here.  See 34 C.F.R. Sec.
    300.341 (c) (SEA shall ensure that IEP is implemented); 34 C.F.R. Sec. 125 (a) (State
    must have policies in effect to ensure that all children with disabilities residing in the
    state are identified, located, and evaluated); 34 C.F.R. Sec. 300.600 ("The SEA is
    responsible for ensuring that the requirements of [Part B of the IDEA] are carried out.");
    34 C.F.R. Sec. 300.125 ("The state must have policies and procedures to ensure that all
    children with disabilities residing in the state, including children with disabilities

66

attending private schools, regardless of the severity of the disability and who are in need of special education and related services are identified, located, and evaluated."); 34 C.F.R. Sec. 300.360 (State agency to provide FAPE directly if it determines that local agency is unable or unwilling to do so); Gadsby vs. Grasmick, 109 F.3d 940,952-53 (4th Circuit 1997) (SEA is ultimately responsible for the provision of a free appropriate education to all its students and may be held liable for the failure to assure compliance with IDEA); St. Tammany Parish Sch. Bd. Vs. State of Louisiana, 142 F.3d 776, 783-85 (5th Cir. 1998) (citing Gadsby in holding that State Agency could be held liable for costs of child's interim placement while decision on merits is pending); Kruelle vs. New Castle County Sch. Dist, 642 F.2d 687, 696-97 (3d Cir. 1981) (held that legislative history and statutory language assigns responsibility to State Agency for providing the student with a proper educational program); and John T. and Leigh T. vs. Iowa Department of Education, 258 F.3d 860, 865 (8th Cir. 2001) ( On case remanded back to U.S. District Court, held that even when SEA had not participated in administrative proceedings, *SEA was liable for attorney's fees subsequently incurred at District Court proceedings* because of SEA's ultimate responsibility to ensure FAPE and due to its contentious participation during proceedings at District Court level).

- The parents further assert any additional facts or issues related to those raised here that may arise or be discovered subsequent to this filing or prior to or during the hearing in this matter.

**Describe issues to be addressed at the mediation and/or hearing, with specificity:**

- Has Friendship-Edison PCS inappropriately failed to provide A▬▬ M▬▬ with the speech & language services to which he is entitled?
- Has Friendship-Edison PCS unreasonably failed to conduct an adaptive behavior assessment for A▬▬?
- Is DCPS, as the respective state agency, ultimately liable for the violations asserted here?
- Is A▬▬ entitled to compensatory education for the violations committed here?
- The parent further asserts any additional facts or issues, related to those raised here, which may arise or be discovered subsequent to this filing or prior to or during the hearing in this matter. For example, the parent reserves the right to contest, without further amendment to this request, the adequacy of any evaluations, eligibility decisions, IEP's, placements, or compensatory education decisions that may be made by Friendship-Edison PCS / District of Columbia Public Schools prior to the hearing for this request.
- If the proof offered at the due process hearing differs from the description of the nature of the problems, as stated above, and the proposed resolution of the problem, as stated below, then the parent hereby amends the hearing request to conform to the proof presented at and during the hearing.

**Describe relevant facts relating to the problem:**

Please see section under Nature of the Problem.

**State how you would like to see the problem corrected:**

The parents of A▬▬ M▬▬ respectfully request:

67

02/01/2003

1. a finding that:
   - Friendship-Edison PCS has inappropriately failed to provide A▮▮M▮▮ with the speech & language services to which he is entitled;
   - Friendship-Edison PCS has unreasonably failed to conduct an adaptive behavior assessment for A▮▮?
   - DCPS, as the respective state agency, ultimately liable for the violations commited here;
   - A▮▮ is entitled to compensatory education for the weeks of speech & language therapy that was not provided to him?

