cah                                                                                 33

request simply based upon--or a hearing rather or a

hearing order based on conjecture on what may or

may not happen in the future.  If the relief now is

being given then the matter should be dismissed as

moot and if Friendship Edison--

             [Simultaneous discussion.]

             MS. RAMJOHN:   --public charter school--

             [Simultaneous discussion.]

             MS. RAMJOHN:   If Friendship Edison public

charter school does not comply with what they are

stating here today then that is an issue to be

brought forth in a hearing, not what could possibly

happen and the hearing officer should write an HOD

based on what could possibly happen in the future.

No, that's not correct.  And the authority that I

have is 300.312, children with disabilities in

public charter schools.  And if you read that

regulation in its entirety you will see that DCPS

has no issue here and we should be dismissed from

this matter.

             MR. DALTON:   312?

             MS. RAMJOHN:   312.

cah

34

MR. DALTON:  It does clearly state that the charter school is responsible for ensuring that the requirement [inaudible].

MR. HULL:  There are numerous regulations and cases [inaudible] or an SEA shall ensure.  The cases state that the SEA is ultimately responsible. So we have [inaudible] in here above and beyond the LEA regardless of what 312 says.  Yes, the first line of defense is the LEA but the SEA the buck stops with them.  And whether or not they actually knew--they do have monitors.  It hasn't denied that.

HEARING OFFICER WOODS:  What we'll do then--

[Simultaneous discussion.]

HEARING OFFICER WOODS:  Let's say that even if that were found, let's say that I--this is what we really need to make clear.  Let's say for the sake of argument everything your attorney just said is true and I agree and I ordered it, how would it change the remedy that you now have?

MR. HULL:  Well, the child [inaudible].

cah

30

HEARING OFFICER WOODS:  But this is the--

MR. MARROW:  I don't believe that.  I don't believe that because just like they started Friday, it should have been started in September. My son's life is in their hands.  His future.

HEARING OFFICER WOODS:  Yes.

MR. MARROW:  This--we're talking about an eight year old kid who don't have no guidance right now.  Here they like--they be--just like when last year they told us to take some peanut butter and put a stick in his mouth and [inaudible] talk like that.  [Inaudible] all this kind of--you know, stuff that we as parents--one group of people tell us he'll [inaudible] out of it.  Come on.

HEARING OFFICER WOODS:  Yes.  The only thing I can actually find though is that the services were not provided but the remedy is already in place that the services will be provided and are being made up.  So I'm not sure if there's anything beyond that that I could do even if I did write an order.  You see what I'm saying?  In other words, I don't send them to jail.  I'm not sure

cah

This document would be some measure of [inaudible].

HEARING OFFICER WOODS:  No, I asked--the question is how would it change the remedy?

MR. HULL:  It's an enforcement tool. [Inaudible].

HEARING OFFICER WOODS:  How would it change the remedy?  What is the remedy?

MR. HULL:  Right now [inaudible] some sort of gentleman's agreement.  We can't enforce--

HEARING OFFICER WOODS:  No, no, the remedy is that the IEP will be implemented in its essence and the remedy is that the IEP--I mean, the real essence of it is that the speech and language services called for in the IEP will be provided as per the IEP and made up for those services that have been missed.  What would be different with an order from that?

MR. MARROW:  In my opinion--

HEARING OFFICER WOODS:  No, no.  This is more of a legal argument--

[Simultaneous discussion.]

HEARING OFFICER WOODS:  It's a very narrow

cah

question.

        MR. HULL:  No, because he hasn't
[inaudible].

        HEARING OFFICER WOODS:  Tell me what the
remedy.

        [Simultaneous discussion.]

        MR. HULL:  Until the child has been made
whole the remedy has [inaudible].

        HEARING OFFICER WOODS:  What is the
remedy?  What is--

        MR. HULL:  It's to provide some sort of
legal guarantee that the child will be made whole.
You can't forcefully obligate them to--

        HEARING OFFICER WOODS:  Let me ask Mr--

        [Simultaneous discussion.]

        HEARING OFFICER WOODS:  That argument
would be as soon as an IEP is initiated or
developed you could come here and make me put me
put an order in to make sure that they would
effectuate the IEP.

        [Simultaneous discussion.]

        MR. HULL:  [Inaudible] because here we

cah

have a clear violation that they conceded to.

We're not pulling this out of thin air, sir.

      HEARING OFFICER WOODS:  I understand that.

I didn't--again you're just escaping my question to

go back to an argument that I already understood.

I think--I don't want--I don't like parents to

leave here not understanding what's taken place and

I want you to help me with this.  How would the

remedy change with my order?  Would they get

anything different than made up services and the

services that this IEP called for?

