Page 2
G. W█████
S/L Eval.

*Language*

Information was obtained through formal and informal assessment measures. The following tests were administered:

The Expressive One Word Picture Vocabulary Test – 2000 was administered to assess single word expressive vocabulary by asking G████ to name pictures as they were presented. G████ achieved a standard score of 70 (average range = 90-110). This score suggests G████ was functioning significantly lower than age-level expectations on this test of single-word expressive vocabulary knowledge. Often G████ responded to a test item with, "I don't know". On several occasions, G████ was able to give the function of the item presented in the picture but was unable to name it correctly. G████'s score on this tool indicates a mild deficit in expressive vocabulary.

The Receptive One Word Picture Vocabulary Test – 2000 was administered to assess single word receptive vocabulary. G████ was asked to point to one of four pictures which most accurately represented the word spoken by the examiner. G████ achieved a standard score of 79 (average range = 90-110). This score suggests that G████ was functioning lower than age-level expectations on receptive vocabulary knowledge. On this test, G████ appeared to "guess" a lot. She would shrug her shoulders and point randomly to one of the four pictures presented. G████'s score on this subtest indicates a mild deficit in receptive vocabulary.

The Clinical Evaluation of Language Fundamentals - 3 was administered to assess G████'s receptive and expressive language skills, specifically word meanings (semantics), word and sentence structure (morphology and syntax), and recall and retrieval (memory). Those scores were as follows:

| Subtest | Standard Score (average = 10 ± 3) Subtests only | Percentile Rank (average = 50) |
|---|---|---|
| Concepts and Directions | 4 | 2 |
| Word Classes | 5 | 5 |
| Semantic Relationships | 3 | 1 |

Page 3
G. W███████
S/L Eval.

| Subtest | Standard Score (average = 10 ± 3) Subtests only | Percentile Rank (average = 50) |
|---|---|---|
| Total Receptive Language | 53 | 1 |
| Score (average range = 85-115) | | |
| Sentence Assembly | 9 | 37 |
| Formulated Sentences | 9 | 37 |
| Recalling Sentences | 7 | 16 |
| Total Expressive Language Score (average range = 85 - 115) | 90 | 25 |
| Total Language Standard Score (average range = 85 - 115) | 70 | 2 |

G███'s total standard language score of 70 placed her below the average range for her age. Her receptive language standard score of 53 was significantly below the average range for her age, indicating moderate deficits in receptive language skills. G███'s expressive language standard score of 90 placed her within the average range for her age, indicating normal expressive language skills.

G███ scored below the average range for her age on the Concepts and Directions subtest which required her to follow directions containing the concepts of inclusion/exclusion (i.e., not, except), coordination (i.e., and), temporal (i.e., after, before), conditional (i.e., if) and location (i.e., next to, closest) in one-two and three-level commands. This difficulty may impact G███'s ability to follow directions in the classroom and on assignments. Difficulties were noted with directions containing inclusion/exclusion (all except, all but one), location (next to, between), and temporal concepts (then, same time, before).

G███ scored below the average range on the Word Classes subtest which required her to listen to a variety of words and choose the two words out of three or four which were related by the following categories: part-whole, semantic class features, synonyms, or antonyms. As a result of

Page 4
G. W█████
S/L Eval.

this deficit, G███may have difficulty using these different word relationships in the classroom. Difficulties were noted with identifying antonyms and synonyms.

On the Semantic Relationships subtest, G███scored below the average range. She was asked to process comparative (i.e., older than), sequential (i.e., first, next), spatial (i.e., front of), and temporal relationships (i.e., before, after) and passive voice. On this subtest, G███had the most difficulty with comparative and spatial relationships. In the classroom, G███may have difficulty understanding word relations and meanings, interpreting passive voice in listening and reading, and using comparative, sequential, spatial, and time relations.

On the Formulated Sentences subtest, G███scored within the average range for her age. This subtest required her to construct original simple, compound, and complex sentences related to a visual cue, incorporating key words or phrases.

The Recalling Sentences subtest measured G███s ability to remember and repeat sentences after the examiner, which increased in syntactic and semantic complexity. Test results fell within the average range for her age. Sentence types included interrogative (e.g., questions), declarative (e.g., statements), relative clause, negative, and noun modification.

The Sentence Assembly subtest required G███ to make two intact sentences from visually and auditorially presented word clusters. G███s score fell within the average range for her age. G███was able to construct 2 sentences out of words such as, "she opened, she ate, the jar, the pickle, before."

*Pragmatic Skills*

Pragmatic communication refers to the ability to use language and non-verbal skills for a variety of effective purposes. G███used appropriate language during the assessment. When she was unsure of an answer, she used the process of elimination to help her come to the correct answer. At times she also clarified and revised her verbal output. G███also used skills such as turn-taking and eye contact effectively.

Page 5
G. W█████
S/L Eval.

## SUMMARY

G████ W██████, a 14-year-8-month-old female, was evaluated due to concerns about speech and language. Assessment results indicated that G███has mild deficits in both receptive and expressive vocabulary as well as moderate deficits in receptive language skills. Strengths were noted in G████'s ability to formulate sentences, recall sentences, and assemble sentences. G████ exhibited difficulties with following directions, grouping words into categories, and finding relationships between words. Pragmatic language skills were age appropriate. Articulation skills were within the average range for her age. Oral-motor skills were also found to be adequate for speech. Voice and fluency skills were found to be within the average range for her age.

## RECOMMENDATIONS

1. Speech-language therapy is recommended for two thirty-minutes sessions per week to address G████s difficulties with receptive language and receptive and expressive vocabulary.

   Specific goals should include:

   Processing relationships between words (specifically sequential and comparative)
   Learning new vocabulary and using these new terms as they are presented
   Following directions
   Recalling information verbatim

2. Recommendations/Strategies for the Classroom:
   - Adapting the length and complexity of directions given
   - Enhancing directions with outlines, diagrams, visuals, flow charts, and schematics
   - Enhancing associations by comparing and contrasting
   - Preteaching activities for making inferences, verbal problem solving, and using verbal analogies
   - Preteach, teach mini-lessons to develop understanding and use of comparisons, sequences, space, time, and meaning relations in speaking and writing

Page 6
G. Wi███████
S/L Eval.


Beth Wilkinson, M.S., CF-SLP
Speech-Language Pathologist


Twhanna J. Green, Ph.D., CCC-SLP
CF Supervisor

blic Charter School   Community Vision   World Class _____ation
r G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

**EXHIBIT**
QN-26

## I. IDENTIFICATION INFORMATION

Student Name: Last **W**_____   First **G**_____   MI **R**   Date of IEP: 6-13-02

Student ID: _____   Soc. Sec. No 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   Age 15   Grade 8   Date of Last IEP Meeting:

Gender ☐ M ☒ F   Date of Birth 1-30-87   Ethnic Group African-American   Date of Most Recent Eligibility Decision: 6-13-02

Address 201 37th Pl. S.E.   Purpose of IEP Conference:
☒ Initial IEP  ☐ Review of IEP
☐ Requested Eval  ☐ 3yr ReEval

☐ Non-Attending   Wash.   D.C. 20019   Indicate Level of Standard Assessment III

Attending School F.E.C.A.   Home School _____

☐ Elem.  ☐ Mid/JHS  ☒ SHS  ☐ CWS   ADDENDA TO BE ATTACHED AS NEEDED Check the appropriate box(es)

