OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
STUDENT HEARING OFFICE

```
---------------------------x
C█████ W██████████,          :
                             :
            Petitioner,  :
                             :
        v.                   :
                             :
FRIENDSHIP-EDISON            :
PUBLIC CHARTER SCHOOLS,      :
                             :
            Defendant. :
---------------------------x
```

825 North Capitol Street, N.E.
Washington, D.C. 20003

Thursday, April 1, 2004

The HEARING in this matter began pursuant to notice.

BEFORE:

HERBERT ST. CLAIR
Hearing Officer

APPEARANCES:

    On behalf of Petitioner:

       ROBERTA GAMBALE, ESQUIRE

    On behalf of Defendant:

       PAUL DALTON, ESQUIRE

    ALSO PRESENT:

       WALLIS HENRY,
       Director of Special Education,
       Friendship-Edison Public Charter Schools

1                    P R O C E E D I N G S

2

3           MR. ST. CLAIR:  This is the 1st of April, 2004.

4    This is a confidential administrative hearing concerning

5    the special education services being provided to G█████

6    W███████ by the District of Columbia Public Schools and

7    Friendship-Edison Public Charter School, its own LEA.

8           G█████ was born on ████████████ 1987.  This

9    hearing is authorized by Public Law 105-17, the

10   Individuals with Disabilities Education Act amendments of

11   1997, Title 34 of the Code of Federal Regulations, part

12   300, and Title 5 of the District of Columbia Municipal

13   Regulations.

14          This hearing is conducted under the auspices of

15   the District of Columbia Public Schools, hereinafter

16   referred to as DCPS.  This hearing is being tape-recorded

17   and either party may request a copy of the tape or a

18   transcript by making a written request for both or either

19   to the Student Hearing Office, DCPS.

20          My name is Herbert St. Clair.  I am the hearing

21   officer.  Everyone here is to please state his or her

22   name.  Let's begin with the attorney advisor.

1          MS. PUCKETT:  Tiffany Puckett, attorney advisor

2    for DCPS.

3          MR. DALTON:  Paul Dalton, counsel for Edison-

4    Friendship Public Charter Schools.

5          MR. HENRY:  Wallis Henry, director of special

6    education, Friendship Public Charter Schools.

7          MS. GAMBALE:  Roberta Gambale, attorney for the

8    parent to Wanda Williams.

9          MR. ST. CLAIR:  Okay.  Can I get the sign-in

10   sheet please?

11         SPEAKER:  Yes.

12

13         MR. ST. CLAIR:  All right now, I have a

14   disclosure from the District of Columbia Public Schools

15   dated March 24th.  One from the parent dated March 25th --

16   I'm sorry, the one from DCPS is dated March 24th

17   similarly.  And one from Friendship-Edison Public Charter

18   School dated March 25th.

19         What I'm going to do, if I don't hear an

20   objection, is place the disclosure into the record at this

21   time.

22         MR. DALTON:  No objection.

1           MR. ST. CLAIR:  All right.  The disclosure is in

2      the record.  Ms. Gambale, you are authorized to proceed by

3      the parents without the parent?

4           MS. GAMBALE:  Yes, I am.

5           MR. ST. CLAIR:  Okay.  Why don't you please tell

6      us where you think the denial is and what would satisfy

7      the parent?

8           MS. GAMBALE:  Okay.  Well, there are several

9      denials of FAPE in this situation.  The first is that the

10     charter school has failed to conduct reevaluations for

11     this student.  There was a meeting in December -- there

12     was a request made in October and there was a meeting in

13     December.  The school agreed to do certain evaluations for

14     the student within 45 days.  They still haven't done all

15     the evaluations that this child needs.

16          The second issue is with regards to their

17     failure to conduct the annual review.  During the period

18     of June 2002 and December 2002, this child did not have a

19     current IEP.  Her IEP expired June -- in June and they

20     didn't revise it until December.

21          And then the third issue is that they did not

22     provide her with related services.  Up until December of

1    2003, this child was in a regular education setting, which

2    in this particular case, given the fact that she is

3    classified as an MR student, is particularly egregious.

4         And then the fourth issue is that they have not

5    developed an appropriate IEP for this student in that they

6    haven't provided -- they haven't fully addressed present

7    levels of performance and they haven't addressed

8    transitional service needs, which for this child again are

9    significant.  She's -- given her age and the fact that

10   she's, in all likelihood, not going to be able to go on to

11   higher education, this is a real concern that her

12   vocational needs be addressed.

13        MR. ST. CLAIR:  All right.  Is that it?

14        MS. GAMBALE:  Uh-huh.

15        MR. ST. CLAIR:  Let me see if I have this.  The

16   reevaluation requested is incomplete to date.

17        MS. GAMBALE:  Uh-huh.

18        MR. ST. CLAIR:  There was no IEP for the child

19   during the period June 2002 through December 2002.

20        MS. GAMBALE:  Uh-huh.

21        MR. ST. CLAIR:  Related services were --

22        MS. GAMBALE:  2003.

1          MR. ST. CLAIR:  2003.

2          MS. GAMBALE:  Her -- she has an IEP that's dated

3     June of 2002.  They didn't revise that June of 2002 IEP

4     until December of 2003.  So there is a 6-month period

5     where it had expired.

6          MR. ST. CLAIR:  All right.  You mean from June

7     2000 --

8          MS. GAMBALE:  -- three to December she didn't

9     have a current IEP.

10          MR. ST. CLAIR:  Okay.  Related services were not

11     delivered beginning with?

12          MS. GAMBALE:  For all of the 2003-2004 school

13     year.

14          MR. ST. CLAIR:  Okay.

15          MS. GAMBALE:  Through December.

16          MR. ST. CLAIR:  Of?

17          MS. GAMBALE:  Of 2003.

18          MR. ST. CLAIR:  Wait a minute.  The --

19          MS. GAMBALE:  The team convened -- okay.

20          MR. ST. CLAIR:  Help me out here, the 2003-2004

21     school year.

