1    she supposed to get in related services per week?

2            THE WITNESS:  One hour speech and language

3    therapy, and 30 minutes of psycho-social counseling.

4            MR. ST. CLAIR:  All right.  So that's how many -

5    - 4 weeks times 1.5, right?

6            THE WITNESS:  Correct.

7            MR. ST. CLAIR:  That's a month, I mean.

8            THE WITNESS:  Uh-huh.

9            MR. ST. CLAIR:  So let's just say 12 -- times

10   12.  So that's roughly -- what is that?

11           MR. ST. CLAIR:  -- I have times three.

12           SPEAKER:  No, is that --

13           MR. ST. CLAIR:  Times three.  How many hours is

14   that?  Who's the mathematician?  I hate to say, I need

15   specialized instruction in math calculation.

16           MS. GAMBALE:  Well, she was also supposed to get

17   a specialized instruction too.

18           MR. ST. CLAIR:  Oh, just a minute.  You just

19   said related services, didn't you?

20           MS. GAMBALE:  No, and specialized instruction.

21           MR. ST. CLAIR:  Just a minute.

22           MS. GAMBALE:  That's in our hearing request.

1          MR. ST. CLAIR:  I thought you said related
2   services.
3          MS. GAMBALE:  She didn't get anything.  She was
4   in a regular education setting --
5          MR. ST. CLAIR:  Hold on.
6          MS. GAMBALE:  -- and that was --
7          MR. ST. CLAIR:  Just a minute.  What did I do
8   with the request to mediation (off mike)?
9          MS. GAMBALE:  This should be a very -- the first
10  request is the first one, but the next one is our exhibit
11  number 27.
12         MR. ST. CLAIR:  Wait a minute, wait a minute.
13  All right.
14         MS. GAMBALE:  It is --
15         MR. ST. CLAIR:  The request -- the first one --
16         MS. GAMBALE:  The first one?
17         MR. ST. CLAIR:  --is 213, yours number 3.  Here
18  it is.  You're then at 13?
19         MS. GAMBALE:  It's in both of them.
20         MR. ST. CLAIR:  Well, I have the number of it.
21  Because number three says prepared to provide related
22  services, didn't it?  Yes.  Doesn't say -- just a minute.

1    It's my point, right?

2         MS. GAMBALE:  I have "with the full extent of
3    specialized instruction and her related services, pursuant
4    to the requirements of her individualized education
5    program."

6         And I specifically say that she is -- what she
7    was supposed to have received --

8         MR. ST. CLAIR:  Just a minute.  Okay, that's
9    where I got "related."  I just read the bold print.  Okay.

10        Mr. Henry, now what Ms. Gambale said was that
11   the child received no services or nearly no services
12   between September and December 2003.  That was discussed
13   at the March 4th -- March 31, 2004, IEP meeting.

14        THE WITNESS:  Yes.

15        MR. ST. CLAIR:  Now what extent of services were
16   not delivered?  What amount of services were not
17   delivered?

18        THE WITNESS:  What amount?

19        MR. ST. CLAIR:  Were none of them delivered?

20        THE WITNESS:  Yes, some were delivered.

21        MR. ST. CLAIR:  Which -- do you have
22   documentation as to what services were delivered?

1          You have the burden of proof.  Otherwise I'm
2   going to say you did not --
3          THE WITNESS:  Available to me today, no, I do
4   not, the actual tracking records for the teachers, but I
5   do have them available.
6          In terms of related services, Ms. Beth
7   Wilkinson, the speech pathologist, which you heard
8   testimony from, can speak to the indirect services that
9   she provided in the classroom.
10         MR. ST. CLAIR:  The child was supposed to
11  receive speech language therapy and psychological
12  counseling, plus 20 hours of specialized instruction.
13         THE WITNESS:  Yes.
14         MR. ST. CLAIR:  You don't have any records of
15  delivery of these services?
16         THE WITNESS:  No.
17         MR. ST. CLAIR:  All right.  What did you
18  conclude was the child's entitlement in the March 31, 2004
19  meeting?
20         THE WITNESS:  Thirty hours, I believe.
21         MR. ST. CLAIR:  Thirty hours of what?  I want
22  you to refer me to that.

1          THE WITNESS:  Okay.

2          MR. ST. CLAIR:  This is what we're looking at
3  now, right?

4          MR. DALTON:  Yeah.

5          MR. ST. CLAIR:  There has not been a placement
6  meeting on this March 31st IEP.  Is that correct, Mr.
7  Dalton?

