**STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA**
**REQUEST FOR MEDIATION/HEARING**

➤ **This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.**

➤ **This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Fax number 202-442-5556**

---

Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent. Mediation may be beneficial in your case. Please indicate your decision:

___ I REQUEST MEDIATION    ___ I REQUEST MEDIATION AND A HEARING    _X_ I REQUEST A HEARING

---

**STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED**

Student Name: _Travis Dixon_                                        DOB: _10/20/97_

Address: _2657 Stanton Road, SE, Washington, DC 20020_

| Present School of Attendance: | Home School: |
|---|---|
| | (Neighborhood school where child is registered) |
| Savoy Elementary School | Savoy Elementary School |

**COMPLAINT IS MADE AGAINST:** __DCPS and Friendship Edison PCS – Chamberlain Campus__
                                                    DCPS and/or D.C. Public Charter School-specify charter school

**INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING**

Name: _Ms. Dorothea Dixon_

Address: _2657 Stanton Road, SE, Washington, DC 20020_

Phone: (H) _(202) 889-4879_          (Cell) _(202) 246-1812_          (Fax) _____

Relationship to Student: _X_ Parent  ___ Self  ___ Legal Guardian  ___ Parent Surrogate  ___ Public Agency

**PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable):**

Name: _Christina Rose Busso, Esq._          Phone: (W) _(202) 742-2000_          (Fax) _(202) 742-2098_

Address: _1220 L Street, NW, Suite 700, Washington, DC 20005_

---

Form 101                                                                                                02/01/2003

1.  You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) dates within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates.

Hearings:      __May 18, 2004 AM/PM__      __May 19, 2004 AM/PM__      __May 20, 2004 AM/PM__

Mediation:     _____      _____      _____

**FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST. IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).**

**FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.**

Every effort will be made to accommodate your requested dates. Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate. Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date. Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice. *Please do not contact the Hearing Office by phone to request a continuance. Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled. Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2.  Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):

> Interpreter
> ____ Foreign Language _____
> ____ Sign Language _____
> ____ Other _____

| Form 101 | 02/01/2003 |

Special Communications  _____

Special Accommodation for Disability _____

Other _____

3.  In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below: (You may attach additional pages to provide more information if needed.)

**Describe the nature of the problem:**

1.  **FEPCS failure to deliver compensatory education services.** In providing a Free Appropriate Public Education (FAPE) to students, the public agency must ensure that services are provide in conformity with an IEP. 34 C.F.R. Sec. 300.13. Further, the IEP for each student with a disability must be implemented as soon as possible following the IEP meeting. 34 C.F.R. Sec. 300.342. On April 23, 2003, an IEP meeting was convened at FEPCS-Chamberlain and an IEP developed. The IEP included related services for Travis in the following areas: 1) Speech and Language services for 1 hr/week, and 2) Counseling services for 30 min/week. Travis' IEP indicates that services in these areas was to begin April 24, 2003. Since the time of the IEP meeting, speech and language services were not delivered to Travis consistently and as written. An MDT meeting was convened at FEPCS on February 12, 2004 to address the issue of missed services and to develop a plan to deliver compensatory education services as needed. The team determined that the student was entitled to 18 hours of compensatory education services for speech and language service missed. The team specified that this compensatory education time included two (2) hours of missed service time during the 2002-2003 school year and sixteen (16) hours of missed service during the 2003-2004 school year. The team members noted that the service providers at FEPCS would keep a log of services and provide Travis with speech and language services at a rate of 1.5 hours per week until all service time had been made up. Shortly after the MDT meeting, Travis was subject to a series of suspensions and finally an expulsion from FEPCS. Despite having been removed from FEPCS, Travis is still entitled to the speech and language compensatory services as determined by the MDT team. The parent and parent's counsel made repeated attempts to have this issue addressed by the MDT members at FEPCS, however requests for meetings and assistance were ignored.

2.  **DCPS/FEPCS failure to timely reconvene meeting to review Individualized Educational Program (IEP).** DCPS and FEPCS as the responsible public agencies have the duty to ensure that the IEP for each student with a disability is reviewed periodically but in no case less than annually. 34 C.F.R. Sec. 300.343 (c) and 346 (b). In addition, upon completing the administration of tests and other evaluation materials, a group of qualified professionals and the parent of the child must review the evaluation materials and determine whether the child is a child with a disability. 34 C.F.R. Sec. 300.534. In the case at hand, Travis' last IEP was developed on April 23, 2004. Since that time, further evaluation materials have been made available to FEPCS and though a team of personnel reviewed new and old testing and agreed mores supports were required, no action was taken to assist Travis. While Travis attended FEPCS, the parent and parent's counsel had scheduled and confirmed a meeting to review and revise Travis' IEP on April 14, 2004 and made changes to Travis' IEP. This review and revision was necessary for several reasons. First, the student was in need of an annual review

