UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANICE DICKENS, *et al.*,

          Plaintiffs,

v.

FRIENDSHIP-EDISON P.C.S.

          Defendant,

Civil Action No. 06-cv-1466 (AK)

## **MEMORANDUM OPINION**[1]

Pending before the Court is Plaintiffs' Motion for Fees and Costs [24] ("Mot."), Defendant Friendship-Edison Public Charter School's ("FECPS") Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion ("Opp'n") [26], and Plaintiffs' Reply to Defendants' Opposition ("Reply") [27]. Plaintiffs are requesting an award of attorneys' fees and costs incurred in connection with the prosecution of administrative complaints and this lawsuit. Upon consideration of the memoranda and exhibits submitted in connection with this Motion, the Opposition thereto, and Plaintiffs' Reply, for the reasons set forth below, Plaintiffs' Motion is granted in part and denied in part. An appropriate order accompanies this Memorandum Opinion.

---

[1]The parties consented to proceed before the undersigned Magistrate Judge for all purposes on March 21, 2007. (*See* Consent Order [11] dated 03/21/07.)

## I. FACTUAL BACKGROUND

In August 2009, this Court found that remaining Plaintiffs[2] – parents of minor children who had undergone administrative due process hearings at FECPS in accordance with the Individuals with Disabilities Education Act ("IDEA" or "the Act") – were "prevailing parties" under the Act and entitled to reasonable attorneys' fees. (Mem. Op. on Pls.' Mot. for Summ. J. and Def.'s Mot. for Summ. J. ("Mem. Op.") [22] at 13.) Accordingly, this Court granted these Plaintiffs' summary judgment motions and directed the parties to file supplemental briefings assessing the reasonableness of Plaintiffs' claimed fees. (Order [23] dated 08/04/09.)

On March 22, 2010, Plaintiffs filed the instant Motion, along with detailed billing invoices – both for the underlying administrative actions and the instant action – and affidavits addressing the experience and qualifications of the attorneys and support staff participating in the case. (Mot., Exs. B-L.) Plaintiffs move this Court for an award in the amount of $30,096.38.[3] (Mot. at 6.) Plaintiffs' fee and cost requests break down as follows:

---

[2]These plaintiffs are parents of T.D. (DOB 97), A.M., and G.W. This Court found that the parents of T.D. (DOB 95) and B.S. were not prevailing parties and granted summary judgment to Defendant with regard to their claims. (Mem. Op. on Pls.' Mot. for Summ. J. and Def.'s Mot. for Summ. J. ("Mem. Op.") [22] at 13.)

[3]Plaintiffs argue that Section 140 of the D.C. Appropriations Act of 2002, capping the amount in attorneys' fees the District of Columbia may pay to prevailing parties, does not apply because their claims are brought against an independent Public Charter School, rather than against the District itself through the District of Columbia Public School System. (Mot. at 3-4.) Defendant does not challenge this argument.

|  | **FEES** | **COSTS** | **TOTAL** |
|---|---|---|---|
| **TD** | **$7,806.95** | **$522.16** | **$8,329.11** |
| **GW** | **$14,275.40** | **$490.46** | **$14,765.86** |
| **AM** | **$3,228.75** | **$208.96** | **$3,437.71** |
| **Fee Litigation** | **$3,213.70** | **$350.00** | **$3,563.70** |

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(2) states in relevant part that "[c]laims for attorneys fees and related non-taxable expenses shall be made by motion" and further, such motion "must specify the judgment and the statute, rule or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought." Under the IDEA, plaintiffs are entitled to reimbursement of "reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. §1415(i)(3)(B). To establish that the hourly rate charged is reasonable, a fee applicant must show: (1) the attorneys' billing practices; (2) the attorneys' skill, experience, and reputation; (3) and the prevailing market rates in the relevant community. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995); *see* § 1415(i)(3)(C) (fees awarded under the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished"). Prevailing parties may recover fees both for civil litigation in federal court and for administrative litigation before hearing officers. *Smith v Roher*, 954 F. Supp. 359, 362 (D.D.C. 1997).