2. Friendship-Edison PCS /DCPS be ordered to begin providing the speech & language therapy as specified in A▮▮'s IEP within five school days;

3. that Friendship-Edison PCS /DCPS be ordered to conduct an adaptive behavior assessment for A▮▮ within fifteen business days;

4. that Friendship-Edison PCS /DCPS be ordered to provide parents' counsel with written notice within five business days as to when the adaptive behavior assessment shall take place;

5. that if the written notice of the adaptive behavior assessment is not provided within the time specified, then the parents shall have the right to obtain an independent adaptive behavior assessment at Friendship-Edison PCS /DCPS expense;

6. that Friendship-Edison PCS /DCPS be ordered to convene an MDT meeting for A▮▮, within five school days of either completing the adaptive behavior assessment, or receiving the parents' independent assessment;

7. that the purpose of the MDT meeting shall be to review and revise A▮▮'s IEP, determine the manner of speech & language compensatory education due, and to identify an appropriate placement with placement to be made within five school days if for a public school or within thirty calendar days if for non-public school;

8. that the MDT meeting in question be scheduled through parents' counsel;

9. that Friendship-Edison PCS/DCPS provide any other relief deemed appropriate and relating to the violations committed here;

10. that pursuant to 5 DCMR 3021.8, Friendship-Edison PCS/DCPS be ordered to provide parents counsel copies of all evaluation reports and all educational records, not previously provided, at least two business days before any meeting which the student or parent is entitled to attend or participate in;

11. that DCPS provide a hearing within twenty [20] calendar days of a request on any issue arising out of the noncompliance with DCPS obligations arising here, or any disagreement

Form 101                                                                02/01/2003

with the assessment, program, or placement that the student may have;

12. Pursuant to IDEA and its implementing regulations, 34 C.F.R. Sec. 300.1, and 5 DCMR 3000, DCPS shall ensure that the rights of this student and parent are protected, and consistent with the Hearing Officer's preamble to all due process hearing that: "the hearing officer will rule on the evidence as presented at the hearing and will ACT in the BEST INTEREST of the child" and make a ruling consistent with the obligation of DCPS and the hearing officer's responsibility.

_____

Signature of Applicant/Parent (Required)

November 19, 2003
_____

Date

**MAIL, FAX, OR DELIVER APPLICATION TO:**
**Student Hearing Office of the District of Columbia**
**828 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**FAX: (202) 442-5556**

---

*FOR OFFICE USE ONLY:*

Case Number: _____

Student ID#: _____

Form 101                                    Revised 02/01/2003

---

Form 101                                          02/01/2003

cah

T4274

1

GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF PUBLIC SCHOOLS

OFFICE OF STUDENT HEARINGS

```
- - - - - - - - - - - - - x
                          :
In the Matter of:         :
                          :
A█████ M████████          :
                          :
- - - - - - - - - - - - - x
```

Washington, D.C.

Friday, January 16, 2004

A hearing in the above-entitled matter was

convened, pursuant to notice and agreement of the

parties.

BEFORE:

FRED WOODS, ESQ., Hearing Officer

APPEARANCES:

On behalf of D.C. Public Schools:

STEPHANIE RAMJOHN, ESQ.
PAUL DALTON, ESQ.
THERESA WHITEHEAD,
Special Education Coordinator

On behalf of A█████ M████████:

MR. HULL, ESQ.
EDWINA SUMTER, Parent
WILLIAM MARROW, Parent

[TRANSCRIPT PREPARED FROM PROVIDED TAPE.]

cah                                                                    2

<u>P R O C E E D I N G S</u>

HEARING OFFICER WOODS: --approximately

11:40 a.m.  My name is Fred Woods, the independent

hearing officer convening the due process hearing

for A█ --

MR. MARROW:  A█.

HEARING OFFICER WOODS:  --A█ M█.

MR. MARROW:  M█ like bone marrow.

HEARING OFFICER WOODS:  Oh, marrow.  Okay.

Sorry.  If I've butchered that, please excuse me.

M█.  I have his birth date as █████,

1995.

MS. SUMTER:  Yes.

MR. MARROW:  Yes.

HEARING OFFICER WOODS:  Okay.  This

hearing is being convened in accordance with the

Individuals with Disabilities Act and the federal

and District of Columbia laws and regulations that

implement the act.