      MR. HULL:  No, but bottom line is it makes

no difference as to whether or not [inaudible].

      HEARING OFFICER WOODS:  So did you hear

that?  The answer is no.  Now, so we're arguing

about--in terms of the relief, I can't order

anything different than what you're likely already

getting.

      [Simultaneous discussion.]

      HEARING OFFICER WOODS:  You understand?

I'm just--

      [Simultaneous discussion.]

cah

MR. MARROW: You say likely. Likely
already getting. That don't mean that we're
guaranteed getting it.

HEARING OFFICER WOODS: Well, I
don't--again the only thing I have--

[Simultaneous discussion.]

HEARING OFFICER WOODS: I have to keep an
objective standpoint because I don't want to decide
whether I agree with the representations that have
been made.

[Simultaneous discussion.]

MS. SUMTER: All right.

[Simultaneous discussion.]

MR. MARROW: [Inaudible] the one--all
these months we passed and all we've got is that
one document right there from that school saying--

HEARING OFFICER WOODS: Well, let me say
this, though, Mr. Marrow--

[Simultaneous discussion.]

MR. MARROW: --that my son is receiving
the services.

HEARING OFFICER WOODS: --because again

you are--you know, this--in terms of--

            MS. SUMTER:   That--on that paper he's

getting the services.   That's it.

            HEARING OFFICER WOODS:   Yeah.   Let me say

this that in terms of--one of the ways to establish

that your child is getting services--because if

my--let me just say this to you.   My understanding

is that IEP issued on April 23rd, '03, was your

first.   Is that correct?

            MR. MARROW:   Yes.

            HEARING OFFICER WOODS:   And this may be

your first due process hearing.

            MS. SUMTER:   It's the first with charter.

            MR. HULL:   Initial IEP.

            MR. MARROW:   Oh.

            HEARING OFFICER WOODS:   So this is--

            [Simultaneous discussion.]

            HEARING OFFICER WOODS:   And this is your

first due process hearing?

            MR. MARROW:   Yes.

            HEARING OFFICER WOODS:   Okay.   So part of

this is--and I--again this is me, Woods, knowing

cah

that you've got to go out of here with some understanding of what this process is about and what you can get from it. One of the things that you--I want you to understand is if there ever is a dispute with regard to what are called the services over and above the instruction that a statement has been given, proof of whether the service has been provided is in a form like this. This is typically what is presented at a hearing like this to say here is what has been provided and what you do is you look at those forms over a period of time and determine, well, have all of the services been provided. So on the one hand this is that measure. Now you might--

        [Simultaneous discussion.]

        HEARING OFFICER WOODS:  Let me finish. Now you might think there should be another measure and there may be but you might want to create that. For example--

        MR. MARROW:  [Inaudible].

        HEARING OFFICER WOODS:  Pardon me?

        MR. MARROW:  [Inaudible].

cah

41

HEARING OFFICER WOODS:  But you may want to create another measure and another measure could be in terms of your involvement with the school where there is some communication even with you weekly or periodically.

MR. MARROW:  [Inaudible].

HEARING OFFICER WOODS:  Well, you know, that part again is not before me--

[Simultaneous discussion.]

MR. HULL:  There is a case that comes to mind.

HEARING OFFICER WOODS:  No, I'm not going to go--

[Simultaneous discussion.]

HEARING OFFICER WOODS:  Mr.--

[Simultaneous discussion.]

HEARING OFFICER WOODS:  No, you may not. I'm trying to explain something to the parents and you're sitting here fighting for attorney's fees. Let me deal with the parent--

MR. HULL:  [Inaudible].

HEARING OFFICER WOODS:  That's what I said

cah                                                                      42

because I'm dealing with relief.

        MR. HULL:  Mr. Woods, you've heard the
parents state why they want this in writing.

        HEARING OFFICER WOODS:  Mr. Hull, you
allow me to finish my statement.

        MR. HULL:  Mr. Woods, at this time I would
ask that you recuse yourself in the fairness in
this hearing.  You have expressed a bias by saying
that my motivations here are based on attorney's
fees--

        HEARING OFFICER WOODS:  No, I said--

        MR. HULL:  --without there being any
evidence.

        HEARING OFFICER WOODS:  And I will not
recuse myself.  That's not a basis to recuse myself
for telling what--I'm here to decide a case and
what I'm hear I'm going to use that as a basis of
my decision.

        MR. HULL:  Well, as long as the record
reflects my motion.

        HEARING OFFICER WOODS:  Well, that's fine.
Sir, your motion is denied.  That's not a basis

cah

43

upon which you can recuse--I would have to recuse myself is that I made a judgment about the case that I'm to decide. That is my job. Now, let's deal with the--I'm here dealing with not the motion to dismiss. That has nothing to do with what I'm dealing with the parents about. What you're trying to interject as a motion to [inaudible]. I'm not even entertaining that in my discussion with the parents. My discussion with the parents is with this backdrop.