Parent Towanda Williams

Address of (if different from student):   ☒ Parent ☐ Guardian ☐ Surrogate

| BEHAVIOR | | TRANSPORTATION |
| ESY | | TRANSITION |

Telephone: Home (202) 581-9558   Work _____

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | ENGLISH | ENGLISH | ENGLISH | ENGLISH | Oral |
| Parent | ENGLISH | ENGLISH | ENGLISH | ENGLISH | Rdg./Written |
| Home | ENGLISH | ENGLISH | ENGLISH | ENGLISH | Instrument |
| | | | | | Date |

## IV. SPECIAL EDUCATION AND RELATD SERVICES SUMMARY

| SERVICES | SETTING | | | FREQUENCY | | PROVIDER | BEGINNING DATE | DURATION | |
|---|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./Min | D/W/M. | | Mm/dd/yyyy | # | wks/mos |
| Specialzed Instruct | 20h | 20hr | 20hr. | 20hr. | W | Sped/Reged Tchrs | 6/14/02 | 10mo. | months |
| Speech & Lang. Therapy | | 1hr | 1hr | 1hr | W | Speech Pathologist | 6/14/02 | 10 | mos. |
| Psychological Counseling | | 30min | 30min | 30min. | W | | 6/14/02 | 10 | mos |
| TOTAL | | 21.5 hrs | 21.5 hrs | Hours Per Week | | | | | |

## V. DISABILITY(ies)

Mental Retardation

MR

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☒ 21-60%  ☐ 61-100%
Percent of time NOT in a Regular Education Setting
~~77%~~ 64%

## VI. IEP TEAM (Participants in the development of the IEP)   Print and sign your name below.

| | | |
|---|---|---|
| Towanda Williams | Beth Wilkinson | Beth Wilkinson MSCF-SLP |
| aron G. Donerson Jr. | Aaron G. Donerson | Arlene Ky Bing |  Arlene K Jr |
| Wallace Henry III | Wallace Henry III | |

☒ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature Towanda Williams   Date 6-13-08

Friendship Edison Collegiate
Public Charter School    Community Vision    World Class Education
Carter G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

| Student | G█████ W█████ | | Managing School | |
|---|---|---|---|---|
| Student ID Number | ████████ | DOB ███ ██ | Attending School | FECA |

## VIII. SPECIALIZED SERVICES          Additional Comments                    Goal Number: |

Area addressed by goal: ___ **Reading**

**ANNUAL GOAL: (including mastery criteria)**

G█████ will demonstrate measurable growth over her present level of reading skills with 80% mastery.

Provider(s): Special / Regular Education Teachers

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| G█████ will Decode unfamiliar words using phonic skills with 80% accuracy. | | monthly |
| G█████ will use context clues to help understand a word with 80% accuracy. | | monthly |
| G█████ will identify the main idea given a short passage with 80% accuracy. | | monthly |
| G█████ will identify the author's purpose (amuse, inform, persuade) given a short passage with 80% accuracy. | | monthly |
| | | |

**EVALUATION PROCEDURE(S)**

(Portfolio)    Log    Chart    (Test)    (Documented Observation)    Report    Other _____

Public Charter School    Community Vision. World Class Education
Carter G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

| Student | G_____ W_____ | Managing School | |
|---------|---------------|-----------------|---|
| Student ID Number | _____ | DOB _____ 87 | Attending School _FECA_ |

## VIII. SPECIALIZED SERVICES    Additional Comments    Goal Number: |

Area addressed by goal: _Written Expression_

**ANNUAL GOAL: (including mastery criteria)**

G_____ will demonstrate measurable growth over her present level of functioning in written expression with 70% accuracy

Provider(s): _Special / Regular Education Teachers_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| G_____ will edit and revise written work, proofread for capitals, commas, punctuation and spelling with 80% accuracy. | | monthly |
| G_____ will use compound and complex sentences with 70% accuracy. | | monthly |
| G_____ will use the writing process to develop a variety of effective written products: (pre-writing, drafting, revising, editing, and publishing) with 70% accuracy. | | monthly |
| G_____ will effectively use descriptive words and a variety of sentence types in writing with 70% accuracy. | | monthly |
| | | |

## EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

Public Charter School
Caner G. Woodson Campus    Community Vision... World Class Education
4095 Minnesota Avenue, NE
Washington, DC 20019

| Student ▓▓▓ | Managing School | |
|---|---|---|
| Student ID Number ▓▓▓ | DOB ▓▓ '87 | Attending School _F. E. C. A_ |

## VIII. SPECIALIZED SERVICES    Additional Comments    Goal Number: |

Area addressed by goal: ___Mathematics___

ANNUAL GOAL: (including mastery criteria)

G▓▓ will demonstrate growth over her present level of math skills with 80% accuracy.

Provider(s): _Special / General Education Teachers_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| G▓▓ will use place value and expanded notation to compare and order whole numbers to 1,000,000 and decimals through hundreths with 80% accuracy 4 out of 5 trials. | | monthly |
| G▓▓ will add and subtract like fractions and mixed numbers with 80% accuracy. 4 out of 5 trials. | | monthly |
| G▓▓ will solve one and two-step problems using addition, subtraction, multiplication and division of whole numbers with 80% accuracy. 4 out of 5 trials. | | monthly |
| G▓▓ will solve simple equations and inequalities with 80% accuracy. 4 out of 5 trials. | | monthly |
| G▓▓ will organize, display and compare data sets in a variety of ways to answer questions or test a hypothesis with 80% accuracy. | | monthly |

## EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

07-02-2001    Division of Special Education    Appendix A    IEP    Page 3 of 4

Friendship Edison Collegiate
Public Charter School    Community Vision...W    Class Education
Carter G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

| Student | C___ W___ | | Managing School | |
|---|---|---|---|---|
| Student ID Number | ___ | DOB ___ -87 | Attending School | EECA |

Goal Number: |

## VIII. SPECIALIZED SERVICES

Additional Comments

Area addressed by goal: _Social Emotional_

ANNUAL GOAL: (including mastery criteria)

C___ will demonstrate improved problem solving skills and behavioral controls

Provider(s): Social worker, psychologist, counselor

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) . | Date Mastered | Evaluation Schedule |
|---|---|---|
| C___ will improve her coping skill | | Quarterly |
| C___ will identify sources of anxiety | | Quarterly |
| C___ will develop more positive responses to sources of anxiety | | Quarterly |
| C___ will identify when she needs assistance and appropriately request help | | Quarterly |
| | | |

## EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

Friendship Edison **Collegiate**
Public Charter School   Community Vision... W...... Class Education
Carter G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

| Student  G____ W_____ | | Managing School _____ | |
| Student ID Number _____ | DOB __87 | Attending School  F.E.C.A | |

## VIII. SPECIALIZED SERVICES       Additional Comments

Goal Number: |

Area addressed by goal:  Communication

### ANNUAL GOAL: (including mastery criteria)

G____ will use language to understand the interrelationship of words and concepts with 70% accuracy.

Provider(s):  Speech Pathologist/Classroom Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) **With mastery at the 70% criterion level,** | Date Mastered | Evaluation Schedule |
|---|---|---|
| G____ will answer questions related to functions | | Quarterly |
| G____ will recognize likenesses and differences of given objects | | Quarterly |
| G____ will describe likenesses and differences of given objects | | Quarterly |
| G____ will complete opposite analogies (e.g. ice is cold; fire is hot) | | Quarterly |
| G____ will understand and use similies and metaphors (e.g. fly like a butterfly, sting like a bee) | | Quarterly |

### EVALUATION PROCEDURE(S)

Portfolio      Log      Chart      Test      X Documented Observation      Report      Other _____

**Friendship** Collegiate
Public Charter School    Community Vision...World Class Education
Carter G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

| | |
|---|---|
| Student G___ W___ | Managing School _____ |
| Student ID Number _____ DOB ___ '87 | Attending School  F.E.C.A |

Goal Number: |

### VIII. SPECIALIZED SERVICES    Additional Comments

Area addressed by goal: Communication/Vocabulary

**ANNUAL GOAL: (including mastery criteria)**

G___ will use appropriate vocabulary skills to communicate effectively in the classroom with 70% accuracy.