22          MS. GAMBALE:  Uh-huh.

```
 1            MR. ST. CLAIR:  All right.  So you mean December

 2   of last year through today?

 3            MS. GAMBALE:  No, I mean from September of last

 4   -- yeah, through -- no, she's getting some services now.

 5   But she was -- she didn't get any services between

 6   September and December.

 7            MR. ST. CLAIR:  September, what year?

 8            MS. GAMBALE:  September of 2003.

 9            MR. ST. CLAIR:  Through December?

10            MS. GAMBALE:  Through December of 2003.

11            MR. ST. CLAIR:  All right.  That's roughly the

12   first semester of the 2003-2004 school year.

13            MS. GAMBALE:  Uh-huh.

14            MR. ST. CLAIR:  Okay.  And the current IEP does

15   not have the present levels of performance?

16            MS. GAMBALE:  Uh-huh.

17            MR. ST. CLAIR:  Okay.

18            MS. GAMBALE:  And it does not address

19   transitional needs as required under 300-347.

20            MR. ST. CLAIR:  All right.  Ms. Puckett.

21            MS. PUCKETT:  As a preliminary matter, DCPS has

22   asked to be dismissed from this.  The allegations are all
```

1    the responsibility of the LEA.

2            MR. ST. CLAIR:  Which LEA?

3            MR. PARTNELL:  Of Friendship-Edison, their -- I

4    apologize.  My voice is down and I'm not feeling well at

5    all.

6            MR. ST. CLAIR:  All right.

7            MR. DALTON:  I concur with the proffer made and

8    I've no objection to DCPS being dismissed.

9            MS. GAMBALE:  My only objection is that

10   placement could be an issue for this child and so that

11   because of that reason, DCPS should be included in any

12   meetings that are ordered or further --

13           MR. DALTON:  Well, I can --

14           MS. GAMBALE:  Uh-huh.

15           MR. DALTON:  You can provide for that in any

16   order.

17           MR. ST. CLAIR:  Mr. Dalton took the words out of

18   my mouth.

19           MS. GAMBALE:  Okay, so long as that's going to

20   be provided for --

21           MR. ST. CLAIR:  Sure, if it's -- yeah, I mean,

22   if they think it's to their advantage to be there,

1 otherwise they can just wait for the bill. You're

2 dismissed --

3           MS. PUCKETT: Thank you.

4           MR. ST. CLAIR: DCPS is dismissed, Ms. Puckett.

5           MS. GAMBALE: And I also have a preliminary

6 matter.

7           MR. ST. CLAIR: I guess I should have done that

8 first. I should have called for preliminary matters

9 first. Ms. -- what's the preliminary matter?

10           MS. GAMBALE: The preliminary matter is that

11 just prior to this hearing beginning, Mr. Dalton provided

12 me with a copy of an IEP from a meeting yesterday that the

13 parent and the parent's representative were told wasn't

14 going to go forward.

15           And so I'm concerned about the appropriateness

16 of this. I could address this in another hearing request

17 if it becomes necessary. But I'm concerned that I'm just

18 getting this now. And it seems that there's some

19 impropriety that's gone on because -- and I do have Ms.

20 Moody who can testify that it was her understanding as

21 well that the -- that this has gone on without the

22 parent's knowledge.

1            MR. ST. CLAIR:  What do you want me to do?

2            MS. GAMBALE:  Well, this was just presented to

3    me.  There are a couple of different options.  We could

4    amend the hearing request to address the fact that they're

5    not in compliance with IDEA by not including the parent in

6    this meeting.  It's something that we could -- I'd like to

7    be able to address this.  I haven't had a chance to even

8    look at the documents.  But certainly my right to address

9    this should be reserved.

10           MR. ST. CLAIR:  Well, what do you want me to do?

11           MS. GAMBALE:  If you can just reserve my right

12   to address this at a future hearing, if appropriate, then

13   I would appreciate it.

14           MR. ST. CLAIR:  I mean no question that I can do

15   that.

16           MS. GAMBALE:  I don't know that the fact that it

17   necessarily --

18           MR. ST. CLAIR:  What's the date on it?

19           MS. GAMBALE:  I am just getting it.  This is

20   dated --

21           MR. ST. CLAIR:  Yesterday?

22           MS. GAMBALE:  Yesterday --

1          MR. ST. CLAIR:  3/31?

2          MS. GAMBALE:  -- '04.

3          MR. ST. CLAIR:  All right, Mr. Dalton.

4          MR. DALTON:  This is a very simple case of abuse

5     by the parent of the due process hearing process.  And let

6     me just outline for you why that's the case.  On --

7          MR. ST. CLAIR:  Tell you what.  Can you first

8     address her --

9          MR. DALTON:  I am doing that in doing this.  And

10    there's really no way it'll just -- it'll take me

11    approximately 2 minutes to address this fact pattern and

12    to do it otherwise would take it from the -- what was the

13    end result of it and try to mix it back in with how we got

14    to them.

15          MR. ST. CLAIR:  Okay.

16          MR. DALTON:  We attempted to acquire the

17    parent's participation in February.

18          MR. ST. CLAIR:  In the meeting that took place

19    yesterday.

20          MR. DALTON:  Yes, February 24th.  At that time,

21    we recommended March 16th, 17th, and 18th.  That was no

22    response.  So on March the 5th --

1          MR. ST. CLAIR:  Just a minute.  Tell you what I

2      want you to do.

3          MR. DALTON:  Okay.

4          MR. ST. CLAIR:  Because she has -- she didn't

5      ask for a continuance in order to look at the notes.

6          MR. DALTON:  Right.

7          MR. ST. CLAIR:  I don't know if she wants to do

8      that later.  But I don't see how I should get into that

9      right now because I haven't decided that that is an issue

10     because she only got that yesterday.

11         MR. DALTON:  Right.

12         MS. GAMBALE:  Today.

13         MR. ST. CLAIR:  I mean today.

14         MR. DALTON:  I haven't submitted that as part of

15     our record nor --

16         MR. ST. CLAIR:  Yes, I'll tell you what.  Why

17     don't you address the part that she mentioned and leave

18     out the MDT meeting and everything connected to it?