8          MR. DALTON:  That's because the conclusion was
9  the -- at least for this -- balance of this year, she may
10 be --

11         MR. ST. CLAIR:  Okay.

12         MR. DALTON:  (Off mike.)

13         MR. ST. CLAIR:  Okay.  So a placement meeting is
14 in order, because this school-year is nearing end, right?

15         THE WITNESS:  Yes.

16         MR. ST. CLAIR:  All right.

17         MR. DALTON:  And also --

18         MR. ST. CLAIR:  I don't want to stop Mister --
19 go ahead Mr. Dalton.

20         MR. DALTON:  The team agreed to --

21         MR. ST. CLAIR:  Just give me the page number,
22 please.

1  MR. DALTON:  Page 2 of 2.  This is from the IEP
2  meeting notes.
3  MR. ST. CLAIR:  2 of 2 -- I'm looking at 6 of 9,
4  I know that's not -- 2 of 2.
5  MR. DALTON:  Two of two
6  MR. ST. CLAIR:  This is the one that begins the
7  program they've structured to provide --
8  MR. DALTON:  Yes.
9  MR. ST. CLAIR:  No compensatory ed. in it.  The
10  MDT is -- why don't you help me out, sir?
11  THE WITNESS:  The MDT has determined that
12  G███████'s instructional program would not have differed if
13  she had been labeled MR or LD, because she participated in
14  inclusion classes and resource classes with support.
15  The MDT does believe however that Friendship-
16  Edison Collegiate Academy failed to focus on her math
17  disability and is prepared to offer 30 hours of math
18  tutoring in both individual and small group sessions.
19  MR. ST. CLAIR:  Let me ask you this.  Isn't this
20  inconsistent with what you said about the programming for
21  learning disabled as opposed to MR -- severely MR?
22  THE WITNESS:  She wasn't labeled as severely MR.

1       MR. ST. CLAIR:  Well, she was mentally retarded.
2       THE WITNESS:  Yes.
3       MR. ST. CLAIR:  Isn't this inconsistent with
4  what you just said?
5       THE WITNESS:  No.  How is it inconsistent?
6       MR. ST. CLAIR:  I thought you just said that the
7  child would -- the instruction of specialized instruction
8  would be different for a learning disabled child as
9  opposed to one who has mental -- mentally retarded,
10 because I do think that we talked -- 53 is kind of low.
11      THE WITNESS:  I said depending on how adapted
12 the student was.
13      MR. ST. CLAIR:  Let me finish -- let me finish,
14 and I think I recall you having said that the -- for the
15 mentally retarded would be more rote.  Isn't that what you
16 said?
17      THE WITNESS:  Yes, depending on how the student
18 functions.
19      MR. ST. CLAIR:  If I -- just a minute.  Well,
20 no, you're going to have redirect.  So I misunderstood,
21 it's not inconsistent with --
22      THE WITNESS:  No, it's not inconsistent.

1   MR. ST. CLAIR: Okay. So really the -- this
2   seems to me to be saying that they did not determine if
3   the services were not delivered.
4   As I understand this, this is simply because the
5   kid was -- disability (inaudible). Am I reading this
6   correct?
7   THE WITNESS: This would include both.
8   MR. ST. CLAIR: Where does it say that the child
9   did not receive the services?
10  THE WITNESS: That could be included in the
11  failure to focus on her math disability. This -- at that
12  time she was not -- at the beginning of the school-year,
13  she was not in the math resource class. She was receiving
14  support in a general ed. setting.
15  MR. ST. CLAIR: No, the way I understand that,
16  she did not -- she was not scheduled to receive
17  instruction in math. That' how I understand that.
18  THE WITNESS: She had a math class; she was
19  scheduled to receive it.
20  MR. DALTON: Can I --
21  MR. ST. CLAIR: Just a minute with this. You
22  have redirect?

1        MR. DALTON:  No, it's just not redirect.

2        THE WITNESS:  Oh, that's --

3        MR. ST. CLAIR:  You can have it.

4        MR. DALTON:  Okay.

5        MR. ST. CLAIR:  Okay.  But this 30 hours is for
6    what?

7        THE WITNESS:  To properly address her learning
8    disability in the area of math.

9        MR. ST. CLAIR:  It's not compensatory education
10   for anything?

11       THE WITNESS:  This is compensatory education
12   also, because the program was not directed toward her math
13   disability.  It was directed generally supporting her in
14   her -- both her reading and her math.

15       MR. ST. CLAIR:  All right now, you're saying
16   that the 30 hours of tutoring in math are for all of the
17   services indicated on the 2002 IEP that were not provided
18   and the fact that they were -- the services that were
19   provided did not focus on her math disability?