and scheduling an MDT/IEP meeting for April 14, 2004 would ensure that the student's IEP was revised in accordance with the requirements of IDEA. Second, Travis displayed a series of serious behaviors that indicate his IEP was no longer meeting his needs. As a result of aggressive behaviors, Travis was subject to a series of suspensions that ultimately resulted in FEPCS ordering that Travis be expelled from the school. Based on evaluation materials now available to FEPCS including reports from the Center for Mental Health, it was apparent to school staff as well as counsel for FEPCS and counsel for the parent that Travis' IEP no longer reflected his needs and no longer provided support for his level of disability. Despite this agreement, staff members at FEPCS refused to allow Travis to return to the school and refused to convene the scheduled IEP meeting. As a result, Travis' mother moved him to his neighborhood school, Savoy ES, beginning April 14, 2004. Ms. Dixon attempted to minimize the impact on Travis of FEPCS' refusal to provide assistance. Ms. Dixon explained to school staff at Savoy ES her concerns and noted Travis' recent history of serious behavioral problems. She was informed that an MDT/IEP meeting would be scheduled promptly. Despite repeatedly checking on the status of Travis' performance and his IEP meeting, and despite Travis continuing to display disruptive behaviors, no meeting has been scheduled. In order to assist Travis in avoiding disruptive behaviors, Ms. Dixon has been requested by the school to sit with Travis during his classes. She has done so when requested. It is clear that Travis' IEP is not adequate to meet his needs. It does not include any behavior component nor does it include specialized instruction in academic areas. These are both areas where Travis requires assistance.

3. **DCPS/FEPCS failure to develop an appropriate Individualized Educational Program (IEP) on April 23, 2003.** Travis is a DCPS student eligible for special education services. During Travis' last IEP meeting, the parent objected to the limited level of service provided to Travis. Since the last IEP meeting, the parent continued to raise objections, yet no modifications were ever made to Travis' IEP. Based on a review of Travis' poor performance and increasingly disruptive behaviors, it has become apparent that Travis' IEP is inadequate in ways including but not limited to the following:

   a) **DCPS/FEPCS failure to properly identify and classify the student's disability:** FECPS/DCPS has a duty to classify the students within its jurisdiction according to the standards of disability described in IDEA. 34 C.F.R. 300. The child in this case was evaluated by a range of evaluators and noted to exhibit a range of disabilities. FEPCS/DCPS classified this student in the April 23, 2003 IEP with multiple disabilities: Speech and Language Impairment and Other Health Impaired. This disability classification however fails to address all of the student's needs. Specifically, the IEP fails to identify the student's needs as an emotionally disturbed student based on the criteria of IDEA in 34 C.F.R. 300.7. The Psychological Evaluation conducted by on March 6, 2003 following a referral by Friendship Edison Public Charter School (FEPCS) specifically stated in the report that Travis' pattern of behaviors is consistent with the special education classification as "an Emotionally and Behaviorally Disordered student." Additionally, since Travis began attending FEPCS in Fall 2001, Travis has been displaying oppositional behaviors that have negatively impacted his academic performance and participation. Travis was excluded from the pre-Kindergarten program at Orr Elementary School as a result of his disruptive and aggressive behaviors. Travis'

2002-2003 and 2003-2004 teachers at FEPCS have also noted that Travis' behaviors impede his academic success and progress. Most recently, Travis was subject to a series of suspensions and finally expulsion from FEPCS, yet neither FEPCS nor DCPS took steps to honor the parent's request for Travis' IEP to be revised. FECPS/DCPS failed to appropriately classify all of this student's disabilities when it failed to include the disability classification of Emotionally Disturbed (ED) and failed to program accordingly. According to 34 C.F.R. Sec. 300.7, emotional disturbance is a classification that includes a child whose educational performance is adversely affected by various types of manifested inappropriate behavior. Here, the evaluators and teachers familiar with the student all noted the presence of behaviors suggestive of ED. The clinical psychologist retained by FEPCS made this formal diagnosis in the clinical evaluation from March 2003. Travis' treating therapist at the Center for Mental Health made similar recommendations in a report dated June 13, 2003 that was shared with the team at FEPCS. Despite these concurring diagnoses and behavioral outbursts, the ED classification was not included on the IEP. As a result, the IEP programming is inadequate as it does not identify or address ED needs. To date, this student's IEP has not been amended to include the proper classification and provide proper educational support and programming for this disability.