The court should exclude from its fee calculation hours that were not "reasonably expended." *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Hensley*

*v. Eckerhart*, 461 U.S. 424, 434 (1983), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002)); *see* § 1415(i)(3)(F)(iii). Hours expended may be "unreasonable" if they are excessive for the type of task performed, if they reflect redundant or overstaffed efforts, or if they are "otherwise unnecessary." *Hensley*, 461 U.S. at 434.[4] Plaintiffs satisfy the burden of demonstrating the reasonableness of hours "by submitting invoices that are sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" *Lopez*, 383 F. Supp. 2d at 24 (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

The burden is on the party seeking fees to justify the request. *In re North*, 8 F.3d 847, 852 (D.C. Cir. 1993). To meet that burden, the applicant must establish entitlement to the award, document the appropriate hours, and justify the reasonableness of the rate charged. *Covington*, 57 F.3d at 1107. Defendants may challenge the claimed attorneys' fees, but they "must provide 'specific and contrary evidence' to rebut the presumption of reasonableness . . . and demonstrate that a lower rate would be appropriate." *Lopez*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (quoting *Kaseman*, 329 F. Supp. 2d at 26 (citing *Covington*, 57 F.3d at 1110-11)). The trial court retains considerable discretion in evaluating the reasonableness of a fee request. 20 U.S.C. § 1415(i)(3)(B)(i); *see Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) ("A district court's discretion as to the proper hourly rate to award counsel should not be upset absent clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the

---

[4]"[T]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n.7. The IDEA awards fees to "prevailing parties." 20 U.S.C. § 1415(i)(3)(B)(i). The *Hensley* standards, therefore, apply to IDEA cases.

record evidence.") (citing *King v. Palmer*, 950 F.2d 771, 786 (D.C. Cir. 1991) (en banc)).

### III. DISCUSSION

This Court has determined that remaining Plaintiffs are "prevailing parties" entitled to an award of reasonable attorneys' fees under the IDEA, 20 U.S.C. §1415(i)(3)(B). (Mem. Op. at 13.) "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002)). Here, Plaintiffs have provided, both by affidavit and in the detailed invoices appended to their motion, evidence of the standard rates billed by the attorneys involved and those attorneys' educational backgrounds and years of experience in special education law. (Mot., Exs. B-L.) As evidence of the prevailing hourly rates in the community, Plaintiffs direct the Court's attention to the *Laffey* Matrix, which this Court recognizes as a measure for the reasonableness of hourly rates in IDEA cases. *See, e.g.*, *Jackson v. District of Columbia*, 603 F. Supp. 2d 92, 96-97 (D.D.C. 2009) ("Courts in this district have routinely held that attorneys' fees in IDEA actions are reasonable if they conform to the *Laffey* Matrix.") (citations omitted).

Defendant does not challenge the use of the *Laffey* Matrix in determining a reasonable rate; however, it does object to the use of the Matrix as applied to certain attorneys and paralegals. (Opp'n at 2-3.) Defendant also objects to the number of hours billed, arguing that many entries on Plaintiffs' invoices are unreasonable or non-compensable. (*Id.* at 3-4.) For the same reason, Defendant also objects to Plaintiffs' claimed costs. (*Id.* at 8-9.) Finally, Defendant argues for an overall reduction in fees in accord with the percentage of relief each prevailing

party failed to obtain. (*Id.* at 5-6.)