The purpose for this hearing today it

appears would be to determine whether the

Friendship Edison Public Charter School as opposed

cah

3

to DCPS--if I read this correctly--

MR. HULL:  Actually, sir, DCPS is also cited as a party in our hearing request.

HEARING OFFICER WOODS:  Okay.

MR. DALTON:  I really believe that a motion to dismiss DCPS is appropriate and I certainly, if made, would not object to it because all of the allegations with regard to what the parent is making a request for are under the jurisdiction of my client and only if we fail to, you know, provide relief for those allegations is DCPS ever going to come into the picture.  So I think at this point at least DCPS should be dismissed.

HEARING OFFICER WOODS:  Okay.  We'll see and Ms. Ramjohn is probably going to make that request but let me finish our introductions to see where we are in terms of our issues and then, yes, if Ms. Ramjohn would like we will excuse you unless there's a reason.  Well, I'll let you object to that if it comes to that if you have any objections to that request.

cah

The hearing is a closing hearing meaning that only the parties who are present with the parent and any witnesses to this case would be invited into this room unless you, Mr. and Mrs. Marrow, decide that you wanted this to be an open hearing.  The hearing is, however, going to be audio taped and that is the way that we keep a record of what takes place in this room and at the conclusion of this hearing if you want a copy of the audio tape you may request it or a written transcript of it from the student hearing office.

My role in this hearing will be basically to hear the testimony and evidence that the parties will present in support of their respective positions in this case and then based solely on that information reach a decision with regard to how to resolve the issues.

That decision is placed in the form of a written order that will be provided to you, Mr. and Mrs. Marrow, through your attorney.

What I would like to do before explaining how we will actually conduct this hearing is allow

cah

the parties to introduce themselves and then visit with the lawyers for just a moment about where we are in this case and then based on that make a determination as to how we are going to proceed. So why don't we begin with you, Mr. Hull.

MR. HULL:  Mr. Hull with the law offices of James Brown and Associates on behalf of the parent and the student.  The parents--excuse me.

MS. SUMTER:  Okay.  I'm Edwina Sumter, parent of A███ M██████.  I'm his mother.

MR. MARROW:  I'm William Marrow, his father.

MS. RAMJOHN:  Stephanie Ramjohn, attorney-advisor, District of Columbia Public Schools.

MS. WHITEHEAD:  Theresa Whitehead, special education coordinator for Chandler elementary.

MR. DALTON:  Good morning, Mr. Woods.  My name is Paul Dalton.  I am counsel for Friendship Edison and chairman [inaudible].

HEARING OFFICER WOODS:  Okay.  I'd like to welcome all of you here.  Let me ask Mr. Hull if

cah

6

Ms. Sumter and Mr. Marrow have been advised of their due process rights.

MR. HULL: They are aware of their rights and they waive formal reading of those rights.

HEARING OFFICER WOODS: Okay. And let me admit, if there are no objections, the parties five day disclosures. I have received from parent counsel a disclosure filed--and these--I'm sorry, Ms. Sumter and Mr. William, these are documents that your attorneys and also Mr. Dalton have submitted before this hearing actually convened and they are asking me to rely on these in part in reaching a decision. Okay. So this submission from your attorney, Ms. Sumter and Mr. Marrow, is a disclosure letter filed with the Student Hearing Office on January the 9th, 2004, that lists five witnesses and attached eight exhibits that have been pre-marked and labeled AM01 through A--I'm sorry, through 08.

Mr. Dalton?

MR. DALTON: No objection.

HEARING OFFICER WOODS: Ms. Ramjohn, any

cah

objections?

      MS. RAMJOHN:  No.

      HEARING OFFICER WOODS:  Then without objections your disclosure is made a part of the record.

      From DC--let me deal with Mr. Dalton.  I have Dalton already written here from the Friendship Edison public charter school.  I have received a disclosure letter dated January the 9th, 2004, that lists three witnesses and attached no exhibits.  Is that correct?

      MR. DALTON:  That's correct.  We're going to rely on the exhibits filed by parent's counsel.

      HEARING OFFICER WOODS:  Okay.  Mr. Hull, are you in receipt of this disclosure?

      MR. HULL:  Yes, no objection from the parent.