My sense of this--my role is different than the attorneys. My role is to really try to figure out what's at issue and as a practical matter how you get relief because that's what he's asking me to do and your attorney said put it in writing because if you do it somehow it's going to get done.

What I'm really trying to explain to the parents because at least from my reading of the file it appears this may be your first time in this process and I wanted you to understand how this process works.

cah

MR. MARROW: [Inaudible] answer my question. So since this is our first time this is our last time.

MS. SUMTER: No.

MR. MARROW: [Inaudible] so we'll have nothing to fall back on if they don't give him all the services so somewhere down the line we've lost, right?

HEARING OFFICER WOODS: No.

MR. MARROW: So we can't file again and we've got to go back to another attorney and we've got to--

MS. SUMTER: No.

MR. MARROW: --do all this again.

MS. SUMTER: No.

HEARING OFFICER WOODS: No.

MS. SUMTER: We just come back again.

HEARING OFFICER WOODS: Yes. Well, you're really getting a good understanding of this.

[Laughter.]

HEARING OFFICER WOODS: She's a quick learner but that's absolutely correct that if for

cah                                                              45

some reason--

        MS. SUMTER:  If they don't do their job

we're back here.

        HEARING OFFICER WOODS:  Okay.

        MS. SUMTER:  That's it.

        HEARING OFFICER WOODS:  Well, that's

absolutely correct but what we're looking at is as

of today what's at issue.

        MS. SUMTER:  [Inaudible].

        HEARING OFFICER WOODS:  Now let me make

sure we're clear.  I think that I wanted the parent

to really understand that these forms track--they

call them account tracking forms.

        MS. SUMTER:  Mm-hum.

        HEARING OFFICER WOODS:  These are the

forms that the school documents the service that it

provides.

        MS. SUMTER:  I understand that because I

work for [inaudible].  I understand what you're

saying.

        HEARING OFFICER WOODS:  And you can

challenge it.  You certainly can challenge it and

cah

46

say that I don't believe those services are being provided but this is what they will offer as proof that the services are being provided. So now beyond that there are other things that you could set up yourself as a parent interested and concerned about your child and that would be [inaudible] and you decide on how you would want to do that. If for some reason the services aren't being provided at any time you would be able to come back.

For example, here's maybe what would clear it up for you: What if I issued an order, Mr. Marrow, and they still don't provide it? Could you come back?

MR. MARROW: That's what I'm trying to find out.

[Simultaneous discussion.]

MS. SUMTER: You can come back.

MR. MARROW: True.

MS. SUMTER: You could come back.

HEARING OFFICER WOODS: You could come back.

cah                                                                    47

[Simultaneous discussion.]

        MS. SUMTER:  [Inaudible] this job is not

being done you could come back.

        MR. MARROW:  Like I said, they could have

wrote that thing this morning so how do we know

they did this--

        HEARING OFFICER WOODS:  You could

challenge it.  Do you want to?

        MR. HULL:  But I think we could always

come back on the IEP--

        HEARING OFFICER WOODS:  Let me finish with

the parent.

        MR. HULL:  --[inaudible] but I think the

parent doesn't completely understand--

        MS. SUMTER:  I understand--

        [Simultaneous discussion.]

        MR. HULL:  --but Mr. Marrow doesn't.

        [Simultaneous discussion.]

        MR. MARROW:  I don't understand nothing.

[Inaudible].

        [Simultaneous discussion.]

        MR. HULL:  --the IEP as our back up if the

cah                                                                    48

one hour a week isn't provided but here we're

talking about more than one hour a week to make

this child whole.  We're talking about--

        HEARING OFFICER WOODS:  Do you want to

come to agreement on that?  Are you asking if there

is agreement?

        [Simultaneous discussion.]

        MR. HULL:  Well, yes, I'm asking--well,

they're not willing to have it put in writing.  We

want something in writing that the parent--

        [Simultaneous discussion.]

        MR. MARROW:  What's wrong with that?

        MR. HULL:  --could then have something

enforceable.  Otherwise--

        HEARING OFFICER WOODS:  Is there objection

to agreeing to provide--I don't know.  Is that what

you're saying?  You're going to give him three

hours in addition to the one hour?

        MR. DALTON:  No.  I explained based on

other children's schedules, other IEPs, the fact we

have a backlog on a number of children that we were

setting up a schedule to provide two to three times

cah

49

the amount of services so that by the end of the year we will have made up these 16. Already in the first week we've made up two. So at that rate we would be done at the end of February and we still have March, April and May. So there's a lot of extra time built into this.