Provider(s): Speech Pathologist/Classroom Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| **With mastery at the 70% criterion level,** | | |
| G___ will use vocabulary for daily living skills | | Quarterly |
| G___ will give the meanings of words, including homonyms (words with the same meanings and different spelling) and homographs (words that are spelled the same but have different meanings) | | Quarterly |
| G___ will give definitions of words using appropriate detail | | Quarterly |
| G___ will infer meanings of words/phrases from context | | Quarterly |
| G___ will use phonetic strategies to decode unknown words | | Quarterly |

### EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test    X Documented Observation    Report    Other _____

Friendship Edison Collegiate
Public Charter School    Community Vision…W      Class Education
Caner G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

| Student | G_____ W_____ | Managing School _____ | DCPS – IEP |
|---|---|---|---|
| Student ID Number _____ | DOB ____ 87 | Attending School _FECA_ | Page 4 of 4 |

Additional Comments:

## IX. LEAST RESTRUCTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification , accommodation and/or supplemental aids and service be used for a LRE setting in regular education?    (Yes) No

Explanation for removal out of regular education classroom.

Student is significantly below grade level and requires intensive, individualized instruction

## X. Supplementary Aids and Services

| Classroom Needs | SETTING | | | FREQUENCY | | PROVIDER | BEGINNING DATE |
|---|---|---|---|---|---|---|---|
| (Do not name products or companies) | GenEd | ☆ SpEd | Total | Hr./Min | D/W/M. | (by discipline) | (mm/dd/yyyy) |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    None Needed

| | |
|---|---|
| Timing/Scheduling: | Extended Time / Small |
| Setting: | Small Group |
| Presentation: | Repeated instruction |
| Response: | oral presentation of written instructions and reading passages |
| Equipment: | calculator |

## XI. STATE AND DISTRICT ASSESSMENTS:

| Level I | Tested with non-disabled peers under standard conditions without accommodations | Level II | (Describe accommodations for Level II) Tested under standard conditions with special accommodations |
|---|---|---|---|
| Level III ✓ | (Describe non-uniform conditions for Level III) Tested under non-standard conditions with permissible accommodations | Level IV | (Describe the alternative assessment) |
| Level V | Portfolio: | | |

## XII. Areas Requiring Specialized Instruction and Related Services:

Reading
Mathematics
Written Expression
Other

Physical/Sensory
Social Emotional
Physical Development

Transition
Vocational
Independent Living
Speech/Language

Modifications:
Language Arts/English
Social Sciences
Biological & Physical Sciences
Fine Arts

None Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XII. PLACMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATION | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Combination Gen Ed. and Res Classrm | Accept | Time away from non-disabled peers |
| Out of Gen Ed Classroom | Reject | |

Modification(s)/Accommodation(s) to address the harmful effects:

Participation in non-academic subjects with non-disabled peers

Location for Services    FECA

213

## DOCUMENTED LEVEL OF SERVICE (PERM)
Complete and attach to MDT/IEP meeting notes

| | | | |
|---|---|---|---|
| School _FECA_ | Principal _Mrs. Adams_ | Special Education Coordinator _Mr. Henry_ | |
| Date _6-13-02_ Case Manager | | Technical Support Supervisor | |
| Student _G___ W___ | DOB _____87 Age _15_ Grade _9_ ID# _____ | SSN# _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_ | |
| Parent _TOWANDA Williams_ | Telephone (H) _(202) 581-9558_ (W) | | |
| Address: Street # Street _201 37th Pl. S.E._ Quad Apt. No. City _Wash._ Sate _D.C._ Zip Code | | | |

REFERRAL SOURCE: (Check) ☐ 120 Day ☐ Reeval. ☐ HOD ☐ SA ☐ MA

☐ Nonpublic ☐ Residential ☐ Citywide ☐ Courts ☐ Local School ☐ Other:

Previous least restrictive environment (LRE Setting):

## JUSTIFICATION FOR SETTING CONSIDERATION
(Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| —Extended time<br>— repeated directions<br>—oral response | Current IEP | Yes ☑ | No ☐ |
| | Signatures of required participants (MDT notes) | Yes ☐ | |
| | Intervention Behavior Plan | Yes ☐ | |
| | Copies of current class work and homework assignments. | Yes ☐ | |
| | Medical Reports: | Yes ☐ | No ☐ |
| | Clinical Reports: | Yes ☐ | No ☐ |
| | Psychiatric Reports | Yes ☐ | No ☐ |
| | Medications. | Yes ☐ | No ☐ |
| | Attendance Record | Yes ☐ | |
| | Copies of most recent evaluation(s) | Yes ☑ | |

| 4. Results of all interventions: (T.A.T, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| Student continues to make minimal progress towards the above accomodations | |

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school<br>(Determined through the IEP team.) | SERVICE PROVIDER<br>(Based on documented need) | LEVEL OF SERVICE<br>(Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☐ combination general education and resource classroom | ☐ combination of general educators, special educators and related service providers | ☐ between 21% and 60% of service time |
| 3 | ☐ *out of general education classroom | ☑ special educators and related service providers | ☐ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children m those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

Check the level of need as indicated:
### DIRECTIONS:

| | |
|---|---|
| If two or three boxes are checked in the Row 1, check LOW.<br>If two or three boxes are checked in the Row 2, check MODERATE.<br>If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row,<br>check either MODERATE or HIGH,<br>depending on the need of the student. |

## 7. LEVEL OF NEED

| ☐ LOW | ☐ MODERATE | ☑ HIGH |
|---|---|---|

**Edison-Friendship Collegiate Academy**
*Carter G. Woodson Campus*
4095 Minnesota Avenue, N.E.
Washington, D.C. 20019



*Caring for Our Students with Disabilities*
*A Procedural Manual for Parents*

## RECEIPT

I, _Towanda Williams_____, received a copy of *A Procedural*
        (Parent/Guardian Name)

*Manual for Parents* from _Wallace Henry III_____ /Title _Special Education Coordinator_
                (Person Issuing Document)

at _____Edison-Friendship Collegiate Academy_____.
                (School)

_6_ , _13_ , _05_
        (Date)

_Towanda Williams_____
    Parent/Guardian's Signature

(This is to remain in a designated file in the school.)                215



**Collegiate**
Community Vision...World Class Education

Friendship Edison the Charter School
Carter G. Woodson Campus
4095 Minnesota Avenue, NE
Washington, DC 20019

## INDIVIDUALIZED EDUCATION PROGRAM
## (IEP)
### MEETING NOTES

STUDENT  G██████ W██████        SCHOOL  F.E.C.A.        DATE  6/13/0:

| PARTICIPANT | PARTICIPANTS (Sign Name) | DISCIPLINE |
|---|---|---|
| Stacey M. Edwards | _____ | Resource Teacher |
| Wallace Henry III | Wallace Henry III | Special Education Coordinator |
| Aaron G. Donerson Jr. | Aaron G. Donerson | S.E. Math Teacher |
| Quentin Graham Ph.D. | Quentin Cole | Psychologist |
| Beth Wilkinson, MSCF-SLP | Beth Wilkinson | Speech Pathologist |
| Arlene King Berry | Arlene King-Berry | S.P.D Cons. |
| Stephanie Finley-Deskins | Stephanie Finley-Deskins | Social Work |
| Yoranda Williams | Yoranda Williams | Yoranda Williams |

— Educational scores based upon the WRAT3 and Vineland and psychological report reviewed by Dr. Q. Graham — cognitive functioning is at an 8yr old level

— Grandmother stated G████ is aware of her limitations and suffers from depression and anxiety as a result.