19         MR. DALTON:  So what am I talking about?

20         MR. ST. CLAIR:  The evaluations --

21         MR. DALTON:  -- has been completed.

22         MR. ST. CLAIR:  She -- all right, well, she says

1    it is not.  She says some of them are complete but not all

2    of them.

3              MR. DALTON:  All of them are --

4              MR. ST. CLAIR:  All right, that's an issue.  We

5    have an issue.  The second, she says is that the student

6    was not provided related services between September 2003

7    and December 2003.

8              MR. DALTON:  The MDT determined that and awarded

9    compensatory ed.

10              MR. ST. CLAIR:  Ms. --

11              MS. GAMBALE:  I -- that's not my understanding.

12              MR. ST. CLAIR:  Well, when?  You mean yesterday?

13              MS. GAMBALE:  Uh-huh.

14              MR. ST. CLAIR:  Just a minute.

15              MR. DALTON:  Again, that's what I said --

16              MR. ST. CLAIR:  Let me finish because I have to

17    think.  I can't listen to you and think at the same time.

18    I'm not that good.

19              All right, so I've got -- all right, now,

20    related services.  All right, now, inappropriate levels of

21    performance on the IEP -- did you write an IEP yesterday?

22              MR. DALTON:  Uh-huh.

1           MR. ST. CLAIR:  So she's talking about
2    inappropriate levels of performance on the previous IEP.
3           MR. DALTON:  We addressed that too.
4           MR. ST. CLAIR:  Were they deficient?
5           MR. DALTON:  Were -- they were, and we awarded
6    compensatory ed.
7           MR. ST. CLAIR:  Okay, fine.  Let me just tell
8    you what I think, Ms. Gambale.  What you ought to do is
9    ask for a continuance, so you can get a chance to look at
10   this note because it appears to me that he has satisfied
11   two of your complaints.  You ought to be able to come to
12   some determination about whether or not the evaluations
13   you -- you ought to narrow it down to one or two
14   evaluations.
15          MS. GAMBALE:  We know what evaluations or what's
16   missing.  And what I'm concerned about is we already had
17   the MDT in December as a stopgap measure to address the
18   expired IEP.  And I'm concerned that we really can't do
19   anything productive for this child without getting the
20   rest of the evaluations.
21          MR. ST. CLAIR:  All right, that may be true.
22   But what I'm trying to say, and you correct me if I'm

1    wrong, Mr. Drake (sic) says that he --

2            MR. DALTON:  Mr. Dalton.

3            MR. ST. CLAIR:  I'm sorry, excuse me, I --

4            MR. DALTON:  That's adding quite a few years too

5    by the way.

6            MR. ST. CLAIR:  Excuse me, sir.  Not to mention

7    hair, but anyway.

8            MR. DALTON:  Right.  Well, I still have mine.

9            MR. ST. CLAIR:  That's the point I was trying to

10   make.  Two of the denials you allege, that is that

11   services were not delivered and that the present levels of

12   performance were missing from the last IEP.  As I

13   understand it, Mr. Dalton says that -- he admits that

14   those were denials and that he has awarded compensatory

15   education to your child -- to your client for that.  So

16   what I'm trying to say is that maybe you ought to sit down

17   and see what is in that MDT.  Let me see.

18           MR. DALTON:  Of course, she needs to review the

19   evals.  This isn't --

20           MR. ST. CLAIR:  Well, let me just --

21           MS. GAMBALE:  I --

22           MR. ST. CLAIR:  Just a minute.  Let me just say

1    this.  Mr. Dalton.

2            MR. DALTON:  Yes, sir.

3            MR. ST. CLAIR:  If -- where is your request for

4    mediation hearing?

5            MS. GAMBALE:  My request is for -- is number 3,

6    our exhibit number 3.

7            MR. ST. CLAIR:  All right, now -- and you're

8    familiar with this, right, Mr. --

9            MR. DALTON:  Yes, sir.  And what I'd like to say

10   is that all of the requested relief has been granted.  But

11   in addition to that, you know, I think we do need a

12   continuance in order to provide counsel with an ability to

13   appropriately respond because I'm going to be asking for a

14   dismissal based on the fact that there was abuse on the

15   part of the parent by not cooperating with the school in

16   what they needed to do in order to comply with the

17   requested behavior.  Now, if she has a disagreement as to

18   the award of comp ed, she can bring another hearing on

19   that basis.

20           MR. ST. CLAIR:  All right.  Well, let me just

21   say this.  Now, these two allegations, that is about the

22   non-delivery of related services and inappropriate levels

1    of performance.  Now, if they were -- if you awarded

2    compensatory education for them and you did that

3    yesterday, when did you first try to convene the meeting?

4             MR. DALTON:  February 24th.

5             MR. ST. CLAIR:  All right.  You first tried to

6    convene the meeting in February 24th, right?  The request

7    for mediation hearing was filed on February 13th.  So -- I

8    mean I -- don't I have to direct the finding for the

9    parent on those two issues?

10            MR. DALTON:  No, you would normally.  You would

11   normally.

12            MR. ST. CLAIR:  Just a minute.

13            MR. DALTON:  But the reason that I don't think

14   that you should is on equity grounds.

15            MR. ST. CLAIR:  I'm listening.

16            MR. DALTON:  Okay.  IDEA contemplates a

17   partnership between parents and schools, okay?

18            MR. ST. CLAIR:  Okay, I'm listening.

19            MR. DALTON:  And the parent agrees that they

20   will be available for meetings and the school agrees --

21            MR. ST. CLAIR:  That's the reason why I asked

22   you when you first tried to convene the meeting.  You said

1    February 24th.  They filed alleging these two denials

2    February 13th --

3           MR. DALTON:  Well, are -- you're saying that we

4    ought to get a directed finding on the issue that the

5    child is entitled to some compensatory ed?

6           MR. ST. CLAIR:  Well, no, you've all -- I'm not

7    even there but that the child was denied FAPE in as much

8    as --

9           MR. DALTON:  We probably can get a directed

10   finding on that issue.  But again, we're going to be

11   asking you that there not be a finding of denial of FAPE.

12          MR. ST. CLAIR:  What's the difference?

13          MR. DALTON:  Well, the difference is that the

14   requested relief has been brought.