20       THE WITNESS:  Correct.

21       MR. ST. CLAIR:  Okay.  Let me see.  Now, this
22   meeting here, where you here?

| | |
|---|---|
| 1 | THE WITNESS: And which date is that? |
| 2 | MR. ST. CLAIR: This is the December meeting. |
| 3 | THE WITNESS: No, I was not. |
| 4 | MR. ST. CLAIR: Oh, you weren't at that meeting? |
| 5 | THE WITNESS: No. |
| 6 | MR. ST. CLAIR: Who was the official from the |
| 7 | school at the meeting? Special ed. teacher Sharpe |
| 8 | Charlene Glimp (phonetic)? |
| 9 | MR. DALTON: Ms. Glimp. |
| 10 | MS. GAMBALE: That was her special ed. teacher. |
| 11 | THE WITNESS: No, that's not her special ed. |
| 12 | teacher. |
| 13 | MR. DALTON: That's her assistant. |
| 14 | MR. ST. CLAIR: So, Katrina Lemont (phonetic), |
| 15 | she's the -- she is the official. |
| 16 | THE WITNESS: Uh-huh. |
| 17 | MR. ST. CLAIR: Okay. And I should rely just on |
| 18 | 21 and 22 for evidence of the December 4th, '03 meeting, |
| 19 | right? |
| 20 | THE WITNESS: Yes. |
| 21 | MR. ST. CLAIR: All right. Mr. Dalton. |
| 22 | REDIRECT EXAMINATION |

```
 1              BY MR. DALTON:
 2       Q    Prior to December -- I mean, from September to
 3   December, related services and special ed. instructions
 4   was given in the inclusion setting?
 5       A    That's correct.
 6       Q    After the December meeting --
 7            MR. ST. CLAIR:  Say that again?
 8            MR. DALTON:  Special ed. services and related
 9   services were given --
10            MR. ST. CLAIR:  You mean specialized
11   instruction?
12            MR. DALTON:  Well, I'm sorry, specialized --
13            MR. ST. CLAIR:  Given in an inclusive setting.
14            MR. DALTON:  Right.
15            BY MR. DALTON:
16       Q    And then after the December meeting, it was
17   decided that her reading and math was to be given in a
18   resource setting, correct?
19       A    That's correct.
20       Q    All right.  And because of the difference
21   between her receiving it an inclusion setting, part of the
22   time and receiving it in a resource center the other half
```

1   of the year, and because of the gap in the IEP, that's why
2   compensatory ed. was awarded, is that correct?
3       A   That's correct.
4       Q   Now --
5           MR. ST. CLAIR:  Just a minute.  I want you to
6   refer me to in the notes.  I don't mean to interrupt you.
7   Go ahead.  I'll see, go ahead.
8           BY MR. DALTON:
9       Q   And she wasn't given any compensatory education
10  in reading because she had made sufficient progress in
11  reading and that -- and her new schedule for next year,
12  any help she would need in that area would be conducted in
13  an inclusion setting, because she had basically graduated
14  from a resource setting.
15      A   That's correct.
16      Q   All right.  Now, in addition to that, explain to
17  the Hearing Officer what exhibit 9 is.
18          MR. ST. CLAIR:  Your exhibit 9?
19          MR. DALTON:  My exhibit.
20          BY MR. DALTON:
21      Q   Instructional contact sheets -- what are those?
22  What are these?

1    A    Instructional contact sheets are the weekly
2    contact sheets that these special education teachers note
3    down as observers for the students.
4    Q    All right. So when you indicated to the hearing
5    officer that you had no proof, that you had just
6    supervised these hours, you were being inaccurate, is that
7    correct?
8    A    That's correct.
9    Q    All right. Now, we've got that straightened
10   out. Now with regard to the fact that there may not have
11   been as many hours in speech on a direct basis, that some
12   of those hours were done on a indirect basis, the fact
13   that she was exited out of the speech and language is
14   evidence that the services she did receive were adequate
15   enough to -- be in a position to exit her, is that not
16   correct?
17   A    That's correct.
18       MR. DALTON: I have no further questions.
19       MR. ST. CLAIR: All right, now -- and before I
20   don't want to lose this point. You were talking about the
21   specialized instruction not being delivered in a special
22   education setting, but in a inclusion setting, right?