b)    **DCPS/FEPCS failure to include a behavior plan:** In developing each child's IEP, that IEP shall consider appropriate factors, including those special factors in the case of a child whose behavior impedes his or her learning or that of others. 34 C.F.R. Sec. 300.346. Prior to April 23, 2003, Travis' teachers, evaluators, and parent had all noted serious behavior problems that had a detrimental impact on Travis' progress at school. Subsequent to April 23, 2003, Travis' disruptive behaviors have continued and worsened, ultimately resulting in his expulsion from FEPCS. Despite agreement by school staff and Travis' family that Travis' behavior required greater attention, no behavior plan was ever developed to address her needs in this area.

c)    **DCPS/FEPCS failure to develop appropriate goals in academic subject areas:** The IEP for each child with a disability must include an appropriate statement of specific and measurable goals as appropriate to address all of the child's identified special education and related service needs based on the child's unique needs. 34 C.F.R. Sec. 300.347 and 34 C.F.R. Sec. 300.300. In this case, the evaluations completed for this student note academic difficulties where Travis is performing below grade level and the IEP specifically speaks to this concern. On page 2 of the IEP, it states that this student "may have difficulty solving grade level addition and subtraction problems in general ed class" and that "due to inattentiveness and impulsivity Travis may have difficulty with comprehension in regular ed classroom." At the April 23, 2003 IEP meeting, the parent and advocate raised concerns about the team not including academic goals where the team had already agreed that Travis' education was being impacted negatively. FEPCS responded to this concern by stating that FEPCS was not a part of DCPS and therefore did not have to follow that standard. In addition to the academic difficulties noted at the time of the last IEP, Travis has continued to display difficulties making progress academically. Despite continued problems in academic areas, no subsequent meeting was convened to add academic instruction to Travis' IEP goals.

Form 101                                                                                                02/01/2003

**d)   DCPS/FEPCS failure to provide the student with the appropriate level of services:**
Each student with a disability is entitled to free and appropriate public education (FAPE) where the services provided to the child address all of the child's identified special education and related service needs. 34 C.F.R. Sec. 300.300. Here, Travis' April 23, 2003 IEP does not provide him with an adequate amount of special education services. Specifically, Travis has extreme difficulties managing his behavior in a regular education setting. The IEP notes in section XIII that Travis is to be placed in a setting "out of regular ed setting" however the IEP indicates that Travis only receives 1.5 hours of special education services. Based on Travis' levels of performance and his current needs, Travis' IEP should be adjusted to increase his level of service and remove him from the general education setting.

4.   **Time of hearing on this request.** 34 C. F. R. 300.511 provides that the public agency shall ensure that not later than 45 days after the receipt of a request for a hearing, a final decision is reached in the hearing and a copy of the decision is mailed to each of the parties. If the hearing in this matter is not set within the required time frame, such issue will be raised at the hearing with or without an amended hearing request.

**Describe issues to be addressed at the mediation and/or hearing, with specificity:**

Whether or not the District of Columbia Public Schools (DCPS) and Friendship Edison Public Charter School (FEPCS) failed to provide the student with a free and appropriate public education (FAPE) by:

1)   Failing to provide compensatory education services;

2)   Failing to provide timely IEP review; and

3)   Failing to provide an IEP that is adequate to meet the student's needs.

**Describe relevant facts relating to the problem:**

Travis is a six-year-old first grade student who currently attends Savoy Elementary School. Travis has attended Savoy since April 14, 2004 following an expulsion from FEPCS – Chamberlain Campus where he was in attendance during the 2002-2003 and 2003-2004 school years. FEPCS and DCPS have failed in their duties to Travis and his family by not providing Travis with an appropriate level of support in his IEP to meet his needs. Further, even after noting that Travis' behaviors led to continued school failures and to school ordered suspensions and finally an expulsion from FEPCS, neither FECPS nor DCPS took steps to provide Travis with assistance. Through objections raised by Travis' mother as well as Travis' behaviors leading to his suspensions, FEPCS cannot claim that they were providing an environment with sufficient support to meet his needs.

Travis has exhibited oppositional and aggressive behaviors since at least the time he entered school in Fall 2001. As a result of these behaviors Travis was excluded from participating in the pre-Kindergarten program at Orr Elementary School. Travis has continued to display behaviors that are negatively impacting his ability to participate and progress in academic programs. Since Travis' IEP was developed on April 23, 2003, Travis's behaviors only worsened. After Travis was expelled and his mother was forced to enroll him at his neighborhood school, still no steps have been taken to convene an IEP meeting or provide more support to Travis. When Travis began attending Savoy ES on April 14, 2004, the school was put on notice that Travis' behaviors as a 6-year-old were so severe that he had been expelled already. In addition, Ms. Dixon provided the school with a copy of Travis' last IEP that was to expire in just over one (1) week.