**A.      Billing Rates Under the *Laffey* Matrix**

The *Laffey* Matrix provides a schedule of fees for varying levels of legal experience, with increases year over year based on changes in the cost of living in the D.C. metropolitan area. (Mot., Ex. A.) The Matrix provides an update for 2003-2010, created by the U.S. Attorney's Office for the District of Columbia, of rates originally permitted by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983). (Mot., Ex. A.) For the attorneys involved in this case, Plaintiffs request the Matrix rates – at a reduction from the actual rate billed – for attorneys RN, RG, MH, RR, and CB. (Mot., Exs. B-H.) The Matrix rates requested for attorney JEB and for the paralegals involved are higher than the rates actually billed. (*Id.*) This Court finds reasonable – and Defendant does not object to – the rates for RN, RG, and MH. The others are subject to reduction at the discretion of this Court. 20 U.S.C. § 1415(i)(3)(B)(i).

*1.      Hours Billed to RR and CB*

Though they were admitted to the bars of other states, neither RR nor CB were licensed to practice law in the District of Columbia during the time they worked on these cases. (Opp'n at 2-3; Mot., Exs. F-G, I.) Defendant, therefore, argues that RR and CB should be billed at the *Laffey* rate for paralegals – $105 per hour – for the relevant time period. (Opp'n at 2-3.) Plaintiffs counter that District of Columbia Court of Appeals Rule 49(c)(5)(B) permits attorneys licensed to practice in other states to provide legal services "solely before a department or agency of the District of Columbia government, where . . . [s]uch representation is authorized by statute, or the department or agency has authorized it by rule and undertaken to regulate it." (Reply at 3.) Plaintiffs further assert, without citation to rule or statute, that prior to a change in policy in April

-6-

2005, attorneys not admitted to the D.C. bar were allowed by the D.C. Public School System "to represent parents in administrative due process hearings under the IDEA without objection . . . and were reimbursed for reasonable attorneys [sic] fees and cost." (*Id.* at 3-4.)

This issue has previously arisen for Plaintiffs' attorneys in this Court. *See Agapito v. District of Columbia*, 477 F. Supp. 2d 103, 109 (D.D.C. 2007). On that occasion, Plaintiffs' attorneys raised the same argument as they do here. *Id.* As Judge Collyer held in that case, Plaintiffs' "argument turns the issue on its head. Rule 49 requires that the agency adopt a rule before exception (c)(5) becomes available; not that the exception is available until the agency rules that it is not." *Id.* As in that case, the record here is void of any authority suggesting a de facto policy permitting such practice. "Accordingly, the Court concludes that Rule 49(c)(5) did not and does not permit an attorney not licensed in the District to practice law in administrative proceedings before DCPS." *Id.* Analogizing to cases from the Ninth Circuit and referring to an older D.C. Court of Appeals case, the Court in *Agapito* further held that an award of attorneys' fees was prohibited "for legal services rendered in violation of Rule 49." *Id.* at 113 (citing *Finch v. Finch*, 378 A.2d 1092, 1094 (D.C. 1977); *Z.A. v. San Bruno Park Sch. Dist.*, 165 F.3d 1273, 1275-76 (9th Cir. 1999)). While this Court finds persuasive the holding in *Agapito*, the lack of willful behavior on the part of attorneys RR and CB[5] and the successful prosecution of the administrative hearings on behalf of their clients militates toward an equitable approach. Accordingly, this Court accepts Defendant's suggestion that attorneys RR and CB are reasonably billed at the hourly rate for paralegals. As discussed below, this rate is $95 an hour, based on

---

[5]Both attorneys were licensed in other states and shortly after completion of the matters at issue here waived into the District of Columbia bar. (Mot., Ex. I.)

Plaintiffs' actual billing practices, rather than the *Laffey* Matrix. *See supra* Part III.A.2. Billing at the reduced rate amounts to a reduction of $3,009 from the total award.

    *2.    Hours Originally Billed Below* Laffey *Rates*

According to Plaintiffs' original invoices, not adjusted to the *Laffey* Matrix, attorney JEB's standard billing rate was $350 per hour, and the paralegals involved billed at a rate of $95 per hour. (Mot., Exs. C-E.) The *Laffey* rates requested are, respectively, $380 and $105 per hour. (Mot. Ex. I.)[6] As Defendant points out, while the rates requested would be reasonable under the Matrix, they do not comport with Plaintiffs' attorneys' actual billing practices. (Opp'n at 3.) Actual billing practice factors into a court's discretionary assessment of the reasonableness of rates. *Covington*, 57 F.3d at 1107. Plaintiffs do not argue in favor of these higher rates beyond appealing to the discretion of this Court. (Reply at 4.)