      HEARING OFFICER WOODS:  Ms. Ramjohn, any objections?

      MS. RAMJOHN:  No objections.

      HEARING OFFICER WOODS:  Okay.  And then I received from DCPS a disclosure letter dated

cah

8

January the 9th, 2004, and it lists three
witnesses, I think, Ms. Ramjohn, and no exhibits as
well; is that correct?

      MS. RAMJOHN:  That's correct.

      HEARING OFFICER WOODS:  Mr. Hull, I'll
start with you.  Are you in receipt of that
disclosure?

      MR. HULL:  Yes.  No objection from the
parent.

      HEARING OFFICER WOODS:  Mr. Dalton?

      MR. DALTON:  No objection from counsel for
Friendship.

      HEARING OFFICER WOODS:  Okay.  Without
objection, all disclosures are in.  These
documents, therefore, can be relied on by the
parties of course and of course by me in reaching a
decision.

      Mr. Hull, let's start with what's at issue
here.  I read the hearing request and I guess what
I have gleaned from it is concern about whether or
not A⬛ has received speech-language services and
the other issue that I saw was whether or not he

cah

9

should have received an adaptive behavior
assessment.

MR. HULL: Correct, and [inaudible] for
the sake of the hearing is that the issue
pertaining to the adaptive assessment we wish to
withdraw now.

HEARING OFFICER WOODS: Okay.

MR. HULL: But we would still like to
proceed on the other issue.

HEARING OFFICER WOODS: On the other
issue.

MR. HULL: About the speech and language.

HEARING OFFICER WOODS: Services. And is
that a matter of we just don't know?

MR. DALTON: No. Let me--

HEARING OFFICER WOODS: Okay.

MR. DALTON: --I think I can save a lot of
time by giving you 30 seconds of history.

HEARING OFFICER WOODS: Okay.

MR. DALTON: We began looking for a speech
and language pathologist in the summer of 2003.
Unfortunately, speech and language pathologists are

cah

in high demand and even though we diligently
searched for one, we were unable to obtain any.
What happened eventually, though, by December we
made an offer of approximately $20,000 above market
and we were able to obtain the services of a speech
and language pathologist from Prince George's
County.  And she has now started to provide speech
and language services and is actually providing
them at a rate of two to three times what the
provision is in his IEP.  On the 9th of this month
he got an hour.  He is supposed to get an hour a
week.  On the 14th he got an hour-and-twenty
minutes.  And today he got another hour-and-twenty
minutes.  So our plan is to provide--depending on
the scheduling of this student and other
students--two to three times the rate of what his
IEP calls for until we make up the time that he has
missed this school year and we can do that without
any problems prior to the end of the school year.

Therefore, we respectfully request that
the hearing be dismissed as being moot because
we've corrected the problem.  There is nothing that

cah

11

the hearing officer could order us to do that we
are not currently providing. If there wasn't
enough time between now and the end of the school
year we believe there would be a credible argument
that could be made as to fashioning a particular
type of relief that would make sure that that was
accomplished or provide services over the summer
but that not being the case there simply isn't--and
with the withdrawal of the second issue there
really isn't anything that the hearing officer
could order that would provide the relief requested
that has not already been done.

      Now that is not to say that Mr. Hull's due
process hearing request was not legitimate. It was
legitimate. At the time that he filed we still
didn't have someone but time and events have
overcome the problem and at the present moment, as
you can see from the proffer I've made and I have
Ms. Whitehead and also the speech and language
pathologist who could testify to the voracity of
that proffer, he has just this week already
received nearly three times what he would be

cah

12

normally receiving.

      HEARING OFFICER WOODS:  Okay.  Mr. Hull?

      MR. HULL:  Mr. Woods, the parents object to Mr. Dalton's notion that [inaudible]--

      MR. DALTON:  Excuse me.