And I think Ms. Ramjohn's statement about trying to fashion a remedy around contingencies that are going to happen in the future is a pretty difficult job. I mean, it's really impossible. I mean what could happen or could not happen [inaudible]--as you stated in your statements to the parent is a legally enforceable contract.

An order adds nothing to that legally enforceable contract and if Mr. Hull wants to come back at some point in time we'll come back either because we're behind schedule or for some reason he feels that we violated the IEP. But we're already providing and we've already demonstrated that we have a plan in process to make up the 16 hours and we're willing to do that. If we fail to do that then it would be right. It's really moot at this

cah

50

point and the critical question that you asked is how does whatever they're asking do change the remedy currently being provided and Mr. Hull admitted that it does not. The answer to that question [inaudible]. And that's really the whole crux of this.

And what I would suggest is that we could continue to argue back and forth but I think the record is very clear as to the positions of DCPS, the charter school and the parents. And I think that unless the parents have additional questions for--

MS. SUMTER: I have one.

MR. DALTON: --that perhaps the best thing to do is for you to reserve your judgment and issue an appropriate determination.

MR. HULL: Mr. Woods, in [inaudible]--

MS. SUMTER: I have one.

MR. HULL: --versus [inaudible] in United States District Court for the District of Columbia held that compliance providing the remedy a short time before a hearing or a judicial proceeding does

cah

not meet the issue because of the--and I don't have

the case in front of me. With your permission I

would like time to keep the record open so I could

submit perhaps a written argument relating to that

case but I can tell you the citation of the case is

[inaudible] versus [inaudible]. I don't have the

exact volume numbers and it does provide that the

cases where--there's a theory of [inaudible]

capable of repetition--

         MR. DALTON: Yes.

         MR. HULL:  --review and the court held

that claims under the IDEA falls squarely under

that doctrine such that they aren't mooted merely

by providing the remedy because these sort of

claims are capable of being repeated because the

child is under IDEA jurisdiction until they're 22

and they evade review because they can always

provide a remedy before we actually get to the

hearing as they did here. They provided a

remedy--they started providing a remedy just last

week. It's not as though they started the day I

filed my hearing request. They didn't start until

52

just last week. So I think that this situation falls squarely under the [inaudible] versus [inaudible] scenario and, therefore, this claim is capable of repetition [inaudible] evading review and is not in any way rendered moot by the fact that they are not complying with the IDEA.

HEARING OFFICER WOODS: I don't believe that has ever been my contention in my discussion with the parties, mootness or not. My contention has only been what could my order do with respect to relief that would be different than the relief that is being provided. I never [inaudible] the fact. That's Mr. Dalton's position but that's not--you have not heard me utter those words. My words have always been based on what I'm being asked to do how would that change the current situation.

Now--so, you know, that's really an argument that will be made and I guess I'd consider it with respect to the parties but that's not the reason I'm asking these questions.

MR. MARROW: [Inaudible].

cah                                                                      53

             HEARING OFFICER WOODS:  Do you all want--I

guess I'd let you--

             MS. SUMTER:  [Inaudible].

             HEARING OFFICER WOODS:  --at this point if

you feel that there's a record that needs to be

made then--

             MS. SUMTER:  [Inaudible].  This is the

first step.  This is it.  This is the first step.

             MR. HULL:  Can we take a recess so I could

speak with my clients?

             HEARING OFFICER WOODS:  Any objections to

that?

             MR. DALTON:  No.

             HEARING OFFICER WOODS:  Okay.

             [Off the record.]

             HEARING OFFICER WOODS:  Okay.  I think we

took a break here so that Mr. Hull and Ms. Sumter

and Mr. Marrow would be able to chat in light of

what they're hearing and I'm not sure where we are.

I'll turn back to Mr. Hull to help us.

             MR. HULL:  I think where we were--well,

there's two questions I think that they want to

[inaudible].  What do the parents want?  And we've
already all talked about they want something in
writing from you.  And I think the gist of what
you've been asking is, well, why do they want that
if they already said that they were going to do it.
So--

    HEARING OFFICER WOODS:  No, I never asked
why do they want that.  I want my question to be
very clear so the parents understand.  I could
write a decision with respect to this hearing and
at the end of the day if Mr. Hull in your case as
you've indicated I would conclude that this child
missed services and is entitled to make up services
and to keep up with the services that the IEP calls
for, all right.

    MS. SUMTER:  Mm-hum.

    HEARING OFFICER WOODS:  It is my
understanding that that is exactly what is
happening that the missed services are being made
up and the services called for in the IEP are
already being provided.  So my only question has
been so what would my order add that would be

cah                                                                                    55

different than the relief that you've already--

        [End provided tape recording.]

                -  -  -