— Ms. Edwards stated G████ has begun to make an effort and will ask for help now. Her seating is near Ms Edwards which has made it easier for her to ask questions

— Grandmother was in agreement with the MR disability but questioned the placement

— currently doing community service at Sousa elementary school

— academic and related service goals reviewed and accepted.

—

```
TRANSMISSION VERIFICATION REPORT
```

```
                        TIME  : 03/09/2004 10:25
                        NAME  : STUDENT HEARINGS OFF
                        FAX   : 2024425556
                        TEL   : 2024425432
                        SER.# : BROH3J608601
```

```
DATE,TIME               03/09  10:25
FAX NO./NAME            97036423101
DURATION                00:00:19
PAGE(S)                 01
RESULT                  OK
MODE                    STANDARD
                        ECM
```

 **District of Columbia Public Schools**

### OFFICE OF COMPLIANCE
*Special Education Student Hearing Office*
*825 North Capitol Street NE, 8th Floor*
*Washington, DC 20002-1994*
*Phone - 202-442-5432, Fax – 202-442-5556*

### HEARING NOTICE

**MEMORANDUM via** ☒ **FACSIMILE** ☐ **MAIL** ☐ **HAND DELIVERY**

TO:     *Parent (or Representative):* R. GAMBALE (202) 742-2098 / P. DALTON (763) 642-3101

        *LEA Legal Counsel:* T. PUCKETT ( ~87)

RE:     W_____ G_____ and [LEA]
        Student's Name

FROM:   JEFFREY PHOENIX
        Special Education Student Hearing Office Coordinator

DATE SENT:   3-9-04

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above-named
student on _____. Please be advised that the hearing has been scheduled for:   AMENDED DATE OF TIME

RESCHEDULED          DATE:    4-1-04
8/3-23-04            TIME:    1:00 PM
                     AT:      825 North Capitol Street NE, Washington, DC, 8th Floor.      217
                     ASSIGNED HEARING OFFICER:

```
TRANSMISSION VERIFICATION REPORT

                                    TIME : 03/09/2004 10:24
                                    NAME : STUDENT HEARINGS OFF
                                    FAX  : 2024425556
                                    TEL  : 2024425432
                                    SER.# : BROH3J608601


DATE,TIME            03/09  10:24
FAX NO./NAME         97422098
DURATION            00:00:18
PAGE(S)             01
RESULT              OK
MODE                STANDARD
                    ECM
```



## District of Columbia Public Schools

**OFFICE OF COMPLIANCE**
*Special Education Student Hearing Office*
*825 North Capitol Street NE, 8th Floor*
*Washington, DC 20002-1994*
*Phone - 202-442-5432, Fax – 202-442-5556*

### HEARING NOTICE

**MEMORANDUM via** ☒ **FACSIMILE** ☐ **MAIL** ☐ **HAND DELIVERY**

TO:     Parent (or Representative): _R. GAMBALE (202) 742-2098_ / _P. DALTON_
(703)
642-3101
        LEA Legal Counsel: _T. PUCKETT_ _____ (____87)

RE:     W_____ G_____ and [LEA]
        Student's Name

FROM:   _JEFFREY PHOENIX_
        Special Education Student Hearing Office Coordinator

DATE SENT: _3-9-04_

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above-named
student on _____. Please be advised that the hearing has been scheduled for: _AMENDED DATE or TIME_

RESCHEDULED      DATE: _4-1-04_
f/3-23-04        TIME: _1:00PM_
                 AT:   825 North Capitol Street NE, Washington, DC, 8th Floor.
                 ASSIGNED HEARING OFFICER:

Mar. 3. 2004  4:44PM    Dalton, Dalton,& Houston          No.6534   P. 1/2

# FAX TRANSMISSION COVER SHEET
### Dalton, Dalton & Houston P.C.
**Attorneys at Law**
6303 Little River Turnpike  Ste. 310
Alexandria, Virginia 22312-5045
(703) 941-4455
FAX (703) 642-3101

DATE:      March 3, 2004

TO:        Jeffery Phoneix

AT FAX:    202-442-5556

FROM:      Paul S. Dalton

RE:        G███ W█████ -- Request to Reschedule

NUMBER OF PAGES INCLUDING THIS PAGE:      2

ADDITIONAL INFORMATION:

---

PLEASE DELIVER ASAP.

    Attached is the recent hearing notice and request for Brittany

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Mar. 3. 2004  4:44PM    Dalton, Dalton & Houston                    No.6534   P. 2/2

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

6303 Little River Turnpike, Suite 310
Alexandria, Virginia 22312-5045
Telephone: (703)-941-4455
Facsimile: (703)-642-3101
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton*
Ellen Douglass Dalton*
William E. Houston+
Talib Abdus Shahid+
Laura E. Duos~

*ALSO ADMITTED IN D.C. & W.VA.
+ ADMITTED IN D.C. & PA
~ADMITTED IN MD

## REQUEST FOR  DUE PROCESS HEARING TO BE RESCHEDULED

March 3, 2004

By Mail      _____
By Fax        X

Student Hearing Office
ATTN: Jeffery Phoenix
825 North Capitol Street, N.E.8th Floor
Washington, DC  20002

        RE: G██████W███████

Dear Mr. Phoenix:

        On behalf of Friendship Edison Public Charter School, I am requesting that the proposed Hearing of March 23, 2004, at 11:00 a.m. be rescheduled.  Section 300.509 of IDEA's regulations specifically provides that **any** party to a hearing has the right to be accompanied and advised by counsel.

        Counsel for Friendship Edison P.C.S. was not consulted about the date or time for the hearing and he will be out of town the week of March 22nd.

        Three available dates for the hearing for counsel for Edison are March 31st, April 1st or April 2nd.

        Please contact me to reschedule the hearing date.

                        Sincerely,

                        Paul Dalton

                        Paul S. Dalton, Esq.

cc: Roberta Gambale, Esq.,  Parent's Counsel
    Tiffany Puckett, Esq., DCPS Attorney Advisor

```
TRANSMISSION VERIFICATION REPORT

                                TIME   : 02/27/2004 14:26
                                NAME   : STUDENT HEARINGS OFF
                                FAX    : 2024425556
                                TEL    : 2024425432
                                SER. # : BROH3J608601
```

```
DATE,TIME          02/27  14:25
FAX NO./NAME       97036423101
DURATION           00:00:19
PAGE(S)            01
RESULT             OK
MODE               STANDARD
                   ECM
```

RECEIVED
2004 FEB 27 PM 3:59



## District of Columbia Public Schools

**OFFICE OF COMPLIANCE**
*Special Education Student Hearing Office*
*825 North Capitol Street NE, 8th Floor*
*Washington, DC 20002-1994*
*Phone - 202-442-5432, Fax – 202-442-5556*

### HEARING NOTICE

**MEMORANDUM via** ☒ **FACSIMILE** ☐ **MAIL** ☐ **HAND DELIVERY**

TO:        Parent (or Representative): R. GAMBALE (202) 742-2098 / P. DALTON (703) 642-3101

LEA Legal Counsel: T. PUCKETT

RE:        W_____ G_____ (-87)    and [LEA]
           Student's Name

FROM:      JEFFREY PHOENIX
           Special Education Student Hearing Office Coordinator

DATE SENT: 2-27-04

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above-named
student on 2-24-04. Please be advised that the hearing has been scheduled for:

DATE:    3-23-04
TIME:    11:00 AM
AT:      825 North Capitol Street NE, Washington, DC, 8th Floor.
ASSIGNED HEARING OFFICER:

221

```
TRANSMISSION VERIFICATION REPORT

                          TIME : 02/27/2004 14:25
                          NAME : STUDENT HEARINGS OFF
                          FAX  : 2024425556
                          TEL  : 2024425432
                          SER.# : BROH3J608601


DATE,TIME              02/27  14:25
FAX NO./NAME           97422098
DURATION               00:00:19
PAGE(S)                01
RESULT                 OK
MODE                   STANDARD
                       ECM
```



## District of Columbia Public Schools

**OFFICE OF COMPLIANCE**
*Special Education Student Hearing Office*
*825 North Capitol Street NE, 8th Floor*
*Washington, DC 20002-1994*
*Phone - 202-442-5432, Fax – 202-442-5556*

### HEARING NOTICE

| MEMORANDUM via ☒ FACSIMILE ☐ MAIL ☐ HAND DELIVERY |
|---|

TO:  Parent (or Representative) R. GNMBATE (202) 742-2098 / P. DALTON (703) 642-3101

LEA Legal Counsel: T. PUCKETT (_____87)

RE:  W_____  G_____  and [LEA]
     Student's Name

FROM:  JEFFREY PHOENIX
       Special Education Student Hearing Office Coordinator

DATE SENT:  2-27-04

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above-named student on 2-24-04 Please be advised that the hearing has been scheduled for:

DATE:  3-23-04
TIME:  11:00 AM
AT:    825 North Capitol Street NE, Washington, DC, 8th Floor.
ASSIGNED HEARING OFFICER: _____

222

☑002/007

02/13/2004 11:24 FAX 202 742 2098          Murrell Brown

# STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA
## REQUEST FOR MEDIATION/HEARING

➢ This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.
➢ This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002.  Fax number 202-442-5556

Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent. Mediation may be beneficial in your case.  Please indicate your decision:

___ I REQUEST MEDIATION  ___ I REQUEST MEDIATION AND A HEARING  _X_ I REQUEST A HEARING

## STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED

Student Name: G▓▓ W▓▓▓▓          DOB: ▓▓▓▓▓ 1987

Address: __201 37th Place S.E.,  Washington D.C. 20019__

Present School of Attendance:          Home School:
                                       (Neighborhood school where child is registered)

__Friendship Edison Collegiate Academy__          N/A

**COMPLAINT IS MADE AGAINST:** __DCPS/Friendship Edison Public Charter  School__
                               DCPS and/or D.C. Public Charter School-specify  charter school

## INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING

__Towanda Williams__

Address: __201 37th Place S.E.,  Washington D.C. 20019__

Phone:  (H) (202)581-9558 (W) _____  (Fax) _____

Relationship to Student: X Parent ___ Self ___ Legal Guardian ___ Parent Surrogate ___ Public Agency

## PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable):

Name: __Roberta L. Gambale Esq.__  ( James Brown & Associates, PLLC)

(Phone) __202-742-2000 (ext 2021)__  (Fax) __202-742-2098__

OFFICE
FEB 17 2004
STUDENT HEARING

0235

02/13/2004 11:24 FAX 202 742 2098          Murrell Brown

Address: ___1220 L Street, Suite 700, Washington, DC 20005_____

1. You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) dates within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates.

Hearings: __March 26, 2004__    __March  27, 2004__    __March 28, 2004__

Mediation: _____    _____    _____

FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST. IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).

FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.

Every effort will be made to accommodate your requested dates. Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate. Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date. Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice. *Please do not contact the Hearing Office by phone to request a continuance. Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled. Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2. Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):
      Interpreter:
      ___ Foreign Language _____
      ___ Sign Language _____
      ___ Other _____

Special Communications _____
Special Accommodation for Disability _____
Other _____

3. In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:
(You may attach additional pages to provide more information if needed.)

**Describe the nature of the problem:**

1. *Failure to Conduct Re- Evaluations in a Timely Manner Pursuant to Parent Request and/or Agreement of the Multidisciplinary Team.*

On or about October 29, 2003, Ms. Towanda Williams, parent of G███ W█████ (hereinafter referred to as "parent"), through counsel, requested that her child, G███ W█████, DOB: ███87, be comprehensively re-evaluated. The request for re-evaluations was submitted in writing to Friendship Edison Collegiate Academy ("Charter School"). A copy of the request was submitted to District of Columbia Public Schools' ("DCPS") Office of Mediation and Compliance. The request included an evaluation authorization form signed by the parent. The request was made pursuant to the Individuals with Disabilities Education Act, 34 C.F.R. Section 300.536(b) which requires the public agency to conduct re-evaluations "*if conditions warrant a reevaluation, or if the child's parent or teacher requests a reevaluation, but at least once every three years*".

Not only did the Charter School and/or DCPS fail to fully respond to the parent's request for reevaluations, but they also failed to follow through on the decision made by the Multidisciplinary team that convened on or about December 4, 2004 to re-evaluate the student and reconvene a meeting within a forty-five day time period.   To date counsel for parent has yet to receive copies of completed evaluations and/or proposed dates for a meeting.  Based upon lack of progress, parent strongly suspects that the current placement may not be appropriate for G███ and/or that all of her educational needs have not been identified.  As a result the student has been denied a Free and Appropriate Public Education ("FAPE").

2. *Failure to Conduct an Annual Review of the Student's Individualized Educational Program ("IEP") and/or to Have a Current IEP in Effect at the Start of the 2003/2004 School Year.*

Pursuant to 34 C.F.R. Section 300. 342 of the Individuals with Disabilities Education Act ("IDEA")_ the public agency is required to have an IEP in effect for each student with a disability "at the beginning of the school year". Furthermore 34 C.F.R. Section 300.343 requires that the student's educational program be reviewed "*not less than annually*".  To the best of the parent's knowledge, both DCPS and/or the Charter School failed to review the student's IEP program dated June 2002 on or before June 2003 and/or prior to the commencement of the 2003/2004 school year.  The IEP was not reviewed until December

02/13/2004 11:24 FAX 202 742 2098          Murrell Brown          ☒005/007

2003. At the December 2003 meeting- it was determined that further testing was needed or this student by the MDT. If meeting had been convened as required, testing could have been conducted during the summer months and the student's needs could have been more fully addressed prior to the commencement of the school year rather than prior to the conclusion of the school year. In addition, at the December 2003 meeting significant changes were made to this student's program. Prior to the review, the student was receiving all of her specialized instruction in an inclusion setting, subsequent to the meeting G██ was supposed to be placed in a resource class to receive the majority of her instructional services. As a result the child has been denied FAPE and should be awarded compensatory education.

3. *Failure to Provide Related Services Pursuant to the Requirement of the Student's Individualized Educational Program in violation of 34 C.F.R. Section 300.401 during the 2002/2003 school year to date.*

District of Columbia Public Schools ("DCPS") and/or Friendship Edison Public Charter School ("FEPCS") have failed to provide G██ W████, DOB: ███87, with the full extent of specialized instruction and/or related services pursuant to the requirements of her Individualized Educational Program ("IEP"). According to G███s IEP she is and was supposed to receive .5 hours of psychological, 1 hour of speech and language therapy, and 20 hours of specialized instruction per week. This student has not received the full extent of services required by her program. As a result, DCPS and/or FEPCS are in violation of 34 C.F.R. Section 300.401 which requires that the public agency ensures that each disabled child "is provided special education and related services in conformance with an IEP that meets the requirements of Secs. 300.340-300.350. By failing to provide these services they have failed to provide this student with a Free and Appropriate Public Education as required by 34 C.F.R Section 300.121; 125 of the Individuals with Disabilities Education Act (IDEA) as a remedy the student should be entitled to an award of Compensatory Education.