15          MR. ST. CLAIR:  I'm not even getting into that.

16          MR. DALTON:  Okay, well, I don't know where

17   you're coming from then.

18          MR. ST. CLAIR:  All right.  So here's where I'm

19   coming.  Here's my understanding.  The parent points to

20   two circumstances that she represents as being a denial of

21   FAPE.  That is that services were not provided as

22   indicated on the IEP from the period September 2003 to the

1    -- ending December 2003, further, that the IEP was

2    inappropriate in that levels of performance were not

3    indicated.

4         Now, you tell me that at the meeting yesterday,

5    that is, April -- March 31, 2001, the team awarded

6    compensatory education for those two areas.  Now, at the

7    point I became interested -- now, at that point, I focused

8    on who was the first one to raise the issues.  If the

9    issues had been raised after you first made an attempt to

10   convene a meeting, I would have seen it as being kind of -

11   - after you first tried to convene the meeting that took

12   place March 31, 2004, I would've seen some equity grounds

13   here.  But my thinking is that because the request for

14   mediation hearing was filed February 13th, I'm hard-

15   pressed to find equitable grounds in that the meeting that

16   addressed the two complaints and eventually found them to

17   be meritorious did not --

18        MR. DALTON:  No, they didn't -- I'm sorry.  You

19   have a misunderstanding of why we decided to find

20   compensatory education appropriate.  It wasn't for those

21   violations.  It was based on the fact that we could have

22   done evaluations earlier and that based on those

1    evaluations, the child need it not because we failed to

2    provide the IEP, present level of performances.  If you

3    look at the previous IEP, the present level of

4    performances are on there and we've provide the related

5    services.  So we -- I guess we're going to need to have

6    some testimony on that for you to consider.  But --

7              MR. ST. CLAIR:  Testimony on what?

8              MR. DALTON:  On the whether -- on the claim that

9    the present level of performance wasn't there and the

10   services weren't provided.

11             MR. ST. CLAIR:  Tell you what I'm going to do.

12             MR. DALTON:  But the problem with that is we've

13   got all these other issues and that's why I thought a

14   continuance would be more --

15             MR. ST. CLAIR:  Well, I --

16             MS. GAMBALE:  I --

17             MR. ST. CLAIR:  Just a minute.  I'm not going to

18   forget you; I see you.  You made specific and very clear

19   representations, Mr. Drake -- I mean Mr. Dalton.  Mr.

20   Dalton, you made very clear representations about

21   compensatory education being awarded for certain things

22   that were mentioned by Ms. --

1        MR. DALTON:  When we were talking, there was a
2    group of things there.  And you were focusing on these and
3    I was focusing on the lack of evaluations.  So you also
4    might just evaluate --
5        MR. ST. CLAIR:  I'll tell you what I'm going to
6    do.  I'm going to review -- do you want a brief recess,
7    sir?
8        MR. DALTON:  No, I'm just getting a jacket.
9    This is not yours Ms. --
10        MR. ST. CLAIR:  No, it's not --
11        MS. GAMBALE:  No.
12        MR. DALTON:  I believe it's Ms. (off mike) and
13    she was in the previous hearing.
14        SPEAKER:  Thank you.
15        MR. DALTON:  You're welcome.
16        MR. ST. CLAIR:  I'm going to review the tape.
17    Maybe I did not hear what I thought I heard you say.
18        MR. DALTON:  No, I did say what you said I said.
19    But in my mind, what I was saying was, when you said her
20    allegations, I did not think you were limiting it to those
21    two precise allegations but the allegations where you just
22    have reviewed all of the things that she said, we --

1    failure to evaluate, we didn't do all these evaluations,

2    we didn't hold on an IEP --

3           MR. ST. CLAIR:  I understand that.

4           MR. DALTON:  That's what I was focusing on.

5           MR. ST. CLAIR:  Well, let me just say this.  I'm

6    going to review the record and see if -- if the record is

7    there, it's for you and for me, I'm going to review it.

8    That's not what I understood you to have said.  But

9    anyway, Ms. Gambale, do you want a continuance?

10          MS. GAMBALE:  I do not want a continuance.

11          MR. ST. CLAIR:  All right.  So at that point,

12   what are we going to do?  What are we going to do about

13   your concern with this -- the meeting that took place

14   yesterday?

15          MS. GAMBALE:  What I would ask is go back to my

16   original request that our right to address anything that

17   occurred at the March 31, 2003, meeting be reserved and

18   not be part of the hearing today.

19          First of all, it's all subsequent things to the

20   violation dates and so it's not really relevant here.

21   Second, the parent wasn't involved in that meeting.  And

22   third, this is a surprise tactic on the part of Mr. Dalton

1    that --

2         MR. ST. CLAIR:  Did you want a continuance, Mr.

3    Dalton?

4         MR. DALTON:  No, I don't believe we need a

5    continuance.  I'm looking at the requested relief and I'm

6    seeing that all the relief has been granted.  There may be

7    an issue of whether or not the award of compensatory ed --

8    that there's some disagreement on that and counsel is

9    certainly free to do that.

10        But I don't think counsel's position with regard

11   to their right to be present at the meeting is at issue

12   because of their failure on -- well, first of all, they

13   agreed to come to the meeting and then took it back.  And

14   I think they did that simply because they didn't want us

15   to have a meeting before the hearing.

16        MR. ST. CLAIR:  Well, I'll tell you what.  Let's

17   see we --

18        MS. GAMBALE:  We don't have all the evaluations

19   --

20        MR. ST. CLAIR:  Just a minute.

21        MS. GAMBALE:  I just don't see that this is

22   relevant to the --

1              MR. ST. CLAIR:  You don't see what is relevant?

2              MS. GAMBALE:  The March 31, '03, meeting.  What

3     --

4              MR. ST. CLAIR:  You know, just a minute, Ms.

5     Gambale.  Did you hear Mr. Dalton say that compensatory

6     education was awarded for two of your claims?

7              MS. GAMBALE:  Uh-huh.

8              MR. ST. CLAIR:  And that he -- and that the fact

9     that they did that would admit that they -- made a

10    violation of those two areas?