1      Can you show me in any other notes where that
2 was indicated, or any of the IEP?  Because I was listening
3 to you pose your question.
4      MR. DALTON:  Right.
5      MR. ST. CLAIR:  I mean, your question was very
6 carefully posed.
7      MR. DALTON:  The purpose of the -- you -- this
8 may be one question you cannot answer, so if you cannot
9 answer it, please indicate you cannot answer it, but my
10 understanding of one of the reasons for the December
11 meeting was a discussion of that very issue, of the issue
12 of inclusion versus resource.
13      THE WITNESS:  That was one of the focuses.
14      MR. DALTON:  And after that discussion, it was
15 determined that there -- that instruction should be
16 changed from inclusion into -- at least for reading and
17 math, into resource.
18      THE WITNESS:  Yes.
19      MR. DALTON:  Is it --
20      MR. ST. CLAIR:  So that means -- so does that
21 mean that the child should have been in resource before?
22      THE WITNESS:  Yes.

```
 1             MR. ST. CLAIR:  She should have been?  And which
 2   is all special ed.?
 3             THE WITNESS:  Not all special ed., just for --
 4             MR. DALTON:  Just for reading and math.
 5             MR. ST. CLAIR:  Oh, okay.  All right.  And when
 6   you say resource, you mean special education setting?
 7             THE WITNESS:  Right.
 8             MR. ST. CLAIR:  Okay.  Yeah, now, but you can't
 9   refer me to any of the notes here, other than Mr. Henry's
10   answer to your --
11             MR. DALTON:  No.  No, the IEP from '02 says it's
12   to be provided by a special ed. teacher which implies --
13             MR. ST. CLAIR:  And that's the one that you --
14             MR. DALTON:  -- a resource.
15             MR. ST. CLAIR:  -- and that's the one you did
16   not disclose?
17             MR. DALTON:  Not this one -- I did not disclose,
18   Ms. Gambale disclosed.
19             MR. ST. CLAIR:  Okay.  All right.  Re-cross?
20             RECROSS EXAMINATION
21             BY MS. GAMBALE:
22        Q    As far as these logs are concerned, are the
```

```
1    areas whited (phonetic) out because there are different
2    students' names?
3         A    Yes.
4         Q    Okay.  And then are you familiar with G_____'s
5    schedule for the first part of the 2003-2004 school-year?
6         A    Yes.
7         Q    Are you familiar of the fact that she was in an
8    algebra class, two fashion classes, a biology class and a
9    Spanish class?
10        A    Yes.
11             MS. GAMBALE:  And I have no further questions.
12             MR. ST. CLAIR:  Okay.  Okay.  I'm going to go
13   get the scheduling first, so we can come back for your
14   case, Ms. Gambale.
15             In the meantime, I want to get -- Mr. Dalton,
16   Ms. Gambale, can we -- can counsel get together on the
17   amount of instruction that was -- that Friendship-Edison -
18   - are these all of the instruction records?
19             MR. DALTON:  No, they're not.
20             MR. ST. CLAIR:  All right, because on the 2002
21   IEP, she was scheduled for how much specialized
22   instruction?
```

1           MR. DALTON:  Twenty hours.

2           MR. ST. CLAIR:  Okay.  And you don't have all of

3   that in here?

4           MR. DALTON:  I don't believe so.

5           MR. ST. CLAIR:  Okay.  So, Ms. Gambale, do you

6   think you and Mr. Dalton can confer to the degree that you

7   can agree how many hours were supposed to be delivered and

8   how many hours you can prove that were delivered?

9           MS. GAMBALE:  I am more than willing to attempt

10  to confer.

11          MR. ST. CLAIR:  Right, that's all I want, a good

12  faith attempt.  All right, I'm going to declare a brief

13  recess to get the scheduling quickly.

14          MR. DALTON:  Thank you.

15          (Recess)

16          MR. ST. CLAIR:  All right, we're back on the

17  record.

18          MR. DALTON:  Yeah.

19          MR. ST. CLAIR:  The counsel for Friendship-

20  Edison has requested a continuance and then he has a

21  meeting with -- in the interests of another client.

22  Counsel for the parent has agreed?

1          MS. GAMBALE:  Yes, I have.

2          MR. ST. CLAIR:  All right, does not oppose the

3    continuance.  We have decided that the hearing will

4    continue at 9:00 a.m. on the -- Thursday the 27th of May.

5          MR. DALTON:  All right.

6          MR. ST. CLAIR:  All right.  Now, the hearing

7    officer has instructed the attorneys to try to see if they

8    can come up with the number of hours that were not

9    delivered.

10         If I have to decide it, I will, and this is the

11   number of hours not delivered between September 2003 and

12   December 2003.  Let me say --

13         MR. DALTON:  October --

14         MR. ST. CLAIR:  -- that I'm going to begin this

15   attempt by asking you, Mr. Dalton, to provide records, the

16   records to her and she will respond to you, and if that's

17   as far as you can get, that's an effort.

18         Now, if the parties can agree that certain

19   meetings should take place or proceed, because we are

20   closing in on the end of the year, they should feel free

21   to do that without prejudice to either party as far as my

22   determination -- my eventual determination will be.

```
1            Anything further at this juncture, Ms. Gambale?
2            MS. GAMBALE:  No.
3            MR. ST. CLAIR:  Anything further at this
4    juncture, Mr. Dalton?
5            MR. DALTON:  No, sir.
6            MR. ST. CLAIR:  Thank you again, ladies and
7    gentlemen.  We will see each other at 9:00 a.m. on
8    Thursday, May the 27th, 2004.
9            (Whereupon, the Hearing was continued.)
10                   *  *  *  *  *
```