In addition to the issue of the appropriateness of Travis' IEP, it has been established previously that Travis did not receive all of his IEP-ordered speech and language services. To remedy that prior failure, FEPCS developed a compensatory education plan to provide Travis with additional speech and language services for at least six (6) months until all 18 hours of missed services were made up. During Travis' suspensions and also now that Travis has been expelled, FEPCS has taken no steps to provide Travis with the compensatory education services that are owed to him, despite repeated written requests for this made by parent's counsel. While Travis no longer attends FEPCS, that school is still responsible for making arrangements for Travis to receive all services owed to him.

By failing to provide Travis with his compensatory education services and an appropriate and current IEP, DCPS and FEPCS have denied Travis the free and appropriate public education (FAPE) to which he is entitled. Additionally, while Travis has been attending FEPCS, he is entitled to FAPE by FEPCS and by DCPS. Here, while FEPCS acts in this case as its own Local Educational Agency (LEA), DCPS continues to be liable as the State Educational Agency (SEA). In this way, both parties bear the responsibility of providing FAPE to Travis. This point is made clear in *Gadsby v. Grasmick*, 109 F. 3d 940 (4th Cir. 1997) where the Fourth Circuit Court of Appeal concluded that the "SEA is ultimately responsible for the provision of a free appropriate public education to all its students and may be held liable for the failure to assure compliance with IDEA." 109 F.3d at 952-53.

**State how you would like to see the problem corrected:**

1. DCPS/FEPCS shall provide Travis with all hours of speech and language compensatory education services not delivered before being expelled from FEPCS. FEPCS shall work together with DCPS and the parent to determine a service provider for the student and determine a time for delivery of services. If no agreement can be reached during the next MDT/IEP meeting to be held within ten (10) calendar days, FEPCS shall provide funding for the parent to obtain a speech therapist at an hourly rate.

2. DCPS/FEPCS shall convene an MDT meeting within 10 calendar days of the hearing to review and revise Travis' IEP including a review of all evaluations, discuss and determine an appropriate disability classification, develop appropriate annual goals and benchmarks for performance, and discuss and determine an appropriate placement.

3.  DCPS/FEPCS shall consider all placement options proposed by the parent, including but not limited to High Road Academy and Rock Creek Academy. At the time of the filing of this hearing request, Travis has been accepted to attend High Road Academy.

4.  DCPS/FEPCS shall issue a notice of placement to a location agreed to by all parties within five business days if the location is a public school, or within 30 calendar days if the location is a non-public placement.

5.  All additional issues related to compensatory education are reserved.

6.  DCPS shall send all notices, evaluations, or other information related to this student through counsel for the parent, Christina Busso, via facsimile at (202) 742-2098 with copies of evaluations to be reviewed at any MDT/IEP meetings to the parent no later than 48-hours prior to convening any meetings.

◊ _____          ___4/26/04_____
Signature of Applicant/Parent (Required)                Date (Required)

**MAIL, FAX, OR DELIVER APPLICATION TO:**
**Student Hearing Office of the District of Columbia**
**828 North Capitol Street, NE, 8ᵗʰ Floor**
**Washington, DC  20002              FAX:  (202) 442-5556**

---

*FOR OFFICE USE ONLY:*
Case Number: _____
Student ID#: _____

Form 101                                              Revised 02/01/2003

---

◊ *"Practice is limited solely to matters before the District of Columbia Public Schools' Office of Student Hearings under the District of Columbia Court of Appeals Rule 49(c)(5)."*

```
                       ***********************
                       ***   TX REPORT   ***
                       ***********************

TRANSMISSION OK

TX/RX NO                  3643
CONNECTION TEL                       94425556
SUBADDRESS
CONNECTION ID
ST. TIME                  04/26  18:50
USAGE T                   01'45
PGS. SENT                     9
RESULT                    OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!◊ |
| Domiento C.R. Hill*◊Δ | 1220 L Street, NW | Christina R. Busso◆◊ |
| Brenda McAllister*◊Δ | Suite 700 | Ann E. FordΔ |
| Roberta Gambale | Washington, D.C. 20005 | Tilman L. GeraldΔ |
| Miguel A. Hull | Telephone: (202) 742-2000 | Roxanne D. Neloms |
| Christopher L. West◆◊ | Facsimile: (202) 742-2098 | John A. Straus*◊ |

* Admitted in Maryland Only
♦ Admitted in New York Only

! Admitted in Bolivia Only
Δ Member of the DC Federal Bar

# FAX COVER SHEET

DATE:        April 26, 2004

TO:          Student Hearing Office

FAX NO.:     202-442-5556

FROM:        Christina Busso, Esq.

SUBJECT:     **Travis Dixon, DOB 10/20/97**

NUMBER OF PAGES INCLUDING COVER SHEET:    **9**

COMMENTS:    Request for Due Process Hearing