The D.C. Circuit has recognized that, under a fee-shifting statute such as the IDEA, a plaintiff's attorney charging discounted hourly rate out of "public-spiritedness" may be entitled to fees at the higher market-prevailing rate. *Bd. of Trs. of the Hotel & Rest. Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 806-07 (D.C. Cir. 1998) (citing *Covington*, 57 F.3d at 1108). However, the burden is on the fee applicant to prove such a motivation and the decision is within the court's "sound discretion." *Id.*; *see Abraham v. District of Columbia*, 338 F. Supp. 2d 113, 124 (D.D.C. 2004) (in IDEA case, rejecting higher market-based rate where attorney failed to provide sufficient evidence of "public-spirited" motive).

---

[6]Plaintiffs never directly argue that their requested award derives from the billed hours presented in the *Laffey*-adjusted invoices; however, the total requested in the Motion matches the sum total of this second set of invoices. (Mot. at 3.) Presumably, therefore, Plaintiffs expect these individuals to be billed at these rates.

Here, while Plaintiffs extensively document the hours they have billed and attest by affidavit to the qualifications of their attorneys, they provide no argument for or evidence of any public-spirited discount. In fact, from the invoices showing actual billing practices and from the affidavits, it appears that Plaintiffs' attorneys generally charge – and have here – a rate *above* the prevailing market rate, at least for the associates who have billed the majority of the hours in this case. (Mot., Exs. B-E, I-L.) That JEB and the paralegals have billed below the market rate articulated in the *Laffey* Matrix does not – absent proof of the motivation behind this rate – entitle them to a higher award. *Abraham*, 338 F. Supp. 2d at 124. Thus, for JEB and the paralegals, this Court will permit recovery at the rate actually charged to Plaintiffs – $350 and $95 per hour, respectively. This results in an overall reduction of $609.03.

**B.        Reduction for Incomplete Relief**

For partially prevailing parties, "the degree of the plaintiff's overall success goes to the reasonableness of the award." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (U.S. 1989). It is within a court's discretion to reduce the overall fee award to reflect that degree of success, regardless of whether the total number of hours expended was reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (U.S. 1983) (fee-shifting statute does not authorize award whenever "conscientious counsel tried the case with devotion and skill" but rather "the most critical factor is the degree of success obtained"), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002). However, the method and the amount of reduction for partial success is subject to the discretion of a court. *Hensley*, 461 U.S. at 436-37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account

for the limited success."). The Court in *Hensley* explicitly rejected a default "mathematical" approach" in determining by how much to reduce a fee award. *Id.* at 435 n.11. Here, Defendant argues for just such a "mathematical" reduction – seeking a 1/3 reduction for Plaintiff TD, based on success in one of three claims;[7] an 83% reduction for AM, based on success in one out of six claims; and a 75% reduction for GW, where GW prevailed on one of four claims. (Opp'n at 5-6.) *Hensley*, however, requires a more holistic assessment. *Hensley*, 461 U.S. at 434 (holding appropriate inquiry is "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?").

   *1.    TD*

At the administrative hearing for student TD, Plaintiffs' counsel presented claims that FECPS and the District of Columbia Public Schools ("DCPS") had failed to provide TD with a free appropriate public education ("FAPE"). (A.R. for T.D. (DOB 97) at 44.) The claims included FEPCS's failure to deliver compensatory education services, related to speech/language and counseling, for which the student's right had been established at an April 23, 2003 Individualized Education Plan ("IEP")/Multidisciplinary Team ("MDT") meeting. (*Id.* at 41.) Counsel also argued that FEPCS and the DCPS failed to timely review and revise that initial IEP. (*Id.* at 41-42.) But the majority of Plaintiffs' hearing request was devoted to a claim that FEPCS and the DCPS had failed in the initial MDT meeting to develop an IEP that appropriately met TD's educational needs. (*Id.* at 42-44.)