      MR. HULL:  --[inaudible] claims.  We have to see what happened here.  There has been a tremendous injustice done to this child.  He was--according to his IEP, which has been admitted into the record, he is entitled one hour a week of speech and language services.  This is crucial to his overall education plan.  He also gets two hours a week of specialized instruction.  The reason it's crucial is because if you look at his disability category, his disability category is speech and language impaired.  That means that by not getting his speech and language services it is carrying over to the benefit they could have given him in his specialized instruction but by not getting the main service that he should have been getting it affected his overall success in his IEP.

      We're not talking about just a few weeks

cah

13

here.  We're talking about the entire of month
of--well, September when school--after school
started, the entire month of October, November,
excluding a few days for Thanksgiving, December,
excluding the Christmas holiday, and it wasn't
until last Friday, a week ago today, which turns
out to be the same day as our disclosure deadline,
that they claim that they started implementing
these services.  That's great.  We're very happy so
we have gotten the relief but when I spoke to the
parents before--I believe that they would both like
to be heard so that you aren't left with the
impression that maybe we should move arguing to
save attorney's fees or something because I know
that that's probably the suspicion in these
situations, both parents have asked to be heard as
to why they would like something in writing as an
assurance that their child's rights are going to be
protected and that they're going to get their
services exactly as Mr. Dalton has just proffered.
So with your permission I would like to call the
parents and allow them to make their statements to

cah

14

you.

HEARING OFFICER WOODS:  So if we basically said that September, October, November, December, the missed service months, that's 16 hours of missed services.

MS. SUMTER:  Excuse me.  Actually school started in August, towards the end of August.

HEARING OFFICER WOODS:  At Friendship Edison.

MS. SUMTER:  Yes, it did.

HEARING OFFICER WOODS:  Is that right?  So should I add a week?

MS. WHITEHEAD:  It started--school started on August 24th or the 28th.

HEARING OFFICER WOODS:  Okay.  So that would be--

MS. WHITEHEAD:  That was our first full day of school.

HEARING OFFICER WOODS:  Okay.  All right. I guess that would make another week.  That's the end of the week.

MR. DALTON:  Yes, that's the end of the

cah

15

week so I wouldn't really count that.  So I think

16 is the correct number but I do think--

        HEARING OFFICER WOODS:  And how many have

you made up so far this week?

        MR. DALTON:  So far this week we've made

up one and .75.

        HEARING OFFICER WOODS:  Okay.

        MR. DALTON:  And at that rate we certainly

would make it up before the end of the school year.

I do think as a matter of fairness because I

believe parents--that this process is--we as

attorneys and hearing officers who do this for a

living sometimes forget that parents--this is

usually their first time and having been a parent's

attorney myself, I appreciate your wanting to be

heard and I think that that is certainly something

that the hearing officer should give consideration

to but from a legal standpoint the requested relief

is being provided.  There is nothing additionally

that you could order.

        From a legal standpoint that is the basis

for how we make decisions or how decisions are

cah

16

made.  Certainly if we fail to provide these services over the course of this year, Mr. Hull is an extremely experienced attorney in these matters and I have no doubt that he will file a due process hearing to correct any failure on our part to provide those services and at that time that would be a relevant and timely issue because there would actually be something for a hearing officer to order but at this point in time there really isn't anything that you could order that we aren't already doing.

HEARING OFFICER WOODS:  I don't know--I don't certainly mind you talking but you want to make sure your attorney does it.

MR. HULL:  No, that's fine.  Just before Mr. Marrow speaks I just have something very short to say about what Mr. Dalton said.

HEARING OFFICER WOODS:  Okay.

MR. HULL:  Mr. Dalton is asking you to follow the legal theory that the check is in the mail.  Mr. Woods, I owe you $30 and I've already paid you $5, the rest is in the mail so we don't

cah

17

need to go to court about this.  Yes, I--as a

gentleman's agreement that's great but here we've

had months that have gone by where this child

wasn't getting the services and the school we can't

say was in close communications with the parents

about their efforts up until December when they

finally hired someone.  So whether or not they were

engaged in interviewing everyone on the East Coast

to try and fill this position, the fact is the

parents were in the dark.  When they came to me

they were in the dark about what the school was

doing.