4. *Failure to Develop an Appropriate Individualized Educational Program ("IEP") for the Student During the 2002/2003 and a Portion of the 2003/2004 School Year and/or Denial of FAPE.*

34 C.F.R. Section 300.347 requires that the Individualized Educational Program ("IEP") for each disabled child contain information regarding the student's present levels of performance and/or transition services for students age 14 or older. District of Columbia Public Schools ("DCPS") and/or Friendship Edison Public Charter School ("FEPCS") failed to meet the standards set forth in this section and failed to develop an appropriate program for G██ W████ during the 2002/2003 and 2003/2004 school years by failing to include sufficient information regarding present levels of performance and transition service needs in G███'s IEP. As a result she has been denied a Free and Appropriate Public Education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA") and should be entitled to compensatory relief.

☒006/007

## Describe issues to be addressed at the mediation and/or hearing, with specificity:

1.  Whether or not District of Columbia Public Schools ("DCPS") and/or the Charter School failed to conduct re-evaluations for the student?

2.  Whether or not District of Columbia Public Schools ("DCPS") and/or the Charter School failed to convene an annual IEP review meeting?

3.  Whether or not District of Columbia Public Schools ("DCPS") and/or the Charter School failed to provide the student with services pursuant to the requirements of her IEP?

4.  Whether or not District of Columbia Public Schools ("DCPS") and/or the Charter School failed to provide the student with an appropriate IEP for the 2002/2003 and 2003/2004 school years?

## Describe relevant facts relating to the problem:

G███ W█████ is currently an Eleventh Grade Student at Friendship Edison Collegiate Academy. She is classified as a Mentally Retarded student. Prior to the modification of her IEP in December 2003 she was placed in an inclusion setting at FEPCS.

## State how you would like to see the problem corrected:

1.  DCPS/Charter School shall conduct/supplement the following re-evaluations for the student, to include but not limited to: 1) Psycho-educational; 2) Social History; 3) Vineland and 5) Occupational Therapy and/or Physical Therapy if warranted and 6) Level III Vocational Assessment and provide copies of all completed evaluations to the parent's counsel within 30 calendar days of the issuance of the HOD;

2.  In the event that DCPS/Charter School fails to conduct reevaluations for the student, DCPS/Charter School shall fund the parent's Independent Educational Evaluations;

3.  The MDT shall be convened within 10 calendar days of the completion/receipt of the evaluation reports to review reevaluations, revise the IEP, discuss placement and develop a compensatory education plan for denials of FAPE over the past 3 years;

02/13/2004 11:24 FAX 202 742 2098        Murrell Brown        ☑007/007

4.    All meetings shall be scheduled through counsel for the parent;

5.    The hearing officer should order any and all other relief that is deemed to be appropriate.

Signature of Applicant/Parent (Required)

February 13, 2004
Date (Required)

**MAIL, FAX, OR DELIVER APPLICATION TO:**
Student Hearing Office of the District of Columbia
828 North Capitol Street, NE, 8th Floor
Washington, DC 20002        FAX: (202) 442-5556

*FOR OFFICE USE ONLY:*
Case Number: _____
Student ID#: _____

Revised 02/01/2003

Form 101

☑ 001/007

02/13/2004 11:24 FAX 202 742 2098         Murrell Brown

## JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill*◊Δ
Brenda McAllister*◊Δ
Roberta Gambale
Miguel A. Hull

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

Christopher L. West♦◊
Juan J. Fernandez! ◊
Christina Busso♦◊
Anne E. Ford
Tilman L. GeraldΔ

-------------------------------

* Admitted in Maryland Only
♦ Admitted in New York Only
! Admitted in Bolivia Only

-------------------------------

● Admitted in Mass. Only
Δ Member of the DC Federal Bar

# *FAX COVER SHEET*

DATE: 2/13/04

TO:   DCPS Student Hearing Office (Attn:  Mr. Phoenix)

PHONE:  (202) 442-5432

FAX NO:  (202) 442-5556

FROM:  Roberta L. Gambale Esq.

SUBJECT:  Due Process Hearing Request for G▬ W▬, DOB: ▬87

NUMBER OF PAGES INCLUDING COVER SHEET: 7

COMMENTS:

1

OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
STUDENT HEARING OFFICE

```
-------------------------x
 C█████ W█████████      :
                        :
           Petitioner,  :
                        :
        v.              :
                        :
DISTRICT OF COLUMBIA    :
PUBLIC SCHOOLS,         :
                        :
           Defendant.   :
-------------------------x
```

825 North Capitol Street, N.E.
Washington, D.C. 20003

Friday, March 27, 2004

The HEARING in this matter began pursuant to notice.

BEFORE:

HERBERT ST. CLAIR
Hearing Officer

2

APPEARANCES:

On behalf of Petitioner:

PAUL DALTON
Counsel
Friendship-Edison Public Charter Schools

ROBERTA GAMBALE
Attorney
Parent

WALLACE HENRY
Director of Special Education
Friendship-Edison Public Charter Schools

MICHELLE MOODY
Educational Advocate

CAROLYN MUNFORD
Educational Advocate

GLORIA WARD-RAVENELL

\*   \*   \*   \*   \*

3

# C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Carolyn Munford | 7 | 12 | 18 | |
| Michelle Moody | 25 | 33 | 47 | |

\*   \*   \*   \*   \*

PROCEEDINGS

1

2

3          (Audio starts abruptly)

4          MR. ST. CLAIR:  Let's begin with you Mr. Dalton.

5          MR. DALTON:  Good morning, Mr. St. Clair.  Good

6  morning everyone.  My name is Paul Dalton.  I am counsel

7  for Friendship-Edison Public Charter Schools.

8          MR. HENRY:  Good morning.  My name is Wallace

9  Henry.  I am director of special education for Friendship

10  Public Charter Schools.

11          MS. MUNFORD:  Good morning.  I'm Carolyn

12  Munford.  I'm the educational advocate for -- the former

13  educational advocate for ▆▆▆▆▆ W▆▆▆▆▆.

14          MS. MOODY:  Good morning.  Educational advocate,

15  Michelle Moody.

16          MS. WARD-RAVENELL:  Good morning.  Gloria Ward-

17  Ravenell, grandmother of G▆▆▆▆ W▆▆▆▆▆▆

18          MS. GAMBALE:  And I'm Roberta Gambale.  I'm

19  attorney for the parent Wanda Williams.

20          MR. ST. CLAIR:  All right.  Counsel, correct the

21  hearing officer if he makes mistakes to the posture of our

22  proceeding.  As I recall, when we adjourned last,

1   Friendship-Edison Public Charter School had concluded

2   their case, and the parent was to begin their case --

3   opening statement, witnesses.  Is that correct, Ms.

4   Gambale?

5           MS. GAMBALE:  Yes.

6           MR. ST. CLAIR:  All right.  Please begin.

7           MS. GAMBALE:  Since we already have laid out the

8   issues, I'll save any comments towards the end.

9           MR. ST. CLAIR:  Okay.

10          MS. GAMBALE:  And I'll just call my first

11  witness.

12          MR. ST. CLAIR:  All right.  Who is that?

13          MS. GAMBALE:  And that is Carolyn Munford.

14          MR. ST. CLAIR:  Okay.  Ms. Munford, I'm going to

15  ask you to pull that microphone to yourself.