11             MS. GAMBALE:  I do.

12             MR. ST. CLAIR:  What does that mean to you?

13             MS. GAMBALE:  What does that mean to me?

14             MR. ST. CLAIR:  Yes.

15             MS. GAMBALE:  Well, you know, he's making an

16    admission.  But at the same time, we don't know what

17    they've awarded, or whether it's appropriate, or whether

18    we are in agreement.

19             MR. ST. CLAIR:  That may be true.  But that does

20    give you prevailing party status.

21             MS. GAMBALE:  I understand that.  But at the

22    same time, I don't want to see this child not get the rest

1    of the things that she needs accomplished because they

2    want to say that they've done it already.  And that's why

3    I'm concerned about not being able to address that.

4             MR. ST. CLAIR:  Well, let me just -- suppose you

5    get prevailing party status and the IEP that was put

6    together yesterday meets the wishes of the parent.

7             MS. GAMBALE:  Then that's fine.  But she hasn't

8    been fully evaluated yet and so I don't see how --

9             MR. ST. CLAIR:  I understand that.  Let me tell

10   you the only issue I see right now.  That is whether or

11   not if the evaluations have taken place.

12            MR. DALTON:  They have.

13            MR. ST. CLAIR:  No, I'm sorry, full evaluation.

14            MR. DALTON:  Okay, well, (inaudible) submit on

15   the record on that.

16            MR. ST. CLAIR:  All right, just --

17            MR. DALTON:  But we have to supplement the

18   record in order to do that.  That's why I thought a

19   continuance is in order because counsel hasn't had a

20   chance to review these.

21            MR. ST. CLAIR:  All right, tell you what.  In

22   order for me to grant a continuance, I have to have a

1    continuance requested from the parties.  The parent does

2    not make a request, right?

3         MS. GAMBALE:  We're not making a request for a

4    continuance.

5         MR. ST. CLAIR:  Right.  I got a request from the

6    school.  Now, what about these notes?

7         MS. GAMBALE:  As far --

8         MR. ST. CLAIR:  Is anybody going to disclose the

9    MDT notes?

10         MR. DALTON:  I've disclosed them to counsel for

11    having a continuance.  I'll also disclose all the

12    evaluations and we can set a new date.

13         MR. ST. CLAIR:  All right, I'll tell you -- now,

14    here's what I'm going to do.  Yes, Ms. Gambale.

15         MS. GAMBALE:  I just don't see that, like he's

16    saying, the evaluations are done.  If he's based that on

17    the records that he's submitted to us --

18         MR. DALTON:  No, Ms. Gambale.

19         MS. GAMBALE:  -- they have not.

20         MR. ST. CLAIR:  All right, let me just --

21         MR. DALTON:  -- you have gotten the copies of

22    them yet --

1          MR. ST. CLAIR:  Just a minute.  Ms. Gambale, I'm

2    not making a finding.  What I'm doing is continuing this

3    matter to give you a chance to look at the notes to review

4    the MD -- evaluations.  There is a possibility that you

5    can be satisfied with what is being disclosed to you today

6    and what will be disclosed to you.  And that you still get

7    a prevailing party status.

8          MS. GAMBALE:  Okay, I'm --

9          MR. ST. CLAIR:  And that -- and what would -- I

10   mean what could you expect more from winning the hearing

11   than to get what you want and prevailing party status?

12   I'm not -- I'm lost.

13          MS. GAMBALE:  I'm just concerned that he's

14   saying the evaluations are done and that --

15          MR. ST. CLAIR:  No, he made -- I'm not saying

16   that they're done.  He's saying that they're done.  He's

17   representing his client.  You're saying they are not done.

18   I'm saying, okay, there's an issue.  Let's come back.  And

19   if you say that they haven't been done and he says that

20   they have been done, then we'll litigate.

21          I'm going to read this -- I mean I'm going to

22   review the tape very carefully on this issue about --

1    these two issues about the related service and the missing

2    levels of performance.  I mean counsel made certain

3    representations on the record.  I'm going to -- maybe I

4    misunderstood.

5         MR. DALTON:  But what I want to say for the

6    record is that if there was an error on my part, it was

7    because I did not assume that you were restricting my

8    comments to those two issues, all right.  Those were

9    issues among other issues.

10        MR. ST. CLAIR:  I understand what you're saying.

11   Okay, so --

12        MR. DALTON:  Well, I don't want to -- my client

13   to be prejudiced by a misunderstanding that I had in my

14   mind and that you thought a representation I made went to

15   those specific issues.  I think that's totally unfair to

16   my client because you had one thing in mind and I had

17   something else in mind.

18        MR. ST. CLAIR:  All right, tell you what.  I'm

19   going to look at the notes.  And you said the -- that the

20   meeting yesterday was complete and thorough, right?

21        MR. DALTON:  Uh-huh.

22        MR. ST. CLAIR:  And you said that -- I

1    understood you to say compensatory education was awarded.

2           MR. DALTON:  That's correct.

3           MR. ST. CLAIR:  I'm going to look at the notes.

4    Is that in the notes?

5           MR. DALTON:  Yes.

6           MR. ST. CLAIR:  All right, give me the notes,

7    give me disclosure.  I'm going to set a continuance date.

8    Do you understand where we are, Ms. Gambale?

9           MS. GAMBALE:  Yes, sir, I do.

10           MR. ST. CLAIR:  Because you look very

11    uncomfortable.  How do you think you're prejudiced?

12           MS. GAMBALE:  How do I think --

13           MR. ST. CLAIR:  I'm going to declare a brief

14    recess to get to scheduling.  In the meantime, you figure

15    out where you think I have prejudiced you or your client

16    because I want to answer that.

17           MS. GAMBALE:  Okay.

18           MR. ST. CLAIR:  All right?  I'm going to get the

19    schedule.

20           (Recess)

21           MR. ST. CLAIR:  We're back on the record.  I

22    have a motion for a continuance on the table.  Ms.

1    Gambale?

2            MS. GAMBALE:  My only concern is that, to the

3    best of my knowledge, all the evaluations are not going --

4    have not been completed.  And I'm concerned that the child

5    will be prejudiced by further delays and the fact that the

6    evaluations won't get done.