The Hearing Officer rejected the bulk of these claims, noting that FEPCS was no longer

---

[7]Given the relationship between Defendant's sought-after reductions and the amount of success attained by the other plaintiffs, it is likely that Defendant meant to ask for reduction *to* 1/3 or *by* 2/3.

-10-

responsible for TD's FAPE, as he had transferred to a different school before the hearing, and that any issues with the April 2003 IEP had already been litigated at a due process hearing in June 2003 – in which Plaintiffs' counsel had participated. (*Id.* at 6, 81.) The Hearing Officer did, however, order FEPCS to provide or fund compensatory speech and language education as required by the April 2003 IEP. (*Id.* at 6.) Given both the limited nature of this success, relative to the breadth of the claims made, and also counsel's apparently willful disregard for the outcome of the June 2003 hearing, resulting in unnecessary expenditures of time and effort, the award of attorneys' fees billed to TD is subject to a substantial reduction under *Hensley*. Accordingly, this Court, in its discretion, will impose a reduction of 50% on the final award of hours, as well as costs, billed to TD.

  2.   *AM*

Defendant's assertion that Plaintiff AM succeeded on only one of six claims mischaracterizes the record. (Opp'n at 6.) While Plaintiffs' initial hearing request addressed a wider range of claims, the hearing itself addressed only FECPS's failure to provide the speech and language services called for in AM's initial IEP, and whether that failure constituted a denial of a FAPE.[8] (A.R. for A.M. at 4, 18-21.) On this question the Hearing Officer ruled for Plaintiffs and ordered FECPS to provide the compensatory education services requested by counsel as a remedy for the deprivation. (*Id. at* 5.) Plaintiff AM, therefore, succeeded on all of the claims raised at the hearing, and there are no grounds for a reduction for incomplete relief.

---

[8]The hearing transcript shows AM's counsel voluntarily withdrew all other claims at the beginning of the hearing, and the Hearing Officer explicitly limited his ruling to the issue of compensatory education. (A.R. for A.M. at 7, 78.)

*3.     GW*

In the case of GW, Plaintiffs sought a reevaluation of the student, specifying certain tests to be performed; an MDT meeting to revise the student's IEP in light of the reevaluation, to discuss placement of the student, and to develop a compensatory education plan for services FECPS had failed to provide; and requested that the meeting be scheduled through Plaintiffs' counsel.[9] (A.R. for G.W. at 91.) Defendant asserts, without reference to the record, that the Hearing Officer "only granted 1/4 of the requested relief[,] and there was no issue raised regarding the appropriateness of the student's placement[,] nor was placement one of the issues Plaintiff GW prevailed on." (Opp'n at 6.) However, not only did the Hearing Officer grant Plaintiffs' request to convene an MDT/IEP meeting and to schedule the meeting through Plaintiffs' counsel, but he also explicitly ordered that the meeting would address the issue of GW's placement. (A.R. for G.W. at 17.) Further, while the Hearing Officer did not grant the request to reevaluate GW, this was only because the reevaluation had been held in the interval between the filing of the hearing request and the hearing itself. (*Id.* at 14.) Moreover, the Hearing Officer found that the delay in holding the reevaluation constituted a denial of a FAPE, and thus ruled in Plaintiff GW's favor on the issue, even though the need for the remedy had become moot. (*Id.*) Therefore, there are no grounds for a reduction in the award.