It isn't as though I filed this hearing

request the week that they started providing

services in a way to try and ambush the school.  I

filed this hearing request November 19th.  So I

don't think we should just go by what Mr. Dalton is

asking you to do and say, well, the check is in the

mail so everything is fine.  I think we need a

protection here but I will stop talking now and--

HEARING OFFICER WOODS:  Yes.  Let me

just--without testimony there's just a statement

cah

18

you want to--this isn't the formal hearing you
understand.

MR. HULL:  Right.

MS. SUMTER:  I just don't understand--

HEARING OFFICER WOODS:  You can make your
comment.

MS. SUMTER:  What I don't understand is I
feel that A███ has been hurt by not receiving those
classes.

MR. DALTON:  He has.

MS. SUMTER:  No, no, no, I'm talking about
from September.  Well, you said starting in
September.

MR. DALTON:  I agree with you.

MS. SUMTER:  Up until now.

MR. DALTON:  I agree with you.  I agree
with you but what you have to understand is
hearings are designed--

MR. HULL:  Can she finish her statement,
please?

MR. DALTON:  Well, I think she wanted me
to respond.

cah                                                                    19

        MS. SUMTER:  Not now, no.

        MR. DALTON:  All right.

        MS. SUMTER:  And I think there has been injustice and whatever services you are going to provide it should be in writing.

        MR. MARROW:  Yes, because--

        MS. SUMTER:  Bottom line.

        MR. MARROW:  --basically I'm his father and I've been going to the school trying to get someone at the school to tell me something.  The only person that talked to me was Dr. Camille, the principal, and he told me that A____ was going to get this--this was the beginning of the year when he said the woman was pregnant and I'm understanding, okay, the woman is pregnant, do he have anybody else.  He was--you know, he was like we will get someone in here and he will get his service back pay--you know, like back pay.  You know what I mean?

        HEARING OFFICER WOODS:  Yes.

        MR. MARROW:  And I'm like but like now we've done kept him back last year due to the fact

cah

he told me he was going to get him take care of
last year but they said like that he was getting
services last year and I don't see no documents
telling me that he was getting service last year.
All I did is--like this little lady--this nice lady
right here was saying that this was what some other
people was doing to him last year. So what I want
to know what they was doing to him last year. We
don't know because we was in the "blind" because
nobody wasn't telling us anything and I was at the
school every day. Every day talking to Dr. and Mr.
Moore and Ms. Asan and all these people but nobody
couldn't tell me anything.

        MS. SUMTER:  I just don't want him to be
kept back another year.  That's it.

        MR. MARROW:  Basically we're trying to
assure our kid's future and if you don't want
to--like I told the gentleman earlier, if he don't
want to learn nothing, what is tomorrow going to
be.

        HEARING OFFICER WOODS:  Have you all had a
chance to determine whether those services that Mr.

cah

Dalton indicated were provided this week have been provided this week?

MS. SUMTER:  We just learned today.

HEARING OFFICER WOODS:  You just learned today.

[Simultaneous discussion.]

HEARING OFFICER WOODS:  Okay.

MR. HULL:  It's not that we distrust--

MS. SUMTER:  Yeah, it's just that we just learned today that--

MR. HULL:  We just heard about it when--

[Simultaneous discussion.]

MR. HULL:  --just now that last Friday they provided--

MS. SUMTER:  Yes, on the 9th, the 14th and 16th.

MR. MARROW:  And that's [inaudible] every day.  When I pick him up at school I say, "Did you have speech and language?"  He says, "No, nobody will do nothing with me with the speech."  I just be reading.

MS. SUMTER:  And [inaudible].

cah

22

MR. MARROW:  And she just told me that
there's a woman in there, you know, doing speech
and language with him--

[Simultaneous discussion.]

MR. MARROW:  --while reading.  See we
didn't know that because they didn't tell us all
that.  Like I said, we're in the "blind" not
knowing anything.  When you ask teachers--they're
not speaking to me right now because I went and got
a lawyer.

MR. HULL:  Let's wait until Mr. Dalton
comes back.

HEARING OFFICER WOODS:  Yes, we're hold up
and I'll take us off the record.  I just wanted to
let you finish your statement.