16  Whereupon,

17                      CAROLYN MUNFORD

18  was called as a witness and, having been first duly sworn,

19  was examined and testified as follows:

20          MR. ST. CLAIR:  Please, Ms. Gambale.

21          DIRECT EXAMINATION

22          BY MS. GAMBALE:

1    Q    Can you please state your name for the record?

2    A    My name is Carolyn Munford.

3        MR. ST. CLAIR:  I'll tell you what, pull the

4    microphone closer to yourself, Ms. Munford.  That's it.

5        BY MS. GAMBALE:

6    Q    And where are you employed?

7    A    Currently I'm employed with James Brown and

8    Associates as an educational advocate.

9    Q    And what is your education and background?

10    A    I have a masters in education.  I have

11    bachelor's degree in sociology, with a sociology major,

12    minor in psychology.  I've been with James Brown and

13    Associates for approximately two-and-a-half years as an

14    educational advocate.

15        Prior to coming to James Brown and Associates, I

16    was an educational advocate at PSI in Lanham, Maryland.

17    It's a foster care agency that works with children with

18    special needs.  I was there for approximately a year.

19        Prior to that, I worked at For Love of Children

20    as an educational guidance counselor for special ed

21    children for approximately two years.  And prior to that,

1    I had -- I was a manager for the school-to-work

2    partnership program.

3        Q    And are you familiar with G█████ W████████.

4        A    Yes, I am.

5        Q    How are you familiar with G█████ W████████?

6        A    I assumed the case for G█████ W████████

7    approximately the end of October or the beginning of

8    November.  I became familiar with G█████ through

9    discussions with her grandmother Ms. Ravenell, through

10   review of the records, school records, evaluations for

11   G████, through a classroom observation that was conducted

12   November 14, '03, and through an IEP meeting that was held

13   in December '03.

14       Q    You said that you observed this student in

15   November of 2003.

16       A    That's correct.

17       Q    Where did you observe her?

18       A    I observed her at Friendship Collegiate Public

19   Charter School

20       Q    Okay.  And what did you observe?

21       A    When I reported to the school, I was asked to

22   see Larry Davis, who was her counselor.  At that time, I

1   learned that G⬛⬛⬛ was in an algebra II class.  I was

2   escorted to the algebra II class.  I was there for

3   approximately 20 minutes.  The teacher that was there was

4   a substitute teacher, so he didn't recognize G⬛⬛⬛ when

5   he saw her.

6          I was there for about 20 minutes.  And Mr.

7   Geeder (phonetic) -- well, Mr. Geeder was the substitute

8   teacher.  Another teacher came and told me to report back

9   to the counselor's office that G⬛⬛⬛ was not in the

10  classroom.  When I reported to the counselor's office, I

11  was told to go to the special ed coordinator's office that

12  G⬛⬛⬛ was getting her schedule worked out.

13         I reported to the special ed coordinator's

14  office, Mr. Henry, and G⬛⬛⬛ was in the office at that

15  time.  And I had a conversation with her.  Mr. Henry

16  explained that they had recently fired the special ed

17  teacher for G⬛⬛⬛, and he acknowledged that she was not

18  getting special ed services at the time.

19         I had a conversation with G⬛⬛⬛.  She said she

20  was -- had not received any special ed classes.  So that

21  was about the gist of it.  They were working on her

22  schedule.  She wasn't in class at the time of my visit.  I

1    did get a copy of her schedule, which included algebra II,

2    literature, biology, Spanish and fashion design.

3        Q    And were any of these special education classes?

4        A    None of these were special education classes.  I

5    also asked Mr. Henry for a copy of the speech and language

6    service logs and counseling logs, but I did not receive

7    them.  I had been told, prior to my visit that G█████ had

8    not been receiving speech and language for that school

9    year as she had just started the counseling.

10        Q    And you also said that you participated in an

11   IEP meeting.

12        A    Yes.

13        Q    When was the IEP meeting?

14        A    December 4, 2003.

15        Q    And who was present at the meeting?

16        A    Present at the meeting was Ms. Ravenell, the

17   grandmother, myself, special ed teacher Ms. Glimp, and Ms.

18   Dalton, who was the general ed teacher, Ms. Lewis, who was

19   the school psychologist, Ms. Wilkinson, speech

20   pathologist, Mr. Smith, who is a transition coordinator,

21   and Katrina Lemont, who was an administrator.

10

1    Q    And was the issue of her missed services

2  addressed?

3    A    Yes, we did discuss her missed services.  What

4  was said in the meeting was that G█████ was refusing to go

5  to her special ed classes.  This is what was presented by

6  the school staff.  The parent and I countered that G█████

7  was a child, that she should not have a final say on

8  whether she attended special ed classes or what, or what

9  not.

10       We continued to address the IEP.  It was decided

11  that we would continue to implement the old one, pending

12  completion of a psycho-ed evaluation, and a Vineland if

13  warranted by the psycho-ed, and we would reconvene within

14  45 days.  And at that time I asked if an LEA

15  representative could be at the next meeting to address

16  placement.

17       It was my position that the school was

18  inappropriate for G█████ because she was a mildly mentally

19  retarded student, and it was my understanding that

20  Friendship is more of a college prep school.

21    Q    So was the Vineland specifically discussed at

22  the meeting?

1    A    Yes.

2    Q    And why was it thought that that was needed?

3    A    To assess her functioning, her adaptive level of

4    functioning.  G████, in the past, had been classified as

5    a MR student, and we wanted to get a fair assessment of

6    how she's functioning.

7    Q    And were there any measures that were put into

8    place in the meantime while evaluations were being

9    conducted?

10    A    Measures in terms of --

11    Q    Like -- got measures to address the interim.

12    A    We will continue with implementing the old IEP.

13    G████ was to participate in a resource class, in reading

14    and math, in the meantime.

15    MS. GAMBALE:  I have no further questions.

16    MR. ST. CLAIR:  Mr. Dalton?

17    CROSS-EXAMINATION

18    BY MR. DALTON:

19    Q    Good morning, Ms. Munford.

20    A    Good morning.

21    Q    How old is G████?

1    A    Her date-of-birth -- she an eleventh grade

2  student.  She's approximately 16 years of age.

3    Q    How about 17?

4    A    Possibly.

5    Q    17-year-olds always listen to what they are told

6  to do?

7    A    No.

8    Q    So your comment about her having the final say

9  is more theoretical than practical, isn't it?

10    A    I think it's -- I'm not sure what your question

11  is, but --

12        MR. ST. CLAIR:  Just a minute, Ms. Munford.

13        Do you have an objection?

14        MS. GAMBALE:  I do have an objection.  It's

15  calling for something that's outside of her scope of

16  personal knowledge.

17        MR. ST. CLAIR:  No, I mean --

18        MS. GAMBALE:  It's calling for a personal

19  opinion, and it's not relevant to what we are dealing with

20  here.

21        MR. ST. CLAIR:  Well, let me just say this.  Ms.

22  Munford is an advocate, and to that degree she does

1  formulate opinions as to what is in the best interest of

2  the child.  I'm going to overrule your objection.

3       Please answer the question.

4       THE WITNESS:  Can you repeat the question?

5       MR. ST. CLAIR:  The question was -- had to do

6  with whether or not she -- asking G███████ about going to

7  the class was more theoretical than practical because of

8  her age.  Did I capture it?

9       MR. DALTON:  You captured it.

10      THE WITNESS:  I'm still not clear on the

11 question, but I can tell you what my position was at the

12 meeting.

13      MR. ST. CLAIR:  Just a minute, stop, stop, stop,

14 stop, stop, stop, stop.  Ask your question again because I

15 want you to understand the question that you are

16 answering.

17      Go ahead.

18      BY MR. DALTON:

19      Q   Ms. Munford, it's very simple.  My question is

20 based on your direct testimony.  You said on direct that

21 the school had presented at the meeting that G███████ was

22 refusing to go to class.