7            MR. ST. CLAIR:  All right, and let me just say

8    this.  The LEA says that the -- well, they are saying that

9    the child has been fully evaluated.

10           MR. DALTON:  I got to speak up because in the

11   time that you left and the time they came here, Ms.

12   Gambale informed me of facts that I was unaware of and

13   that I needed to make the hearing officer aware of.

14           MR. ST. CLAIR:  Okay.

15           MR. DALTON:  She and I agree that the only

16   issues of contention are two, not that we are in agreement

17   as to those issues but that there are only two issues in

18   contention.

19           MR. ST. CLAIR:  Okay.

20           MR. DALTON:  The first is a hearing screening.

21   She says that has not been done.

22           MR. ST. CLAIR:  Okay.

1          MR. DALTON:  That was not done because the

2    student did not show up for it when it was scheduled.

3          MR. ST. CLAIR:  All right.

4          MR. DALTON:  So --

5          MS. GAMBALE:  I don't know that to be true.

6          MR. ST. CLAIR:  Just a minute.

7          MR. DALTON:  Okay, well, it doesn't matter

8    whether it's true or not.

9          MR. ST. CLAIR:  Yeah, because you can try to

10   arrange it for doing --

11         MR. DALTON:  We can --

12         MR. ST. CLAIR:  Sure.

13         MR. DALTON:  We can rearrange for that.

14         MR. ST. CLAIR:  All right, okay.

15         MR. DALTON:  Okay, so that is the only

16   evaluation that we were on notice of.  In my opinion --

17   though Ms. Gambale disagrees with me, but in my opinion,

18   that's it.  Now, today, for the first time, in my opinion,

19   we are being put on notice that they wanted OT.

20         MR. ST. CLAIR:  Occupational therapy.

21         MR. DALTON:  Right.  So we will agree to do the

22   OT on the basis that the record reflects that the notice

1   of the OT starts today.

2        MR. ST. CLAIR:  Okay.  Now, let me just say

3   this.  There is a possibility -- now, what she's saying is

4   that the child was not fully evaluated.  Now --

5        MR. DALTON:  But those are the only two issues

6   as to fullness, the screening, and now a new request for

7   OT.

8        MR. ST. CLAIR:  All right, well, I understand

9   that.  Just a minute.  Now, when you said the child was

10  not fully evaluated, what were you referring to?

11       MS. GAMBALE:  I was referring to the fact that

12  there was not a hearing screening, an OT, a vocational, or

13  a Vineland.

14       MR. ST. CLAIR:  Okay.

15       MS. GAMBALE:  Mr. Dalton has said that the

16  vocational and the Vineland have been done.  I do not know

17  that to be true because they're -- they have not shown me

18  a copy of the evaluation.

19       MR. ST. CLAIR:  Ms. Gambale, during the

20  continuance, he's going to forward to you all of the

21  evaluations he has, all right, all of the evaluations that

22  had been done.  And then you can go through them and

1  decide whether or not they meet -- what you think of them.

2       MS. GAMBALE:  Okay.  But the only question I

3  have, there was a Vineland that was done in '02 that the

4  MDT that met in December called into question.

5       MR. ST. CLAIR:  Well, let me just say this.

6  Now, I'll tell you what.  There is a possibility that even

7  if the Vineland is there --

8       MS. GAMBALE:  But there was a previous Vineland.

9  But there -- it should not be the Vineland that was done

10  in 2002, the one that they are saying that's been done --

11       MR. DALTON:  No, this -- the one that we did --

12       MR. ST. CLAIR:  All right. I'll tell you what.

13  I'm going to --

14       MR. DALTON:  No, the one -- it was another one.

15       MR. ST. CLAIR:  Listen, these issues, it sounds

16  to me that that's going to be litigated.  And I'm -- and I

17  have to decide whether or not -- there is a possibility I

18  can decide that the OT was due even though he just got

19  notice of it today.

20       MS. GAMBALE:  But now there is -- that could be

21  addressed -- litigated too because we actually --

22       MR. ST. CLAIR:  That's what I just said.  That's

1   what I'm saying.  I'm saying I can decide that the OT was
2   due and that the hearing screening was due prior to Mr. --
3   what is --
4           MR. DALTON:  -- because we don't even look
5   alike.
6           MR. ST. CLAIR:  Yes, right.  Mr. Dalton --
7           MR. DALTON:  You know, with the -- in the
8   vernacular of the hood, we are brothers, but you know --
9           MR. ST. CLAIR:  Thank you, sir.  This also bodes
10  well for your argument that maybe something was amiss --
11          MR. DALTON:  Right, that's what I'm trying to
12  say.  Please give me a break here.
13          MR. ST. CLAIR:  All right, okay.  But yes, when
14  we come back, after we sit down, if I decide that that's
15  still an issue, Mr. Dalton would be on his proof.
16          MR. DALTON:  Yeah.
17          MR. ST. CLAIR:  All right?
18          MS. GAMBALE:  Okay.
19          MR. ST. CLAIR:  All right.  Now, did I answer
20  your --
21          MS. GAMBALE:  I think so.
22          MR. ST. CLAIR:  All right.  For the time being,

```
1    is there anything further, Ms. Gambale?

2              MS. GAMBALE:  No.

3              MR. ST. CLAIR:  Mr. Dalton --

4              MR. DALTON:  No, sir.

5              MR. ST. CLAIR:  -- for the time being, is there

6    anything further?  All right, this matter is --

7              MS. GAMBALE:  Wait, just one more thing.  I

8    would ask for a leave because the -- I haven't had a

9    chance to review the notes and also --

10             MR. ST. CLAIR:  Yes, I think that's fair.  I

11   think that's fair, that's fair.

12             MR. DALTON:  Absolutely.

13             MR. ST. CLAIR:  But make sure he gets it within

14   time to --

15             MS. GAMBALE:  Absolutely.

16             MR. ST. CLAIR:  All right, yeah.  And don't do

17   as some attorneys do when they give you things the minute

18   before the hearing.

19             MS. GAMBALE:  I would hope that's --

20             MR. ST. CLAIR:  Don't do that.

21             MS. GAMBALE:  -- I'll file it --

22             MR. ST. CLAIR:  All right.
```

1            MR. DALTON:  Of course, the fact that it only

2    occurred yesterday does --

3            MR. ST. CLAIR:  All right.  The matter is

4    continued as stated.  Gentlemen and Ms. Gambale, thank you

5    very much.