**C.     Hours Not "Reasonably Expended"**

Defendant also challenges many of the hours billed as unreasonable or non-compensable. (Opp'n at 3.) Defendant objects to a number of specific entries in the invoices on grounds that

---

[9]This was included in the request for relief because FEPCS held an MDT/IEP meeting in March 2004 without GW's relatives or counsel present. (A.R. for G.W. at 91.)

some hours billed are (1) for purposes "remote" from – or lacking connection to – the issues on which the parties prevailed; (2) for services clerical in nature; and (3) recorded in a manner excessively vague, such that the reasonableness thereof cannot be verified.[10] (*Id.* at 3-8.)

*1. Remoteness*

As discussed above, Defendant severely overstates the degree to which Plaintiffs' successes are "partial." *See supra* Part III.B. Thus, drawing a sharp distinction between work done on succeeding claims and work done on failing claims is unnecessary. However, there are some individual billed entries that seem to lack connection to the litigation entirely. For example, Defendant points out that the invoices for TD contain entries between December 3, 2003, and February 10, 2004, dealing with an earlier administrative hearing. (Opp'n at 5.) Plaintiffs concede that these entries were mistakenly included and should be deducted from the final award. (Reply at 5.)

Defendant also challenges certain entries for TD from February 11, 2004, to April 26, 2004, for services unrelated to the administrative hearing. (Opp'n at 5.) Plaintiffs do not address this claim in their Reply. A number of these entries, dealing with the preparation and delivery of placement packages to other schools (*id.*), are unrelated to the administrative hearing and will be deducted from the total award. Similar entries for the preparation and delivery of placement packages are included in the invoice for GW and are likewise unrelated to the administrative hearing. (Mot, Ex. G.) As these entries are not connected to the administrative hearings and

---

[10]Defendant also asserts that several entries should be denied because of duplication of effort. (Opp'n at 8.) However, the case law cited by Defendant deals with instances of multiple attorneys billing for the same work. *See Smith v. Roher*, 954 F. Supp. 359, 366-67 (D.D.C. 1997). Here, Defendant objects to an attorney and a paralegal working on related matters. (Opp'n, Ex. 7.) The situation is not analogous, and there will be no deduction.

Plaintiffs have failed to raise any response to the specific requests for reduction, they will be excluded from the overall fee award. The total reduction for remoteness comes to $3,013.30, with an additional deduction for "remote" billing from the costs awarded to TD of $78.09.

### 2. *Clerical/Non-professional Services*

Defendant objects to nearly all of the hours billed to paralegals as "clerical/non-professional." (Reply, Ex. 5.) Plaintiffs do not provide any argument in response, merely appealing to this Court's "discretion to award hourly rates pursuant to the *Laffey* matrix" and asserting that the paralegals' work was "legal in nature and necessary to the outcome of litigation." (Reply at 4.) Defendant cites *In re Olson*, 884 F.2d 1415, 1426-27 (D.C. Cir. 1989), for the proposition that "Congress never intended for clerical billings to be included in attorneys' fees and that such services 'are generally considered within the overhead component of a lawyer's fee.'" (Opp'n at 6.) However, in *Olson*, the D.C. Circuit also drew a distinction between "law clerks and paralegals," whose work is compensable at a reasonable market rate if billed separately and not "at cost," and the work of "librarians, clerical personnel[,] and other support staff," whose hours are "generally considered within the overhead component of a lawyer's fee." 884 F.2d at 1426-27 (citing *Missouri v. Jenkins*, 491 U.S. 274, 286-87 (1989)).

*Jackson v. District of Columbia*, 603 F. Supp. 2d 92 (D.D.C. 2009), is instructive. In that case, the court addressed hours billed to an individual identified only by the initials "JMS," for work labeled as "create file; made copies; faxed document." *Id.* at 98. The defendant in that case sought to have the hours wholly excluded; however, the court chose instead to reduce the

rate for those hours to the *Laffey* Matrix's paralegal rate,[11] relying on Supreme Court precedent permitting such recovery. *Id.* (citing *Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, 2014-15 (2008)). The implication is that, while an attorney may not bill at an attorney's market rate for clerical tasks, such billing entries for paralegals are acceptable. Thus, the hours billed by paralegals will not be excluded. On the other hand, there are a number of entries in Plaintiffs' invoices for attorneys charging a market rate for time spent on tasks such as filing pleadings. (Mot, Ex. B.) These hours, amounting to $66.60, will be deducted from the total award. *See, e.g.*, *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 25 (D.D.C. 2005) (excluding invoice entries where attorney billed for time spent filing pleadings).