[Simultaneous discussion.]

MR. HULL:  You've made your statement and
so, if necessary, you'll be put under oath and
[inaudible] in that sense and we'll go through that
again if necessary.

[Off the record.]

HEARING OFFICER WOODS:  We took a slight

cah

23

recess here so that a fax, I believe, Mr. Dalton

had received with respect to maybe some insights

with regard to whether those services had commenced

and in what amount. Is that true?

MR. HULL: Yes, and the fax has been very

helpful. It does indicate that he has gotten some

sort of services as Mr. Dalton proffered so we

don't have a dispute with that. The parents are

concerned about the content of the services. I

don't think that's an issue for here. I think

right now the issue we have in front of us is

whether or not you put in writing what Mr. Dalton

has agreed to do and we think that any concerns

that the parents have as to the [inaudible] of what

exactly they've given him the last week can be

addressed in a meeting at the school, which is one

of the things--I don't know if Mr. Dalton said it

on the record but before you went on the record Mr.

Dalton indicated we could have a meeting in mid

February at the school to try to tweak things to

make sure [inaudible] is made whole.

MR. DALTON: In addition--

cah

24

MR. HULL:  So we concede that, yes, some [inaudible] services have been provided on the 9th, the 14th and the 16th, this very morning, as Mr. Dalton proffered earlier and I would like to obviously admit it into the record.

MR. DALTON:  No objection.

HEARING OFFICER WOODS:  Okay.

MR. HULL:  [Inaudible] be asking for you a copy.

HEARING OFFICER WOODS:  I was going to say I would assume they don't want to give this--

MR. DALTON:  We don't--

[Simultaneous discussion.]

MR. DALTON:  Actually I can just fax it to you when we fax you the other ones.

MR. HULL:  That's fine.

HEARING OFFICER WOODS:  Okay.

MR. HULL:  After we go off the record I can get a copy of it from you perhaps.

The issue is whether or not you put in writing a recognition that there is a violation for all those months and a recognition that--an order

cah

that the school implement what Mr. Dalton says he's going to implement because otherwise we have just an oral agreement which the parents are uncomfortable with as you heard them say.

And, although we haven't gotten into this, I would also [inaudible] DCPS holds some liability here as the SEA and I'm sure they're going to argue not at all but here's the situation. As the SEA there's numerous regulations and there's case law and they're all cited in the third bullet in my hearing request as to SEA liability when the LEA is unable to [inaudible] that monitors charter--special ed students at charter schools. So presumably the DCPS employee who monitors all the special ed students at Friendship Edison--and I can understand that they wouldn't know if there was a problem the first two weeks into September or so but we're talking about September, October, November, December. I don't think it was proper for DCPS to not have acted as the SEA when this is happening. In fact, we filed this hearing request November 19th and until today I haven't heard

cah

26

anything from DCPS about this problem. As the SEA,
Congress mandates that they step up when the LEA
can't do what they're supposed to do.

        You heard Mr. Dalton proffer that they had
a hard time getting a speech and language
pathologist so there is the proof that the LEA
couldn't do what they were supposed to do and
that's a textbook example of a situation where the
SEA should have stepped in. And that's why I
think--the motion hasn't been [inaudible] but I
think they're also liable for the harm that has
been done to this child.

        MS. RAMJOHN: If I may respond to Mr.
Hull's accusation. DCPS as the SEA only comes into
the picture after the LEA informs the SEA that they
cannot handle the matter at hand. The LEA never
came to the SEA and said, 'Hey, DCPS, we cannot
find a speech and language pathologist, can you
step in?' Only at that time and only after the
matter has been adjudicated and the SEA--the LEA
has been found not to be able to provide those
services to the child then would DCPS step in and

cah                                                                27

provide those services to the child and that has

not happened in this instance and DCPS respectfully

requests that we be dismissed from this matter.

　　　　HEARING OFFICER WOODS:  Any response to

that?

　　　　[Simultaneous discussion.]

　　　　MR. HULL:  She hasn't denied that they

have a monitor at the school so--

　　　　[Simultaneous discussion.]