1    A    Correct.

2    Q    You then stated as a counter --

3    A    Uh-huh.

4    Q    -- that G████ should not have the final say.

5    A    That's correct.

6    Q    Okay.  My question to you is, given her age,

7    isn't that more theoretical than practical?

8    A    No, I don't think so.  I think, given the fact

9    that G████ is still a student at the school, and the

10   administration is the one that manages the school.  They

11   determine the best placements for the students.  They are

12   supposed to be responsible for these students.

13         I think that the school administration should

14   have the final word on what classes G████ is to attend,

15   especially in light of the fact that G████ is still a

16   minor, she's not capable of making the best decisions for

17   herself.  We are talking about school administrators who

18   have expertise in the field of education, psychology and

19   all the things that go along with it.  I do not think that

20   G████ can make a better decision on what her education

21   needs are than the school staff.

1      Q    So it's your opinion that you view it as a

2    failure by any school if they don't have 100 percent

3    cooperation from all of their students with regard to

4    their schedule, yes or no?

5      A    Yes.

6      Q    Now you consider G███████ a mentally retarded

7    student, giving your testimony on direct, correct?

8      A    I considered her a mentally retarded student,

9    yes, that's what the evaluations indicated.

10     Q    Okay.  So --

11     A    That I was working with at the time.

12     Q    So if additional evaluations showed her to

13   actually be LD based on a Vineland, you would not be in a

14   position to agree or disagree with that.  Is that correct?

15     A    Sir, I was working with the evaluations that

16   were done in '02.  Any evaluations that were done after

17   that, I was no longer involved with the case.  So I'm not

18   sure what your questioning is.

19     Q    So the answer to my question is that you are not

20   in a position to be able to give testimony with regard to

21   subsequent evaluations that found her to be LD, yes or no?

1    A    I can give testimony as to the findings, and

2    whether I'm in agreement with them, yes.

3    Q    Oh, you can?

4    A    Yes.

5    Q    Well, I don't know that I want to enquire as to

6    what that opinion is.  When did you cease being her

7    advocate?

8    A    I think in January of '04.

9    Q    And what was the reason for that?

10    MR. ST. CLAIR:  January of this year?

11    THE WITNESS:  Yes.

12    BY MR. DALTON:

13    Q    And what was the reason for that?

14    A    The reason was because the former attorney that

15    was working on the case left the firm, and I was put under

16    another attorney.  However --

17    Q    So someone with no experience with G█████ was

18    assigned to be her new advocate, is that correct?

19    A    That's correct, and that happens often.

20    Q    Okay.  Well, the extra comment, I did not elicit

21    from you now.

1          MR. ST. CLAIR:  I'll tell you what, Mr. Dalton,

2  what I want you to do is just ask questions.

3          MR. DALTON:  I would like to have answers to my

4  questions also.

5          MR. ST. CLAIR:  Just let me finish, let me

6  finish.  You didn't let me finish.  I think you are going

7  to like the next part.

8          MR. DALTON:  Okay.

9          MR. ST. CLAIR:  What I want you to do, Ms.

10  Munford, is to answer the questions as forthrightly as you

11  can.  No comments back and forth.  Just ask the question,

12  answer the question.  Thank you, sir.  I'm listening.

13          BY MR. DALTON:

14      Q   And you are not in a position to testify as to

15  what happened after January with regard to the school's

16  effort to make up the classes that she missed?

17      A   That's correct.

18          MR. DALTON:  No further questions.

19          MR. ST. CLAIR:  Okay.  Redirect, Ms. Gambale.

20          REDIRECT EXAMINATION

21          BY MS. GAMBALE:

1    Q    Have you ever reviewed any evaluations that have

2    been done for G⬛⬛⬛ since the meeting?

3         MR. ST. CLAIR:  Since the meeting of?

4         MS. GAMBALE:  Of December 2003.

5         THE WITNESS:  Yes, I have.

6         BY MS. GAMBALE:

7    Q    And what evaluations were those?

8    A    There was a psycho-ed that was done, and also a

9    report on the Vineland.  If you could hand me copies --

10   Q    Oh, of -- that's not the evaluation.  With the

11   concerns that you had about the adaptive -- well, first of

12   all, was the Vineland conducted for the student?

13   A    It's my understanding that a Vineland was not

14   conducted for the student, that another adaptive scale was

15   conducted for the student.

16   Q    And were there concerns about that adaptive

17   scale?

18        MR. DALTON:  Objection foundation.

19        MR. ST. CLAIR:  Just a minute.  Yeah, I think

20   you ought to let the hearing officer know what you're

21   talking about.  Reference me to the disclosure.

1        MS. GAMBALE:  I am talking about the psycho-

2   education that he referenced in his clause --

3        MR. ST. CLAIR:  Okay.

4        MS. GAMBALE:  -- and the adaptive scale that

5   they administered.

6        MR. ST. CLAIR:  All right, give me their number.

7        MS. GAMBALE:  It is our exhibit --

8        MR. DALTON:  It's my exhibit 2.

9        MR. ST. CLAIR:  Oh, okay.

10        MR. DALTON:  Makes it easier for you.

11        MR. ST. CLAIR:  Okay.

12        THE WITNESS:  Do you have another copy of that?

13        MS. GAMBALE:  I'll give it to you in a second.

14        MR. ST. CLAIR:  Just a minute, just a minute.

15   Okay, Cynthia Sparrow.

16        MR. DALTON:  Uh-huh.

17        MR. ST. CLAIR:  Okay.  I'm --

18        MS. GAMBALE:  Let me pass this to --

19        MR. ST. CLAIR:  That -- we are still at

20   foundation.  Now that I know what you are talking about,

21   do you want to ask her if she has read it, has she seen

22   it?  Okay.

1         MS. GAMBALE:  Have you had a chance to look

2    fully -- what if you said that (off mike) to the witness.

3         MR. ST. CLAIR:  This is the Friendship-Edison's

4    document number 2.

5         BY MS. GAMBALE:

6    Q    And are you familiar with this document?

7    A    I am familiar with this document, the psycho-ed.

8    Q    Have you had a chance to review it before?

9    A    Yes, I did.

10   Q    And what were the concerns that you had with the

11   adaptive scale that was administered?

12   A    My concerns was that, number 1, it was not the

13   adaptive scale that we requested at the MDT meeting in

14   December of '03.

15        MR. ST. CLAIR:  What did you request at the

16   meeting?

17        THE WITNESS:  I have specifically asked for a

18   Vineland, and this is number 1, a scale that I'm not

19   familiar with.  Number 2 --

20        MR. ST. CLAIR:  This is the AAMR.

21        THE WITNESS:  Yes, it was not what we requested.

1    MR. ST. CLAIR:  And you are not familiar with

2    it?

3    THE WITNESS:  That's correct.  My other concern

4    --

5    MR. DALTON:  I would like to object to this line

6    of testimony.

7    MR. ST. CLAIR:  Right.  I -- Ms. Gambale, she's

8    not familiar with the AAMR.

9    THE WITNESS:  It wasn't what I asked -- what we

10   asked for.

11   MR. ST. CLAIR:  I understand, I understand.

12   MS. GAMBALE:  Was there a question about who the

13   test was administered to?

14   MR. DALTON:  Objection.

15   MR. ST. CLAIR:  Just a minute.  Ms. Gambale.

16   MS. GAMBALE:  I'll say --

17   MR. ST. CLAIR:  Re-ask -- no, no, no, no, sit

18   here.  I want -- you are not on the microphone.  That's

19   what I am concerned about.  You are not on the tape,

20   excuse me.

21   Now what was your question again, and then you

22   can restate your objection.