6            MR. DALTON:  Thank you.

7            MS. GAMBALE:  Well, thank you.

8            (Whereupon, the HEARING was continued.)

9                        *   *   *   *   *

OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
STUDENT HEARING OFFICE

```
-------------------------x
G█████ W█████████,          :
                            :
            Petitioner,  :
                            :
            v.              :
                            :
FRIENDSHIP-EDISON           :
PUBLIC CHARTER SCHOOLS,     :
                            :
            Defendant.   :
-------------------------x
```

825 North Capitol Street, N.E.
Washington, D.C. 20003

Thursday, April 29, 2004

The HEARING in this matter continued pursuant to
notice.

BEFORE:

HERBERT ST. CLAIR
Hearing Officer

APPEARANCES:

On behalf of Petitioner:

ROBERTA GAMBALE, ESQUIRE

On behalf of Defendant:

PAUL DALTON, ESQUIRE

ALSO PRESENT:

WALLIS HENRY,
Director of Special Education,
Friendship-Edison Public Charter Schools

MICHELE MOODY,
Educational Advocate

GLORIA WARD-RAVENELL

# C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| Nancy Opalack | 20 | 50 | 71 | 76 |

\*   \*   \*   \*   \*

```
1                    P R O C E E D I N G S

2

3          MR. ST. CLAIR:  Okay.  We're on the record now.

4   This, let me just state, is a proceeding before the --

5   well, this is a continuation of the hearing for G████

6   W███████.

7          The hearing originally convened on April 1,

8   2004, at that hearing.  I continued the hearing by interim

9   order dated April 9th; I continued the matter to this

10  place and time.  Now, I think I said among the possible

11  issues for hearing that will be set for the continuation

12  to be parent's non-refusal --

13         MR. DALTON:  No, refusal.

14         MR. ST. CLAIR:  -- or non-cooperation with the,

15  all right, meeting, okay, will be one.  All right, now,

16  let me see.  I set out some issues in the --

17         MR. DALTON:  Well, I think we could narrow the

18  issues down to one issue.

19         MR. ST. CLAIR:  Okay, well, let's --

20         MR. DALTON:  If --

21         MR. ST. CLAIR:  Just a minute.  All right, the

22  first one was to complete the reevaluation as requested
```

1    under 536.  Now, I do know -- all right, where are we on

2    that?

3            MS. GAMBALE:  Re-evals, we've received nothing

4    further from the hearing.

5            MR. ST. CLAIR:  All right, well, just a minute.

6    Did you -- what did you receive prior to the hearing,

7    prior to the hearing request?  See, the request was filed

8    on February 13th.  What evaluations did you receive prior

9    to that?

10           MS. GAMBALE:  Prior to the hearing request on

11   which date?

12           MR. ST. CLAIR:  February 13th.

13           MS. GAMBALE:  Well, I received -- there was a

14   partial educational that was completed.

15           MR. ST. CLAIR:  A part educational?

16           MS. GAMBALE:  Prior to February.

17           MR. ST. CLAIR:  Okay.

18           MS. GAMBALE:  Everything else was -- well, we

19   have not received all evaluations.

20           MR. ST. CLAIR:  To date?

21           MS. GAMBALE:  To date.  We have -- to date, what

22   we have not received, we have not received the Vineland,

1   which is significant in this case, and we have not

2   received the vocational, which Mr. Dalton had said was

3   done at the last hearing and said he would fax me which we

4   have not received.

5            MR. ST. CLAIR:  Okay.

6            MS. GAMBALE:  And we have not received the

7   hearing screening.  And there is also an issue regarding

8   the OT, that we feel like an OT is warranted based on the

9   psychoeducational results.

10           MR. ST. CLAIR:  Just a minute, let me read this.

11  Do I need to recess, excuse me, the hearing -- but

12  disagreed as to -- okay.  The second was -- has

13  occupational therapy been completed?

14           MS. GAMBALE:  No.

15           MR. ST. CLAIR:  Okay.  And there's an issue as

16  to who is responsible for the hearing screening not being

17  -- is that finished?  Is the hearing screening done?

18           MR. DALTON:  All of the documents that Ms.

19  Gambale says that she did not receive were included in my

20  five-day.

21           MR. ST. CLAIR:  All right, you're talking about

22  for this.

1           MR. DALTON:  Yes.

2           MR. ST. CLAIR:  Did you -- all right now --

3           MR. DALTON:  But she said she didn't get them.

4           MS. GAMBALE:  -- they were not --

5           MR. DALTON:  But we have fax confirmations that

6    her office --

7           MR. ST. CLAIR:  Just a minute.  Are these the

8    ones you're saying that she didn't get?

9           MR. DALTON:  No, this is the original one.

10          MR. ST. CLAIR:  Brief recess for a minute.

11          (Recess)

12          MR. ST. CLAIR:  All right, we're on the record

13   again.  The hearing officer and counsel have had some

14   discussions prior to going back on the record.  And I'm

15   going to state the understanding and ask counsel to point

16   out any misunderstanding on the part of the hearing

17   officer.

18          The public charter school has the burden of

19   proof, that's Friendship-Edison.  And that the first issue

20   is whether or not the parent's request for reevaluation

21   under 300.536(b) was complied with, whether or not an

22   annual review of the IEP prior to June 2003 was reviewed

1    at -- within a year.

2            MS. GAMBALE:  Well, the last IEP before the

3    March IEP was dated June 2002.

4            MR. ST. CLAIR:  Okay.  Mr. Dalton is on notice.

5    And then we have whether or not the related services were

6    provided between June 2003 and December 2003.  I'm hoping

7    you have records.

8            MR. DALTON:  I do.

9            MR. ST. CLAIR:  Good.

10            MR. DALTON:  I have testimonies.

11            MR. ST. CLAIR:  Well, records.  But I mean the

12    testimonies are okay.