  3. *Vagueness*

Billing entries failing to adequately identify the participants, purpose, or content of an activity are subject to complete deletion from any fee award. *Michigan v. EPA*, 254 F.3d 1087, 1094-95 (D.C. Cir. 2001) (holding that entry with description only as "conference call" or entry for call with person identified only by name, without indication of role in litigation, fails to "provide the court with any basis to determine with a high degree of certainty that the hours billed were reasonable") (quoting *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989)). There are no such wholly deficient entries in the invoices provided by Plaintiffs; however, there are a number of entries inadequately detailed, with descriptions such as: "Conference with parent;" "Discussion with child's attorney;" "Telephone call to DCPS staff;" and "Prepared documents for child's advocate." (Mot., Exs. G-H.) The presence of such entries, "devoid of any

---

[11] The court further reduced the rate because of the plaintiff's failure to adequately prove JMS's qualifications as either a paralegal or attorney. *Jackson*, 603 F. Supp. 2d at 98.

descriptive rationale for their occurrence," make reasonable a reduction of 10%[12] from the overall award, which will be imposed after other deductions are made. *See Michigan*, 254 F.3d at 1095 (deducting 10% of overall award for presence of entries such as "Review materials; conference with J. Knight; telephone conference with A. Field"). Plaintiffs' claimed costs are either for reasonable amounts or are adequately described and will be permitted.[13] (Mot., Exs. G-H.)

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs have, with exceptions, met their burden in proving the reasonableness of the rates charged and adequately documenting the hours billed. However, on the issues of fees for attorneys RR and CB, the hourly rates for paralegals, and various other specific reductions, this Court in its discretion will impose reductions to the total fee award. Accordingly, this Court concludes that Plaintiffs shall receive a fee award in the reduced amount of $19,245.10. The fee award and deductions break down as follows:

---

[12] By this Court's reckoning roughly 10% of the entries in the invoices are inadequately described.

[13] Defendant specifically objects to a number of entries for copying and faxes each over $100. (Opp'n at 8-9.) However, each of these entries is clearly labeled "Disclosure" or "5-Day Disclosure," referring to the evidentiary disclosures each party is required to make prior to the administrative hearing, and which consist of approximately 150 pages of documentary evidence for each Plaintiff. (Administrative Record Index.)

|  | **TD** | **AM** | **GW** | **Fee Litigation** |
|---|---|---|---|---|
| FEES | $7,806.95 | $3,228.75 | $14,275.40 | $3,213.70 |
| REDUCTION | -$5,539.6 | -$1,24.90 | -$1,548.05 | $66.60 |
| Fee Sub-Total | $2,267.35 | $3,103.85 | $12,727.35 | $3,147.10 |
| Fee Sub-Total w/ 50% Reduction | $1,133.68 | | | |
| COSTS | $522.16 | $208.96 | $490.46 | $350.00 |
| REDUCTION | -$78.09 | -- | -- | -- |
| Cost Sub-Total | $444.07 | $208.96 | $490.46 | $350.00 |
| Cost Sub-Total w/ 50% Reduction | $222.04 | | | |
| **Fees + Costs** | $1,355.72 | $3,312.81 | $13,217.81 | $3,497.10 |
| **TOTAL AWARD AFTER 10% REDUCTION** | $1,220.15 | $2,981.53 | $11,896.03 | $3,147.39 |

Dated: July 21st, 2010

/s/
ALAN KAY
UNITED STATES MAGISTRATE JUDGE