　　　　HEARING OFFICER WOODS:  How about a

reaction to the law, though.  She said that she

would step in if informed by the LEA.

　　　　MS. RAMJOHN:  That's clear in the

regulations.  If you'd like me to stipulate which

regulation I most certainly can.

　　　　MR. HULL:  I would like you to because the

regulations I have seen, 34 CFR 300.341, SEA shall

ensure that IEP is implemented.  So that's

[inaudible] written but that's--

　　　　MS. RAMJOHN:  That's only one sentence of

the regulation.  You have to read the entire--

　　　　MR. HULL:  --34.  I mean--

cah

MS. RAMJOHN:  I'll get my regulation.

MR. HULL:  No, I have something that you can--

MS. RAMJOHN:  I'll get mine.

MR. HULL:  Can we go off the record then?

HEARING OFFICER WOODS:  No, we can deal with the other aspect of this case.  I take it essentially what I'm hearing is I want an order so that I can ensure that it's done whereas the IEP says it is to be done and the fact that the service provider is there says it's to be done.  Isn't that true?  If the services are called for in an IEP that says that they are to be provided.

MR. HULL:  Yes, but where we have--we have [inaudible]--

HEARING OFFICER WOODS:  So--

MR. HULL:  --that they didn't provide the [inaudible].

HEARING OFFICER WOODS:  But I think I want to--

[Simultaneous discussion.]

HEARING OFFICER WOODS:  I understand but I

cah

29

want to make clear to the parents because a finding

doesn't do anything for your child. I mean that

finding isn't going to help. In other words,

placing--you saying that DCPS--I mean, LEA didn't

provide speech and language service, they already

acknowledged that. What we're going to do--

[Simultaneous discussion.]

MS. SUMTER:  Why didn't they--why didn't

they just--why didn't they go to D.C. Public

Schools and say, 'Okay, we're having a problem

finding someone.'?

HEARING OFFICER WOODS:  Yes.  I don't know

but let me just--I'm looking at where we are right

at this point, you know. What do--what would that

do for you? Are you satisfied that the services

are being provided from this?

MR. MARROW:  No, [inaudible].

HEARING OFFICER WOODS:  Would you want to

talk to the speech and language therapist?

MR. MARROW:  Yes.  I want some documents.

I want--that little bit right there, they could

have wrote that this morning.

if--

        MR. MARROW:  This is--

        HEARING OFFICER WOODS:  --you know--

        MS. SUMTER:  If a crime was committed.

        [Laughter.]

        HEARING OFFICER WOODS:  What I'm saying to you is that the remedy is what you're getting. That is the remedy.

        MS. SUMTER:  I don't anything funny.

        MR. HULL:  Mr. Woods--and I'm sorry if I--

        MS. SUMTER:  No, no, I was really talking to him.

        MR. HULL:  Mr. Woods, the remedy [inaudible].  This is sort of analogous to an injunction or some sort of order in a civil proceeding where, yes, the IEP requires them to provide these services so we're asking you to order them so they continue to comply with what now they're saying.  Now they're saying they're going to give him three times the services.  So the IEP only requires an hour week so if two weeks from now they're only giving him an hour a week we really

cah

have no recourse to come back because this issue

will have already been brought up.  We need you to

order if they're going to say they're going to

provide him three times the services, we need

something in writing that we can then seek to

enforce because if you dismiss our case it's moot.

What happens if they only--they decide to provide

him an hour a week say next week?  [Inaudible] next

week then perhaps we reinforce what Mr. Dalton said

he would do.  We can't bring back these issues

because then we're up against res adjudicata

because they were already brought up and it's moot.

When you do the order, okay, three times a week,

three times a week then to make up for everything

else that happened.

        HEARING OFFICER WOODS:  Ms. Ramjohn?

        MS. RAMJOHN:  May I respond to that

comment as well?  Hearing officer, if a matter is

dismissed as moot it's not being adjudicated on the

matter.  It's being dismissed as moot.  You cannot

bring or write an order on an issue that is not

right for adjudication.  You can't bring a hearing