13            MR. DALTON:  Yeah.

14            MR. ST. CLAIR:  Okay.  And then we get to the

15    present levels of performance on the 2-3 and the 3-4 IEPs.

16    And then we get to the circumstances surrounding the March

17    31, 2004, meeting from beginning to end.  Is that it,

18    Counsel?

19            MS. GAMBALE:  That -- I believe that's it.

20            MR. ST. CLAIR:  All right.  Let's get started.

21    We're going off the record.

22            (Recess)

1        MR. ST. CLAIR:  All right.  This is Herbert St.

2   Clair again.  We are at the hearing proper now.  We're

3   going to begin.  As I stated earlier, this is a

4   continuation of the hearing for G███ W█████.  I'm

5   going to ask everyone in the room now to please identify

6   themselves.  Let's begin with the counsel for Friendship-

7   Edison Public Charter School.

8        MR. DALTON:  Good morning, Mr. St. Clair.  My

9   name is Paul Dalton and I am counsel for Edison-Friendship

10  Public Charter Schools.

11       MR. HENRY:  Good morning.  My name is Wallis

12  Henry.  I'm director of special education for Friendship

13  Public Charter School.

14       MS. MOODY:  Good morning.  Michele Moody,

15  educational advocate.

16       MS. WARD-RAVENELL:  Good morning.  Gloria Ward-

17  Ravenell, grandmother of G███ W████.

18       MS. GAMBALE:  And I'm Roberta Gambale.  I am the

19  attorney for the parent.

20       MR. ST. CLAIR:  I'm going to ask everybody else

21  to state -- Mr. Dalton, take that mike --

22            (Tape interruption)

1       MR. ST. CLAIR:  Everybody is to identify

2    themselves again.  Let's begin with you, Mr. Dalton.

3       MR. DALTON:  Good morning, Mr. St. Clair.  Good

4    morning, parties.  My name is Paul Dalton.  I am counsel

5    for Edison-Friendship Public Charter Schools.

6       MR. HENRY:  Good morning.  My name is Wallis

7    Henry.  I'm director of special education for Friendship

8    Public Charter Schools.

9       MS. MOODY:  Michele Moody, educational advocate.

10      MS. WARD-RAVENELL:  Good morning.  Gloria Ward-

11   Ravenell, grandmother of G█████ W███████.

12      MS. GAMBALE:  And I am Roberta Gambale.  I'm the

13   attorney for the parent.

14      MR. ST. CLAIR:  Okay.  Prior to beginning the

15   hearing or the continuation proper.  Counsel and the

16   hearing officer, in an endeavor to conserve everyone's

17   time at the -- while guaranteeing due process for G█████

18   W███████, set the issues as follows.  And Mr. Dalton will

19   proceed first with the burden of proof on the following

20   issues.

21      Number one, whether or not the parent's request

22   for a reevaluation under 300.536(b) was appropriately

1   complied with, whether or not there was an annual review

2   of the IEP that was in existence prior to June 2003,

3   whether or not related services were provided to G█████

4   between September 2003 and December 2003, whether or not

5   the 2-3 and the 3-4 IEPs included present levels of

6   performance and transitional services, and lastly, the

7   circumstances from beginning to end surrounding the March

8   31, 2004, IEP meeting.

9        Now, at this point, if the hearing officer has

10  made a mistake counsel are asked to point out the mistake.

11  Okay.

12        MS. GAMBALE:   The last issue was the

13  appropriateness of that IEP.

14        MR. ST. CLAIR:   I thought I said --

15        MS. GAMBALE:   I'm sorry.   I thought --

16        MR. ST. CLAIR:   I thought I said all of the

17  issues.   Well, okay, the appropriateness of the IEP is

18  included in that too.   All right, now, let me state that

19  additional disclosure was received from the public charter

20  school 9 through 18.   The hearing officer will also note

21  that at the last hearing session, that is April 1, 2004,

22  Friendship introduced the meeting notes and IEP from the

1    March 31, 2004, MDT IEP meeting.

2         MR. DALTON:  And those are exactly the same as

3    exhibit 16.

4         MR. ST. CLAIR:  Okay, exhibit -- all right,

5    good, okay.  And I have an additional disclosure from Ms.

6    Williams -- I'm sorry.

7         MR. DALTON:  Gambale.

8         MS. GAMBALE:  Gambale.

9         MR. ST. CLAIR:  Okay.  And that was an amended

10   request for mediation hearing dated --

11        MS. GAMBALE:  (Off mike) dated 4/16/04.

12        MR. ST. CLAIR:  -- April 16, 2004, wherein the

13   issues concerning the March 31, 2004, IEP meeting and the

14   appropriateness of the IEP was set out.  Is that correct?

15        MS. GAMBALE:  Yes.

16        MR. ST. CLAIR:  Mr. Dalton, any preliminary

17   matters, Counsel?

18        MR. DALTON:  The only preliminary matter was

19   counsel's request to deal with the last issue first and

20   his request to be heard on a motion for directed finding.

21   Just for the record, that request was denied.  And the

22   counsel simply notes his exception for the record.

1          MR. ST. CLAIR:  Well, I'll tell you what.  I
2     don't think that was on the record.  I hadn't turned the
3     tape recorder on.  You mean when you were going to ask the
4     -- surrounding the collateral estoppel.
5          MR. DALTON:  Uh-huh.
6          MR. ST. CLAIR:  Yeah, why don't you make the
7     motion?
8          MR. DALTON:  All right.  Counsel noted in the
9     previous hearing determination that the hearing officer
10    stated with --
11         MR. ST. CLAIR:  The interim order dated April
12    9th?
13         MR. DALTON:  Yeah.
14         MR. ST. CLAIR:  All right.
15         MR. DALTON:  Stated with particularity that the
16    issue surrounding the cooperation or lack of cooperation
17    by the parent and counsel for the parent in attending the
18    March 31st hearing would be an issue that would be
19    addressed at this hearing.  Counsel noted that that
20    meeting was the fourth attempt to obtain a meeting and
21    that we had received confirmation from a representative of
22    the parent and the parent that they would be there.  And